**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-20989-CIV-MOORE/McALILEY**

COLIN VEITCH,
VSM DEVELOPMENT, INC.,

      Plaintiffs,

v.

VIRGIN MANAGEMENT USA, INC.,
VIRGIN MANAGEMENT LTD.,
VIRGIN GROUP INVESTMENTS LTD.,
VIRGIN CRUISES,

      Defendants.
_____

**MOTION AND MEMORANDUM OF LAW TO DISMISS**
**PLAINTIFFS' COMPLAINT FILED BY DEFENDANTS**
**VIRGIN MANAGEMENT USA, INC., VIRGIN**
**MANAGEMENT LTD., AND VIRGIN GROUP INVESTMENTS LTD.**

Defendants Virgin Management USA, Inc. ("VMUSA"), Virgin Management Ltd. ("VM"), and Virgin Group Investments Ltd. ("VGIL") (collectively, the "Virgin Defendants")[1] hereby move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

The Complaint alleges that four years ago, Plaintiffs worked to reach agreement with VMUSA about a potential Virgin-branded cruise company. As Plaintiffs admit, that project ended and Plaintiffs and VMUSA went their separate ways nearly three years ago, no later than June 2012. In fact, the Non-Disclosure Agreement ("NDA") upon which much of the Complaint is based, expired on March 11, 2014—a year before Plaintiffs filed this lawsuit. This means, as a matter of law, that Plaintiffs' alleged trade secrets stopped being trade secrets on March 11, 2014.

Nevertheless, months after Plaintiffs' alleged trade secrets evaporated and after it was publicly reported that Virgin would be creating a future cruise business, Plaintiffs filed this diversity-based Complaint alleging eight separate state-law claims against the Virgin Defendants and seeking, among other things, injunctive relief. As discussed below, however, Plaintiffs cannot allege facts sufficient to support most of these state-law claims, or to show that injunctive relief is an available remedy, and thus these claims should be dismissed under Rule 12(b)(6).

First, the Complaint should be dismissed in its entirety because it lumps the Virgin Defendants together in each Count, and each Count improperly incorporates all allegations of any count or counts that precede it in "shotgun" fashion.

Further, Count II, which seeks injunctive relief for breach of the NDA, should be dismissed because "breach of contract for injunction" is not a recognized cause of action under either Florida or New York law, and, as a matter of law, Plaintiffs may not seek injunctive relief enforcing the terms of an expired NDA.

In addition, Counts VI, VII and VIII, which seek recovery for breach of an alleged "Veitch-Virgin Agreement," breach of the duty of good faith, and breach of fiduciary duty, should be dismissed against all of the Virgin Defendants. The documentary evidence incorporated by reference in the Complaint expressly contradicts Plaintiffs' conclusory allegation that an enforceable "Veitch-Virgin Agreement" was ever created. Absent an enforceable

---

[1] The fourth defendant named in the Complaint that Plaintiffs call "Virgin Cruises" has not been served in this lawsuit to date.

contract, Plaintiffs' breach of contract and duty of good faith claims fail, and no joint-venture fiduciary relationship was formed, precluding a breach of fiduciary duty claim.

Moreover, the contract and fiduciary claims (Counts I, II, VI, VII, and VIII) should be dismissed with prejudice as to defendants VGIL and VM for the independent reason that, even according to the Complaint, these entities are not parties to either alleged agreement, and thus had no contractual or fiduciary relationship with Plaintiffs.

Finally, Counts III, IV and V, which seek recovery for common-law misappropriation, unjust enrichment, and unfair competition, should be dismissed because they are preempted under the Florida Uniform Trade Secrets Act (the "FUTSA"). Plaintiffs' claim for unjust enrichment and unfair competition fail for the additional reason that the Complaint does not adequately allege essential elements for each claim under Florida law.

In sum, these claims, including Plaintiffs' claim that they are entitled to injunctive relief, should be dismissed without leave to amend.

## STATEMENT OF FACTS

### A.    The Parties.

Defendants VMUSA, VM, and VGIL are separate corporate entities forming part of the alleged "Virgin Group," "a leading international investment group and one of the world's most recognized and respected brands." (Compl. ¶ 45.) [2] Since its conception "in 1970 by Sir Richard Branson, the Virgin Group has gone on to grow successful businesses in sectors ranging from mobile telephony, travel, financial services, leisure, music, holidays and health & wellness." (*Id.*)

Plaintiff Colin Veitch (hereinafter, "Veitch") is a former Norwegian Cruise Line ("NCL") executive. (*Id.* ¶ 10.) Plaintiff VSM Development, Inc. is "Mr. Veitch's investment vehicle." (*Id.* ¶ 71, n. 12.)

### B.    In March 2011, Veitch and VMUSA enter into the NDA.

According to the Complaint, following Veitch's 2008 retirement from NCL, he "analyzed the successful introduction" of two already-existent "Ultra Ships"—NCL's "*Norwegian Epic*, as well as … Royal Caribbean's new Ultra Ship, the *Oasis of the Seas*"—and "prepared a detailed business plan entitled 'Ultra Ships – A Greenfield Opportunity in the Cruise Industry.'" (Compl.

---

[2]    Although the Virgin Defendants dispute the allegations in the Complaint, because they must, for purposes of this motion only, the Virgin Defendants accept Plaintiffs' allegations in the Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

¶¶ 22, 28 (hereinafter, the "Ultra Ships Plan").)  Upon completing the Ultra Ships Plan, Plaintiffs allege that "Veitch considered enlisting a 'branding partner' for the venture."  (*Id.* ¶ 44.)  Plaintiffs allege that they were aware that "Virgin for many years sought entry into the cruise industry," that Veitch met with VMUSA in December 2010, and that two months later, Veitch told VMUSA that "he had developed a business plan for a new entrant in the cruise industry." (*Id.* ¶¶ 46-49.)

To allow the parties to evaluate "a potential business relationship between them," on March 11, 2011, Veitch and VMUSA entered into an NDA.  (*Id.* ¶ 52; D.E. 1-4, Compl. Ex. B, at p. 1.)  VMUSA is the only defendant that is a party to the NDA.  (D.E. 1-4, Compl. Ex. B.)  The NDA contained the "entire agreement" between Veitch and VMUSA with respect to "Confidential Information" shared amongst them, and required that the parties "(i) [] hold Confidential Information in strict confidence and not disclose Confidential Information to any third parties;" and "(ii) [] not use Confidential Information for its own purposes [other than] in connection with evaluating the Potential Transaction." (*Id.* ¶¶ 2-5, 8.)  Importantly, these obligations ***were not indefinite***, but instead were expressly limited to the three-year period following execution of the NDA:

> The term of this Agreement shall commence upon [March 11, 2011] and shall continue in full force and effect until the earlier of (a) such time as Confidential Information is publicly disclosed with Disclosing Party's written authorization, and (b) three (3) years from the date hereof.

(*Id.* ¶ 6.)  Thus, the confidentiality, non-use, and other restrictions in the NDA indisputably expired on March 11, 2014.  (*Id.*)

### C.      In May 2011, the parties allegedly begin to negotiate the purported "Veitch-Virgin Agreement."

The Complaint alleges that "[i]n May of 2011, Virgin and Mr. Veitch negotiated a deal between the two of them to share in the control, risks, and profits of the proposed venture." (Compl. ¶ 57.)  However, other allegations in and attachments to the Complaint show that these negotiations never resulted in a binding contract.

According to the Complaint, a May 19, 2011 email from Veitch and a May 20, 2011 email from VMUSA "together form the Veitch-Virgin Agreement."  (*Id*. ¶ 64.)  These emails alone demonstrate that no "Veitch-Virgin Agreement" was formed.  In particular, following discussions on proposed financial arrangements, (*id.* ¶¶ 58-62), on May 19, 2011 "Mr. Veitch

responded" to VMUSA's proposal by sending an email containing his "tentative proposal" for the structure of a joint-venture. (*Id.* ¶ 63; D.E. 1-5, Compl. Ex. C, at p. 3.) The email contained proposed terms for the venture, including the "royalty rate" and "promote split," but expressly recognized that the parties were "not quite negotiating in a vacuum," as the proposed terms were "missing the targets and thresholds of the other potential providers of seed capital and of main capital" for the project—*i.e.*, investors. (D.E. 1-5, Compl. Ex. C, at p. 5.) In light of this, Veitch explicitly stated that the proposed "royalty rate and the promote split and sub-splits **will [] be subject to further review** as we get into the fund raising." (*Id.* at p. 3 (emphasis added).)

On May 20, 2011, VMUSA "responded" to this proposal. (Compl. ¶ 64.) VMUSA's email contained a counter-proposal on the royalty rate and promote split, and like Veitch's email, recognized that the parties would "need to reconsider the above [proposal] if there is a material movement" on terms in the future. (D.E. 1-5, Compl. Ex. C, at p. 7.) According to Plaintiffs, following receipt of the May 20, 2011 email "Veitch held a phone conference with Virgin where, after discussing possible changes, both parties agreed to stick with the new numbers they had proposed in their e-mail. Thus the Veitch-Virgin Agreement was concluded." (Compl. ¶ 65.)

However, the Complaint confirms that even after this phone conference, material terms of the so-called Veitch-Virgin Agreement were still subject to future review, including the terms that Plaintiffs now allege form the basis of their breach claims against the Virgin Defendants. As Plaintiffs allege: "Both parties recognized that when the fundraising began, the investors might seek certain changes in the deal, such as the minimum return **or the percentage of the Promote that would be available to Mr. Veitch and Virgin.**" (*Id.* ¶ 66 (emphasis added).)

**D.    In March 2012, Plaintiffs confirm that the terms of the Veitch-Virgin "co-venturing arrangement" have not yet been "finaliz[ed]."**

As of March 2012, Plaintiffs confirmed and third parties recognized that there was no final agreement between Plaintiffs and any Virgin Defendant. Specifically, a letter of intent—"one of the key components needed to take the Ultra Ships plan to the investors" (Compl. ¶ 86)—was executed on March 12, 2012 by VSM Development, Inc., VGIL (collectively the "Customers"), and Meyer Werft. (*See* D.E. 1-6, Compl. Ex. D (hereinafter the "LOI").)

The LOI "record[ed] the declared intentions of the parties" and was expressly contingent on the "satisfaction of [certain] further conditions." (*Id.* § 6(B).) Specifically, the parties expressly agreed that as condition precedent to "the orders for the Ships" from Meyer Werft, the

Customers **must first** "**finaliz[e] their co-venturing arrangements**." (*Id*.) If a co-venturing arrangement was not finalized by July 6, 2012, the LOI would become "null and void ab initio." (*Id.*) Put another way, the parties to the LOI expressly recognized that as of March 12, 2012—when Veitch signed the LOI—no "co-venturing arrangements" had been finalized. (*Id.*) The Complaint contains no allegations that any such express co-venturing conditions were ever met.

E.      **In June 2012, Plaintiffs confirm the "termination of discussions and activities regarding the [parties'] long-term cruise line partnership."**

That the March 12, 2012 LOI would be contingent on the finalization of a co-venturing arrangement between Plaintiffs and the Virgin Defendants is not surprising. As the Complaint details, at that time Plaintiffs and VMUSA disagreed on terms for any potential joint venture: VMUSA "would not agree to [Plaintiffs] receiving 90% of the Promote," while Plaintiffs would not agree to the proposal that they "would receive 10% of the Promote that would be vested, and that if [Veitch] continued to be employed as the CEO for a period of years, he could potentially earn an additional 30% of the Promote, for a potential grand total of 40% over time." (Compl. ¶ 122.) Allen & Company, an investment bank "chose[n] to consult" with respect to the Ultra Ships Plan (*id.* ¶ 42), "attempted to mediate" between VMUSA and Plaintiffs. (*Id.* ¶ 124.) According to the Complaint, this disagreement was never resolved. (*See id.* ¶¶ 119-127.)

Thus, on June 8, 2012, Plaintiffs' counsel "sent Virgin a letter" confirming that any potential partnership between the parties was conclusively terminated. (*Id.* ¶ 126; Ex A.[3]) In that letter, which the Complaint expressly incorporates by reference, Plaintiffs' counsel stated: "[Veitch] desires that the parties will remain on good terms" despite "***the unfortunate termination of discussions and activities regarding the long-term cruise line partnership with Virgin Group***." (Ex. A (emphasis added).) The letter "remind[ed]" VMUSA that it had "no authorization to continue with the project without Mr. Veitch" given the termination of their discussions, and emphasized that VMUSA "may not, for three years after the NDA, directly or indirectly use in any way or manner whatsoever the Confidential Information or the substance or contents thereof." (*Id.*) In response, VMUSA "stated that they would abide by the terms of the NDA." (Compl. ¶ 127.)

---

[3]   Attached hereto as Exhibit A is a true and correct copy of the June 8, 2012 letter from Alan Axelrod, P.A. to Nirmal Saverimuttu and Anthony Marino incorporated by referenced in paragraph 126 to the Complaint.

F.   **In February 2014, a "Virgin Group" cruise operation is announced.**

Approximately twenty months after Plaintiffs confirmed the termination of discussions with VMUSA, "Sky News reported that 'Virgin Group has appointed the US-based corporate advisory firm Allen & Co. to oversee the development of a cruise operation that would eventually aim to compete with industry giants including Carnival Corporation.'" (Compl. ¶ 129.)  The press reported that Mr. Richard Branson proclaimed: "We are building two large ships quite from scratch and we feel that the Virgin brand will work well with cruises."  (*Id.* ¶ 130.)  One year later, Plaintiffs filed this suit.

**ARGUMENT**

I.   **PLEADING DEFICIENCIES REQUIRE DISMISSAL OF THE COMPLAINT IN ITS ENTIRETY**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires that a complaint, at a minimum, "give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests."  *Scott v. Yellon*, No. 13-cv-157, 2013 WL 3802797, at *1 (M.D. Fla. July 11, 2013) (*citing Twombly,* 550 U.S. at 555 n. 3).  The Complaint fails to satisfy these procedural requirements and should be dismissed.

A.   **The Complaint must be dismissed for failure to distinguish between the Virgin Defendants.**

Plaintiffs acknowledge that each of the Virgin Defendants are separate entities, (*see* Compl. ¶¶ 3-5), yet the Complaint never treats them as such.  Instead, Plaintiffs lump together the Virgin Defendants (as well as the fourth, unserved defendant that Plaintiffs call "Virgin Cruises"), referring to them "collectively" as either "Virgin" or "Defendants" throughout the Complaint, including in each of the Complaint's Counts I – VIII.  (*See generally id*.)  This is improper, as a complaint that "lump[s] all the defendants together in each claim" provides "no factual basis to distinguish their conduct." *Lane v. Capital Acquisitions and Management Co.*, No. 04-cv–60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006).  For this reason alone, the Complaint should be dismissed.  *See, e.g.*, *U.S. Bank Nat'l Assoc. v. Capparelli*, No. 13-cv-80323, 2014 WL 2807648, at *3 (S.D. Fla. June 20, 2014) (dismissing complaint where it

6

"merely lumps [defendants] together in each claim and provides no factual basis to distinguish their conduct"); *George & Co., LLC v. Alibaba.com, Inc.*, No. 10-cv-719, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (dismissing complaint where "plaintiff briefly alleges that the defendants are separate entities … but then fails to distinguish their misconduct").

> **B.    The Complaint must be dismissed for improper "shotgun" pleading.**

The Complaint is also "a quintessential 'shotgun' pleading," in that "[e]ach count incorporates by reference the allegations made in [the fact] section," while "also incorporating the allegations of any count or counts that precede it." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). (*See, e.g.,* Compl. ¶ 188 (Count VIII of the Complaint for which "Plaintiffs incorporate by reference all prior allegations of the complaint as if fully set forth herein").)  "By comingling the factual allegations against all defendants" and "realleging every previous allegation by reference in each claim for relief," Plaintiffs have "effectively placed the onus on [the Virgin Defendants] to discern which, if any, of the allegations are brought against them." *U.S. Bank Nat'l Assoc.*, 2014 WL 2807648, at *3.   "This is wholly improper," warranting dismissal of the Complaint in its entirety.  *See, e.g.*, *id.* (dismissing complaint for failure to state a claim given improper shotgun pleading); *Scott*, 2013 WL 3802797, at *2 (dismissing complaint for failure to state a claim upon which relief may be granted due to "shotgun pleading," where the complaint "contains paragraphs realleging the allegations in 200 preceding paragraphs under each Count"); *George & Co.,* 2011 WL 6181940, at *1-2.

## II.    PLAINTIFFS' CLAIM FOR AN INJUNCTION UNDER THE EXPIRED NDA MUST BE DISMISSED WITH PREJUDICE (COUNT II)

All of the Virgin Defendants request dismissal of Count II, which purportedly seeks "an injunction against the use of Veitch's Confidential Information" for alleged breach of the NDA. (Compl. ¶ 149.)  This request is foreclosed by New York law—which governs interpretation of the NDA[4]—and accordingly must be dismissed with prejudice.

First, under both New York and Florida law, an injunction "is a type of remedy—not a separate cause of action." *Venerus v. Avis Budget Car Rental, LLC*, No. 13-cv-921, 2014 WL 4092323, at *7 (M.D. Fla. Aug. 18, 2014); *Trustees of the Nat. Ret. Fund v. Wildwood Corp.*,

---

[4]   D.E. 1-4, Compl. Ex. B, § 8 ("This Agreement shall be governed by the internal laws of New York.").

No. 11-cv-6287, 2013 WL 8446003, at *2 n. 1 (S.D.N.Y. Dec. 17, 2013) ("an injunction is not a claim, but rather, a form of relief").  Thus, Plaintiffs' Count II asserts a non-existent "cause of action" for "Breach of Contract for Injunction," and for that reason should be dismissed with prejudice.  *See, e.g., Brevard Cnty., Fla. v. Priceline.com, Inc.*, No. 09-cv-1695, 2010 WL 680771, at *5 (M.D. Fla. Feb. 24, 2010) (dismissing claim for injunctive relief with prejudice).

In addition, a court may not award injunctive relief for breach of a contract after that contract has expired by its terms. *TNS Media Research, LLC v. TRA Global, Inc.*, No. 11-cv-4039, 2014 WL 1370279, at *1 (S.D.N.Y. Apr. 7, 2014).  *TNS Media Research, LLC* is directly on-point.  There, the plaintiff sought injunctive relief for an alleged breach of "a 2008 Non-Disclosure Agreement ('NDA') [and] a 2009 NDA," both of which had expired prior to plaintiffs' request for an injunction.  *Id.*  The court thus denied plaintiffs' request, finding that the two NDAs "have expired, rendering injunctive relief moot."  *Id.* (*citing Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 214 n. 2 (1979) ("The contracts have expired, and the question of injunctive relief is out of the case.")).

Similarly here, the NDA between Veitch and VMUSA expired by its express terms at least 13 months ago, on March 11, 2014. (D.E. 1-4, Compl. Ex. B, § 6 (the NDA executed on March 11, 2011 shall only remain "in full force and effect until the earlier of (a) such time as Confidential Information is publicly disclosed with Disclosing Party's written authorization, and (b) three (3) years from the date hereof").)  Thus, Plaintiffs' request for an injunction is barred, and Count II of the Complaint must be dismissed with prejudice.  *See, e.g.*, *TNS Media Research,* 2014 WL 1370279, at *1; *Banner Indus. of N.E., Inc. v. Wicks*, No. 11-cv-1537, 2014 WL 6810623, at *18 (N.D.N.Y. Dec. 1, 2014) (rejecting claim for injunctive relief where three-year prohibition period "has expired; thus, [the contract provision] is not enforceable by injunctive relief"); *Stanley Tulchin Assocs., Inc. v. Vignola,* 186 A.D.2d 183, 185-86 (N.Y. App. Div. 1992) ("Since the three-year period [of the NDA prohibiting former employee from making use of plaintiff s client list] has expired, we cannot grant injunctive relief."); *accord Convolve, Inc. v. Compaq Computer Corp.*, No. 00-cv-5141, 2011 WL 7144803, at *26 (S.D.N.Y. Oct. 6, 2011) (injunctive relief is unavailable in 2011 where defendant's "duty to protect any disclosed confidential information" expired in 2003 under the parties' NDA) (*rev'd in part on other grounds*); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 694 (Bankr. M.D. Fla. 2010) (rejecting request for an injunction where "the period for any injunction arising from [the parties' alleged

agreement] had long expired").

### III. PLAINTIFFS' CLAIMS FOR BREACH OF THE VEITCH-VIRGIN AGREEMENT, THE DUTY OF GOOD FAITH, AND FIDUCIARY DUTY (COUNTS VI, VII, AND VIII) MUST BE DISMISSED AGAINST ALL VIRGIN DEFENDANTS WITH PREJUDICE

#### A. Documents attached to the Complaint demonstrate that no "Veitch-Virgin Agreement" was ever formed.

Plaintiffs allege in the most conclusory terms that "[t]he parties reached the Veitch-Virgin Agreement in May 2011 through meetings, negotiations, and the exchange of e-mails setting forth a complete and binding agreement between Veitch and Virgin."  (Compl. ¶ 177.) But three separate documents Plaintiffs expressly incorporated into the Complaint conclusively demonstrate otherwise.  *E.g. Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A., a/k/a S.A.F., S.A. v. Ryder Int'l, Inc.*, No. 06-cv-22774, 2007 WL 628133, at *2-3 (S.D. Fla. Feb. 26, 2007) (dismissing contract claim where documents incorporated into the complaint demonstrate that no agreement was reached); *see CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-cv-21598, 2007 WL 117935, at *4 (S.D. Fla. Jan. 10, 2007) ("While normally on a motion to dismiss the Court must accept the facts alleged in a complaint as true, if an allegation in the complaint is contradicted by a document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate."); *Cucinotta v. CVS Pharmacy, Inc.*, No. 12-cv-1194, 2012 WL 5467524, at *3-4 (M.D. Fla. Nov. 9, 2012) (if there is a "conflict between allegations in a pleading" and documents appropriately considered at the dismissal stage, "it is well settled that the exhibits control"); *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

First, the emails that purportedly form the Veitch-Virgin Agreement themselves confirm that no enforceable contract was reached.  (D.E. 1-5, Compl. Ex. C.)[5]  Under both Florida and

---

[5]   This email correspondence that allegedly "form[ed] the Veitch-Virgin Agreement" may be considered at the dismissal stage because it was attached as Exhibit C to the Complaint. *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08-cv-60739, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008) ("A copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes, including a Rule 12(b)(6) motion to dismiss." (*citing* Fed. R. Civ. P. 10(c)).

New York law,[6] if a purported agreement leaves essential terms "subject to future negotiation, there can be no enforceable contract." *Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Grp., Inc.*, 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998) (*citing Suggs, Jr. v. Defranco's, Inc.*, 626 So.2d 1100, 1101 (Fla. Dist. Ct. App. 1993)); *Lieberman v. Good Stuff Corp.*, No. 94-cv-5601, 1995 WL 600864, at *3 (S.D.N.Y. Oct. 11, 1995) (under New York law, a contract is unenforceable where it amounts to a "mere agreement to agree, in which a material term is left for future negotiations").

Here, the alleged Veitch-Virgin Agreement was expressly made "***subject to further review*** as [the parties] get into the fund raising," as the parties recognized that they would "need to reconsider" key terms in the future based on "targets and thresholds of the other [third-party] potential providers of seed capital and of main capital." (*See* D.E. 1-5, Compl. Ex. C (emphasis added).) Even the Complaint confirms the preliminary nature of the parties' alleged understanding: Following the "phone conference" in which "the Veitch-Virgin Agreement was concluded," both parties nevertheless "recognized that when the fundraising began, the investors might seek certain changes in the deal, such as the minimum return or the percentage of the Promote that would be available to Mr. Veitch and Virgin." (Compl. ¶ 66.)

Plaintiffs clearly believe that the "minimum return [and] percentage of the Promote" each party would be entitled to—which determine each party's right to investment returns in the alleged joint venture (*id.* at p. 2, n. 1)—are essential terms of the alleged Veitch-Virgin Agreement; they purportedly brought this lawsuit to enforce those very terms. (*Id.* ¶ 66); *see, e.g.*, *Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606-07 (N.Y. App. Div. 2014) (finding agreement unenforceable when essential terms of each party's right to investment returns were left "subject to future negotiations and approval"). Because these essential terms were purposefully left open "subject to further review" in the future, no enforceable agreement was reached in May 2011. *E.g., Benham*, 118 A.D.3d at 606-07.

Thus, Exhibit C to the Complaint cannot form the basis for a breach of contract claim, and Count VI should be dismissed. *See, e.g.*, *Servicios De Almacen*, 2007 WL 628133, at *2-3 (dismissing breach of contract claim "because the purported joint venture agreement is

---

[6]  Plaintiffs do not allege whether Florida or New York state substantive law would govern the alleged Veitch-Virgin Agreement. However, it is immaterial here as the Veitch-Virgin Agreement is unenforceable under both states' laws.

unenforceable as a matter of law:" "[a]t most, the subject documents [attached to the complaint] constitute an agreement to agree in the future, which Florida courts have uniformly refused to enforce"); *Argent Acquisitions, LLC v. First Church of Religious Sci.*, 118 A.D.3d 441, 445 (N.Y. App. Div. 2014) (affirming dismissal of breach of contract claim where "the documentary evidence created after the execution of the September 14 letter" that allegedly formed the basis for an agreement "establishes that it was not meant to constitute a final agreement"); *Atl. St. John, LLC v. Yoemans*, 5 Misc. 3d 1031(A), 2004 WL 2941402, at *4 (N.Y. Sup. Ct. Oct. 21, 2004) (dismissing breach of contract claim premised on alleged joint venture where "[t]he e-mails and memoranda which passed between the parties … establish, as a matter of law, that no final agreement existed").

Although this email correspondence alone is sufficient to warrant dismissal, two additional documents incorporated by reference into the Complaint further confirm that no enforceable agreement was reached.  Specifically, the March 12, 2012 LOI—which is dated nearly a year after Plaintiffs allege the formation of a purported agreement with the Virgin Defendants—explicitly stated that its provisions were "subject to satisfaction of … [Virgin and Veitch] finalizing their co-venturing arrangements."  (D.E. 1-6, Compl. Ex. D, at p. 5.)[7] Obviously, there would be no such language in the 2012 LOI if such conditions had been satisfied (and, tellingly, Plaintiffs do not allege the satisfaction of such conditions).  As such, Plaintiffs confirmed—in a signed writing—that as of that date, *no co-venturing arrangement had been finalized*.  (*See id.*)

The June 8, 2012 letter from Plaintiffs' counsel to VMUSA also demonstrates that, far from agreeing to proceed with a joint venture, the parties instead had chosen to "*terminat[e] [] discussions and activities* regarding the long-term cruise line partnership."  (Ex. A (emphasis added).)[8]  This documentary evidence that Plaintiffs chose to incorporate into the Complaint

---

[7]  The terms of the LOI may also be considered at the dismissal stage because the LOI was attached as Exhibit D to the Complaint.  *Indulgence Yacht Charters*, 2008 WL 4346749 at *4.

[8]  While this June 8, 2012 letter was not attached as an exhibit to the Complaint, it may still be considered at the dismissal stage because: (a) it was expressly referenced therein (*see* Compl. ¶ 126 ("Mr. Veitch's counsel sent Virgin a letter …")); (b) it is central to Veitch's claim that the parties formed an alleged joint-venture agreement; and (c) Veitch cannot dispute the authenticity of this letter. *See Eveillard v. Nationstar Mortgage LLC*, No. 14-cv-61786, 2015 WL 127893, at *4 (S.D. Fla. Jan. 8, 2015) ("A court considering a Rule 12(b) motion is generally limited to the

confirms that no enforceable Veitch-Virgin Agreement was *ever* formed and, accordingly, no breach claim may lie. *See, e.g.*, *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1296298, at *5-6 (S.D. Fla. Mar. 27, 2013) (dismissing joint venture claim where document "reference[d] in [plaintiff's] Amended Complaint, and which is central to Plaintiff's joint venture claim, contradicts the allegations that [the parties] were engaged in a joint venture"); *cf. Gayou v. Celebrity Cruises, Inc.*, No. 11-cv-23359, 2012 WL 2049431, at *9-10 (S.D. Fla. June 5, 2012) (dismissing claim that an actual agency agreement was reached because documents referenced in the complaint and attached by defendant to the motion to dismiss conclusively showed otherwise).

### B. Plaintiffs' breach of duty of good faith claim must be dismissed because no such claim may stand absent an enforceable contract.

Plaintiffs' claim for "breach of duty of good faith" is premised on the Veitch-Virgin Agreement "creat[ing] an enforceable obligation on Virgin to negotiate in good faith." (Compl. ¶¶ 185-186.) However, as discussed above, the Veitch-Virgin Agreement never existed. It is axiomatic that absent an enforceable contract, a duty of good faith claim cannot stand. *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1362 (S.D. Fla. 2011) (applying Florida law: "a proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract"); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-7500, 2015 WL 585589, at *5 (S.D.N.Y. Feb. 11, 2015) (applying New York law: to "allege a claim for breach of the covenant of good faith and fair dealing adequately, a party must first allege the existence of a contract").

Because the contract forming the basis for Plaintiffs' good faith claim does not exist, Count VI of the Complaint must be dismissed. *See, e.g., Senter,* 810 F. Supp. 2d at 1362 (dismissing good faith claim where "Plaintiffs failed to adequate plead that the [agreements allegedly breach] are valid contracts"); *Banco Espirito Santo de Investimento, S.A. v. Citibank,*

---

facts contained in the complaint and attached exhibits, but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment"); *e.g. Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1338 (S.D. Fla. 2012).

*N.A.*, No. 03-cv-1537, 2003 WL 23018888, at *6 (S.D.N.Y. Dec. 22, 2003) (dismissing good faith claim where plaintiff failed to allege that an enforceable contract arose between the parties); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001) (dismissing action where plaintiffs failed to allege a valid contract: "[a] cause of action for breach of this implied covenant ... is dependent upon the existence of an enforceable contract"); *Univ. Creek Assocs. II, Ltd.*, 100 F. Supp. 2d at 1340-41 (dismissing duty of good faith claim after holding that plaintiff failed to allege an enforceable contract).

C.   **Plaintiffs' fiduciary duty claim must be dismissed because no fiduciary relationship between the parties ever arose.**

The fact that no enforceable Veitch-Virgin Agreement was reached also mandates dismissal of Plaintiffs' fiduciary duty claim. The existence of a fiduciary relationship is a necessary prerequisite to any fiduciary duty claim. *McLean v. GMAC Mortgage Corp.*, No. 06-cv-22795, 2008 WL 1956285, at *17 (S.D. Fla. May 2, 2008) ("Under Florida law, a cause of action for breach of fiduciary duty is founded on a fiduciary relationship."); *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 101 (S.D.N.Y. 2013) (applying New York law: "Necessarily, a predicate for breach of fiduciary duty is that a fiduciary relationship existed between the parties.").

Here, the alleged "fiduciary relationship" between Plaintiffs and the Virgin Defendants is premised ***entirely*** on the allegation that "the agreement reached by Veitch and Virgin established both a partnership and a joint venture." (Compl. ¶ 190.) Because no such agreement was ever reached, however, no fiduciary relationship was formed and Plaintiffs' Count VIII must be dismissed. *See, e.g.*, *Goureau v. Goureau*, No. 12-cv-6443, 2013 WL 417353, at *5 (S.D.N.Y. Feb. 4, 2013) ("Because plaintiffs have not adequately alleged that [defendant] was a member of the joint venture, and have not alleged that she owed plaintiffs a fiduciary duty for any other reason, there is no factual support for plaintiffs' claim that she owed them a fiduciary duty."); *N. Shipping Funds I, LLC*, 921 F. Supp. 2d at 104-105 (dismissing fiduciary duty claim where plaintiff failed to allege that the parties agreed to enter into a joint venture establishing a fiduciary relationship); *Servicios De Almacen*, 2007 WL 628133, at *2-4 (dismissing fiduciary duty claim: "[plaintiff] claims that [defendant's] fiduciary duty arose expressly from the purported joint venture represented by the documents attached to the Complaint," but because "there was no meeting of the minds between [plaintiff] and [defendant] as to all of the essential

13

elements of an enforceable joint venture agreement," no fiduciary duty arose).

## IV. THE BREACH OF CONTRACT AND FIDUCIARY DUTY CLAIMS MUST BE DISMISSED AS TO VGIL AND VM (COUNTS I, II, VI, VII, AND VIII)

Counts I and II of the Complaint purportedly seek to recover from all of the Virgin Defendants for breach of the NDA, (Compl. ¶¶ 135-49), but neither VGIL nor VM are parties to that contract. (*See* D.E. 1-4, Compl. Ex. B.) "It is hornbook law that an entity must be a party to a contract for a claim of breach of that contract to lie, unless the entity has assumed or been assigned the contract." *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-cv-227, 2015 WL 1011816, at *7 (S.D.N.Y. Mar. 9, 2015). Plaintiffs have alleged no facts from which the Court may infer that VGIL or VM have assented to the NDA's terms, and thus they cannot be liable for any alleged breach. *See, e.g., R/V Beacon, LLC v. Underwater Archeology & Exploration Corp.*, No. 14-cv-22131, 2014 WL 4930645, at *3 (S.D. Fla. Oct. 1, 2014) (dismissing breach of contract claims against defendant who was not a party to the alleged contract); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 252 (S.D.N.Y. 2009) (plaintiff cannot maintain a breach of contract claim against non-parties to the alleged agreement); *Kamdem-Ouaffo*, 2015 WL 1011816, at *7.

Counts VI and VII—seeking to recover for breach of the alleged Veitch-Virgin Agreement—must be dismissed with prejudice for the same reason, as the email allegedly forming the basis for that agreement was sent by VMUSA, not VGIL or VM. (*See* D.E. 1-5, Compl. Ex. C, at p. 7); *e.g., R/V Beacon*, 2014 WL 4930645, at *3; *Ho Myung Moolsan*, 665 F. Supp. 2d at 252.

Finally, because VGIL and VM indisputably had no contractual relationship with Plaintiffs that could form the basis for a fiduciary relationship, (*see* Compl. ¶ 190), Count VIII seeking to recover for breach of fiduciary duty must be dismissed. *See, e.g., Goureau*, 2013 WL 417353, at *5; *Servicios De Almacen*, 2007 WL 628133, at *2-4.

In sum, Counts I, II, VI, VII and VIII should be dismissed with prejudice as to VGIL and VM.

## V. PLAINTIFFS' CLAIMS FOR COMMON LAW MISAPPROPRIATION, UNJUST ENRICHMENT, AND UNFAIR COMPETITION MUST BE DISMISSED WITH PREJUDICE

Counts III, IV and V of the Complaint seek to recover for common-law misappropriation,

unjust enrichment, and unfair competition respectively. (*See* Compl. ¶¶ 150-175.) Each of these claims is preempted by the FUTSA, and fail for the independent reason that Plaintiffs have not alleged facts sufficient to support these causes of action. Thus, they should be dismissed with prejudice.

### A. Plaintiffs' common-law misappropriation claim is barred by the FUTSA.

The FUTSA expressly preempts any "conflicting tort, restitutory, and other laws of [Florida] providing civil remedies for misappropriation of a trade secret." Fla. Stat. Ann. § 688.008(1). Thus, if misappropriation allegations under the FUTSA "alone comprise the underlying wrong" for a tort or quasi-contract claim, that claim must be dismissed. *See Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002).

Here, Plaintiffs' alleged claim for "common law" misappropriation is inseparable from their FUTSA cause of action. (*See* Compl. ¶ 151 (seeking relief "[p]ursuant to **both** the common law **and** Florida Stat. § 688.001(1)," relying on the same factual allegations (emphasis added)).) The FUTSA expressly preempts this "common law" misappropriation claim.[9] *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) ("Florida's Uniform Trade Secrets Act displaces tort law regarding trade secret misappropriation."); *Audio Sys. of Fla., Inc. v. Simplexgrinnell LP*, No. 03-cv-404, 2003 WL 22830002, at *5 (M.D. Fla. July 14, 2003) (the FUTSA precludes a plaintiff from pursuing any "common law misappropriation of trade secret claim").

---

[9] Plaintiffs' expressly seek injunctive relief only for breach of the NDA (Count II), as discussed above, and not for any other claim, including its misappropriation claim (Count III). Even had Plaintiffs sought an injunction on the trade secret misappropriation claim, this relief is barred as a matter of law because injunctive relief is unavailable once alleged trade secrets cease to exist. *See* Fla. Stat. Ann. § 688.003(1) (any injunction "shall be terminated upon application **once a trade secret ceases to exist** … ") (emphasis added); *Kubik, Inc. v. Hull*, 224 N.W.2d 80, 94-95 (Mich. 1974) (stating that once a claimed trade secret is publicly disclosed, an injunction is inappropriate because "[d]amages properly assessed, will fully compensate plaintiff for the loss … "). As discussed above, the NDA expired by its terms in March 2014, and thus Plaintiffs' alleged trade secrets ceased to exist by that time. Further, Plaintiffs voluntarily disclosed the alleged trade secrets to the public by detailing them in and attaching them as exhibits to their Complaint and thus they are no longer trade secrets. (*See, e.g.*, Compl. ¶¶ 22–108; *id.* D.E. 1-1, 1-4, 1-5, 1-6, & 1-7, Exs., A, D–G.) *See also In re Nat'l Consumer Mortgage, LLC*, 512 B.R. 639, 642 (D. Nev. 2014) (admitting claimed trade secrets "into evidence before the jury in open court during the trial" constituted a "public release[]" and thus they were no longer trade secrets). Thus, even if the Complaint did seek injunctive relief for Plaintiffs' misappropriation claim, such relief would be properly dismissed.

15

**B.    Plaintiffs' unjust enrichment claim is barred by the FUTSA, and fails for lack of any present benefit conferred on the Virgin Defendants.**

The factual predicate underlying Plaintiffs' unjust enrichment claim is the same as that underlying Plaintiffs' FUTSA claim. (*Compare* Compl. ¶ 164 (alleging unjust enrichment as "[p]laintiffs conferred benefits upon defendants by presenting them the Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA") *with id*. ¶ 152 (alleging that defendants misappropriated the "Ultra Ships Plan and other Confidential Information disclosed pursuant to the NDA").)  Further, the relief Plaintiffs seek for their unjust enrichment claim is already available under the FUTSA, which expressly permits recovery for unjust enrichment caused by misappropriation.  Fla. Stat. § 688.004(1) ("a complainant is entitled to recover damages for misappropriation … [including] unjust enrichment caused by misappropriation that is not taken into account in computing actual loss").  "It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).

Accordingly, "because an adequate remedy exists at law" under the FUTSA, Plaintiffs have "not stated a claim upon which relief may be granted" for unjust enrichment, and the Complaint's Count IV should be dismissed with prejudice.  *See, e.g.*, *id.* (dismissing unjust enrichment claim as it was "predicated on the same set of allegations supporting their claims under FUTSA … "); *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 910 (M.D. Fla. 2007) ("Because FUTSA expressly authorizes a plaintiff to recover the 'unjust enrichment caused by misappropriation' a claim for unjust enrichment is indistinguishable from the remedy under the statute and therefore is preempted.").

Plaintiffs' unjust enrichment claim also fails because Plaintiffs have not alleged (and cannot allege) that any benefit has yet been conferred on the Virgin Defendants.  Under Florida law, "[i]t is axiomatic that there must be a benefit conferred before unjust enrichment exists." *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d 710, 712 (Fla. Dist. Ct. App. 1988); *accord Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259-60 (S.D.N.Y. 2012) ("The essence of [an unjust enrichment] claim is that one party *has* received money or a benefit at the expense of another." (emphasis in original)).  Here, while Plaintiffs summarily allege that they "conferred benefits upon Defendants by presenting them the Ultra Ships Plan," (Compl. ¶ 164), the

Complaint is devoid of factual allegations that any Virgin Defendant has, to date, benefitted from a future cruise venture, other than through misappropriation of an alleged trade secret (which claim would be preempted).  (*See generally id*.)  The absence of an allegation identifying a concrete benefit conferred on the Virgin Defendants, other than any alleged misappropriation of a trade secret, mandates dismissal of Plaintiffs' unjust enrichment claim.  *See, e.g., Iberiabank v. Coconut 41, LLC,* No. 11-cv-321, 2012 WL 473576, at *3 (M.D. Fla. Feb. 14, 2012) (dismissing unjust enrichment claim where complaint failed to allege supporting facts stating "how [defendant] knowingly benefitted" from alleged improvements); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So. 2d 883, 884 (Fla. Dist. Ct. App. 1982) (while plaintiff may have "enhanced the value of the equipment" it repaired, recovery for unjust enrichment was still barred because "it [was] speculative to say that any benefit has come to [defendant]" where defendant had not profited  from rental of the equipment).

### C.  Plaintiffs' unfair competition claim is barred by the FUTSA, and fails because Plaintiffs do not allege consumer confusion.

Count V seeks to recover for "unfair competition" and is based on allegations that: (1) "Virgin engaged in unfair competition as it misappropriated Mr. Veitch's Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA;" and (2) "Virgin engaged in unfair competition as it exploited the skill, expenditures and labors of Mr. Veitch before setting itself up as a competitor to Mr. Veitch."  (Compl. ¶¶ 173-74.)  Florida law precludes recovery under either of these theories.

To the extent Plaintiffs' unfair competition claim is based on allegations of "misappropriat[ion]" of the "Ultra Ships Plan," (*id*. ¶ 174), that claim is again displaced by the FUTSA and must be dismissed with prejudice. *See, e.g,*, *Allegiance Healthcare Corp.*, 232 F. Supp. 2d at 1336 (dismissing unfair competition claim as preempted where it was based on the "use of the trade secrets, confidential information, and other information"); *Coulter Corp. v. Leinert*, 869 F. Supp. 732, 735 (E.D. Mo. 1994) (applying Florida law, dismissing unfair competition claim because "the only wrong alleged by plaintiff centers on misappropriation of trade secrets").

Nor can Plaintiffs maintain an unfair competition common law claim based on the allegation that the Virgin Defendants "exploited the skill, expenditures and labors of Mr. Veitch …" (Compl. ¶ 173.)  In *North Atlantic Marine Ltd. v. Sealine International, Ltd.*, for example,

the plaintiff asserted an unfair competition claim alleging that the defendant "misappropriated the labors of and expenditures of [plaintiff]."  No. 06-cv-20200, 2007 WL 5298433, at *11–12 (S.D. Fla. Mar. 29, 2007).  The court noted that to prevail on an unfair competition claim based on these allegations, "a plaintiff must 'establish … [a] likelihood of consumer confusion.'"  *Id.* at *12 (*citing M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493-94 (11th Cir. 1990)).   Here, the Complaint does not allege that the Virgin Defendants conduct was ever likely to cause "consumer confusion."  (*See generally* Compl.)  Plaintiffs' failure to plead this essential element of their unfair competition claim also mandates dismissal.  *See, e.g.*, *Lorador v. Vasquez*, No. 14-cv-433, 2015 WL 300433, at *1 (M.D. Fla. Jan. 22, 2015) (dismissing counterclaim where party "fail[ed] to allege facts showing that the plaintiffs' conduct will cause consumer confusion"); *North Atlantic Marine*, 2007 WL 5298433 at * 13.

## CONCLUSION

For the foregoing reasons, the Virgin Defendants respectfully request that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismiss (1) Count II (Breach of Contract (NDA) for Injunction), (2) Count III (Common-Law Misappropriation), (3) Count IV (Unjust Enrichment), (4) Count V (Unfair Competition), (5) Count VI (Breach of Contract (Virgin-Veitch Agreement)), (6) Count VII (Breach of Duty of Good Faith), and (7) Count VIII (Breach of Fiduciary Duty) against them with prejudice.  In addition, VM and VGIL respectfully request that, pursuant to Rule 12(b)(6), the Court dismiss Count I (Breach of Contract (NDA)) against them with prejudice.    A proposed Order is attached as Exhibit B.


Dated: April 17, 2015                              Respectfully submitted,

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Email:  jmunn@rascoklock.com
Rasco Klock Perez & Nieto, PL
2555 Ponce de Leon, Suite 600
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.476.7102

*Counsel for Defendants Virgin Management*
*USA, Inc.; Virgin Management Ltd.; and Virgin*
*Group Investments Ltd.*

*AND*

s/ Claude M. Stern
Claude M. Stern, Ca. Bar No. 96737
Email:  claudestern@quinnemanuel.com
Evette D. Pennypacker Ca. Bar No. 203515
Email:  evettepennypacker@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
555 Twin Dolphin Drive, Suite 500
Redwood Shores, CA  94065
Telephone:  650.801.5000
Telecopy:  650.801.5100

Marc Greenwald, NY Bar No.
Email:  marcgreenwald@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan LLP
50 Madison Avenue, 22d Floor
New York, New York 10010
Telephone:  212.849.7000
Telecopy:  212.849.7100

*Counsel for Defendants Virgin Management*
*USA, Inc.; Virgin Management Ltd.; and Virgin*
*Group Investments Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

Jeffrey W. Gutchess, Esq.
Fla. Bar No.: 702641
jgutchess@bilzin.com
Daniel Tropin, Esq.
Fla. Bar No.: 100424
dtropin@bilzin.com
Brandon Rose, Esq.
Fla. Bar No.: 99984
brose@bilzin.com
**Bilzin Sumberg Baena**
**Price & Axelrod LLP**
1450 Brickell Avenue, 23rd Floor
Telephone: 305.350.7312
Facsimile: 305.351.2132

*Counsel for Plaintiffs*

By: s/ Janet T. Munn                                    
     Janet T. Munn