**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-20989-CIV-MOORE/McALILEY**

COLIN VEITCH,
VSM DEVELOPMENT, INC.,

      Plaintiffs,

v.

VIRGIN MANAGEMENT USA, INC.,
VIRGIN GROUP INVESTMENTS LTD.,
VIRGIN GROUP HOLDINGS LIMITED,
VIRGIN ENTERPRISES LIMITED,
VIRGIN CRUISES INTERMEDIATE LIMITED;
and VIRGIN CRUISES LIMITED.

      Defendants.

_____

**MOTION AND MEMORANDUM OF LAW TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT FILED BY
DEFENDANTS VIRGIN MANAGEMENT USA, INC., VIRGIN
GROUP INVESTMENTS LTD., VIRGIN GROUP HOLDINGS
<u>LIMITED AND VIRGIN ENTERPRISES LIMITED</u>**

Defendants Virgin Management USA, Inc. ("VMUSA"), Virgin Group Investments Ltd. ("VGIL"), Virgin Group Holdings Limited ("VGHL"), and Virgin Enterprises Limited ("VEL") (collectively, the "Virgin Defendants") hereby move to dismiss the Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Instead of appropriately narrowing their claims in the face of the Virgin Defendants' first motion to dismiss, Plaintiffs again try to stretch what is at most—even accepting all alleged facts as true as the Court must on a motion to dismiss—a breach of contract case against a single entity, Virgin Management USA, into a multi-million dollar, multi-claim lawsuit against every corporate entity bearing the VIRGIN brand.  Plaintiffs' latest attempt fails as badly as their first.

In their initial complaint, Plaintiffs improperly lumped together then-four named Virgin entities without identifying which entity allegedly engaged in misconduct.  Instead of correcting this fatal pleading error, Plaintiffs now name new entities and lump the Virgin Defendants together **with 400 other entities** that Plaintiffs allege form the "Virgin Group."  This "Virgin Group" is purportedly responsible for most of the alleged misconduct, even though Plaintiffs also plead "[t]he 'Virgin Group' is not a U.S., British, or European corporation."  Plaintiffs' repeated improper lumping mandates that the Amended Complaint be dismissed with prejudice.

Plaintiffs' various requests for injunctive relief must also be dismissed with prejudice because, as a matter of law, Plaintiffs may not seek an injunction enforcing the terms of an expired non-disclosure agreement or protecting a "trade secret" Plaintiffs disclosed to the public.

Plaintiffs' claims for breach of an alleged "Veitch-Virgin Agreement," a common-law partnership agreement, an alleged joint venture agreement, and the duty of good faith should also be dismissed with prejudice as to all of the Virgin Defendants because the documents incorporated by reference in the Amended Complaint contradict Plaintiffs' conclusory allegations that any enforceable agreements were ever created.

Plaintiffs' claims for breach of the various alleged agreements should also be dismissed with prejudice as to defendants VGIL, VGHL and VEL, as the record indisputably demonstrates that those entities were never parties to any agreement with Plaintiffs, including the NDA.

Finally, Plaintiffs' unjust enrichment and unfair competition claims should be dismissed with prejudice because they are preempted by Plaintiffs' Florida Uniform Trade Secrets Act misappropriation claim and Plaintiffs fail to allege essential elements for each under Florida law.

In sum, due to Plaintiffs' failure to remedy their defective pleading, the Amended Complaint should be dismissed in its entirety without leave to amend.[1]

**STATEMENT OF FACTS**

**A.      The Parties.**

Defendants VMUSA, VGIL, VGHL, and VEL are separate corporate entities.  (Am. Compl. ¶¶ 3-6.)  According to Plaintiffs, these entities form part of the alleged "Virgin Group." (*Id*. ¶ 48.)  Plaintiffs' concede "[t]he 'Virgin Group' is not a U.S., British, or European corporation that operates with, and is accountable to, shareholders or a board of directors elected by shareholders."  (*Id.* ¶ 50.)  Rather, Plaintiffs contend the Virgin Group is "a tangled web of enterprises" that "consists of about 400 operations," "owned via a complicated series of offshore trusts and overseas holding companies," which operate as "a huge family office with a portfolio of investments held for the benefit of Sir Richard Branson's family.  (*Id.* ¶¶ 51-52.)

Plaintiff Colin Veitch is a former Norwegian Cruise Line ("NCL") executive.  (*Id.* ¶ 12.) Plaintiff VSM Development, Inc. is "Mr. Veitch's investment vehicle."  (*Id.* ¶ 120, n. 15.)

**B.      In March 2011, Veitch and VMUSA enter into the NDA.**

According to the Amended Complaint, following Veitch's 2008 retirement from NCL, he "analyzed the successful introduction" of two already-existent "Ultra Ships"—NCL's "*Norwegian Epic*, as well as … Royal Caribbean's new Ultra Ship, the *Oasis of the Seas*"—and "prepared a detailed business plan" regarding Ultra Ships.  (Am. Compl. ¶¶ 24, 30 ("the Ultra Ships Plan").)  Upon completing the Ultra Ships Plan, "Veitch considered enlisting a 'branding partner' for the venture."  (*Id.* ¶ 47.)  Plaintiffs allege they were aware that "Virgin for many years sought entry into the cruise industry," that Veitch met representatives of the "Virgin Group" in December 2010, and that two months later, Veitch told those representatives that "he had developed a business plan for a new entrant in the cruise industry." (*Id.* ¶¶ 66-70.)

To allow the parties to evaluate "a potential business relationship between them," on March 11, 2011, Veitch and VMUSA entered into an NDA.  (*Id.* ¶ 77; D.E. 26-2, Am. Compl. Ex. B, at p. 1 (hereinafter, the "NDA").)  The unambiguous language of the NDA confirms that VMUSA is the only Virgin Defendant that is a party to the agreement.  (NDA, at p. 1 ("This

---

[1]   Counts I, II, V, VI, VII, VIII and IX of the Amended Complaint purportedly assert claims against an un-named defendant "VES."  For purposes of this motion, the Virgin Defendants assume that Plaintiffs meant to assert these claims against Virgin Defendant VEL.

2

[NDA], dated as of March 11, 2011, is made by and between Virgin Management USA, Inc. …
and Colin Veitch.").)  In fact, Plaintiffs allege that at the time the NDA was executed, Veitch
was entirely unaware of the existence of VGIL, VGHL, and VEL.  (Am. Compl. ¶ 213.)

The NDA contained the "entire agreement" between Veitch and VMUSA with respect to
"Confidential Information" shared amongst them, and required that the parties "(i) [] hold
Confidential Information in strict confidence and not disclose Confidential Information to any
third parties;" and "(ii) [] not use Confidential Information for its own purposes [other than] in
connection with evaluating the Potential Transaction." (NDA §§ 2-5, 8.)  These obligations were
***not*** indefinite, but instead ***expressly limited*** to the three-year period following NDA execution:

> The term of this Agreement shall commence upon [March 11, 2011] and shall
> continue in full force and effect until the earlier of (a) such time as
> Confidential Information is publicly disclosed with Disclosing Party's written
> authorization, and (b) three (3) years from the date hereof.  (*Id.* § 6.)

The confidentiality and non-use restrictions indisputably expired on March 11, 2014.  (*Id.*)

## C.      In May 2011, the parties negotiate a potential agreement but no enforceable contract is reached.

Plaintiffs allege: "In May of 2011, Mr. Veitch and Virgin came to an agreement as to the
essential terms between themselves for the proposed venture, which terms Mr. Veitch and Virgin
agreed to present to the investors in the venture."  (Am. Compl. ¶ 86.)  However, allegations in
and attachments to the Amended Complaint show that no such agreement was ever reached.

According to the Amended Complaint, a May 19, 2011 email from Veitch and a May 20,
2011 email from VMUSA "together form the Veitch-Virgin Agreement."  (*Id.* ¶ 106.)  These
emails alone demonstrate that no "Veitch-Virgin Agreement" was formed.   In particular,
following discussions on proposed financial arrangements, (*id.* ¶¶ 89-101), on May 19, 2011 Mr.
Veitch sent an email containing his "tentative proposal" for the structure of a joint-venture.  (*Id.*
¶ 102; D.E. 26-3, Compl. Ex. C, at p. 3.)  The email contained proposed terms for the venture,
including the "royalty rate" and "promote split," but expressly recognized that the parties were
"not quite negotiating in a vacuum," as the proposed terms were "missing the targets and
thresholds of the other potential providers of seed capital and of main capital" for the project—
*i.e.*, investors.  (D.E. 26-3, Compl. Ex. C, at p. 5.)  In light of this, Veitch explicitly stated that
the proposed "royalty rate and the promote split and sub-splits ***will [] be subject to further
review*** as we get into the fund raising."  (*Id.* at p. 3 (emphasis added).)

On May 20, 2011, VMUSA responded in an email signed by "Nirmal Saverimuttu, Principal, Virgin Management USA, Inc.," with a counter-proposal on the royalty rate and promote split. (Am. Compl. ¶ 106; D.E. 26-3, Compl. Ex. C, at p. 7.) Like Veitch's email, VMUSA recognized that the parties would "need to reconsider the above [proposal] if there is a material movement" on terms in the future. (D.E. 26-3, Compl. Ex. C, at p. 7.) According to Plaintiffs, following receipt of the May 20, 2011 email "Veitch held a phone conference with Virgin" in which "the Veitch-Virgin Agreement was concluded." (Am. Compl. ¶ 111.)

However, the Amended Complaint confirms that even after this phone conference, essential terms of the so-called "Veitch-Virgin Agreement" were still subject to future review, including the terms that Plaintiffs now allege form the basis of their breach claims against the Virgin Defendants. As Plaintiffs allege: "Both parties recognized that when the fundraising began, the investors might seek certain changes in the deal, such as the minimum return *or the percentage of the Promote that would be available to Mr. Veitch and Virgin.*" (*Id.* ¶ 112 (emphasis added); *see also id.* ¶ 108 (as of May 20, 2011, the parties' recognized that the terms discussed "might need to be revisited at a later date …").)

**D.      In March 2012, Plaintiffs confirm that the terms of the Veitch-Virgin "co-venturing arrangement" have not yet been "finaliz[ed]."**

As of March 2012, Plaintiffs confirmed and third parties recognized that there was no final agreement between Plaintiffs and any of the Virgin Defendants. In particular, a letter of intent—"one of the key components needed to take the Ultra Ships plan to the investors" (Am. Compl. ¶ 136)—was executed on March 12, 2012 by VSM Development, Inc., VGIL (collectively the "Customers"), and Meyer Werft. (*See* D.E. 26-4, Compl. Ex. D (the "LOI").)

The LOI "record[ed] the declared intentions of the parties" and was expressly contingent on the "satisfaction of [certain] further conditions." (*Id.* § 6(B).) The parties expressly agreed that as condition precedent to "the orders for the Ships" from Meyer Werft, the Customers must first "finaliz[e] their co-venturing arrangements." (*Id.*) If a co-venturing arrangement was not finalized by July 6, 2012, the LOI would become "null and void ab initio." (*Id.*) Thus, the LOI parties expressly recognized that as of March 12, 2012—when Veitch signed the LOI on behalf of VSM Development, Inc.—no "co-venturing arrangements" had been finalized. (*Id.*)

**E.      In June 2012, Plaintiffs confirm the "termination of discussions and activities regarding the [parties'] long-term cruise line partnership."**

The Amended Complaint further details that Plaintiffs and VMUSA disagreed on terms

for any potential joint venture: VMUSA "insisted on a sliding scale" for the Promote split between the parties, but Plaintiffs rejected VMUSA's proposal.  (Am. Compl. ¶¶ 188, 193-95.) According to Plaintiffs, "Mr. Veitch attempted to reason with Virgin," (*id.* ¶ 193), and Allen & Company, the investment bank "chose[n] to consult" with respect to the Ultra Ships Plan (*id.* ¶ 45), also "attempted to mediate" between VMUSA and Plaintiffs.  (*Id.* ¶ 196.)  However, as Plaintiffs concede, this disagreement was never resolved.  (*See id.* ¶¶ 193-99.)

Thus, on June 8, 2012, Plaintiffs' counsel sent Virgin a letter confirming the termination of the parties' relationship.  (*Id.* ¶ 199; Ex A.[2])  In that letter, which the Amended Complaint expressly incorporates by reference, Plaintiffs' counsel stated:  "[Veitch] desires that the parties will remain on good terms" despite "***the unfortunate termination of discussions and activities regarding the long-term cruise line partnership with Virgin Group***."  (Ex. A (emphasis added).)  The letter "remind[ed]" VMUSA that it had "no authorization to continue with the project without Mr. Veitch" and emphasized that VMUSA "may not, for three years after the NDA, directly or indirectly use in any way or manner whatsoever the Confidential Information or the substance or contents thereof."  (*Id.*)  In response, VMUSA "stated that they would abide by the terms of the NDA."  (Am. Compl. ¶ 200.)

**F.      In February 2014, a cruise operation is announced.**

Approximately twenty months after Plaintiffs confirmed the termination of discussions regarding a potential cruise line partnership with VMUSA, "Sky News reported that 'Virgin Group has appointed the US-based corporate advisory firm Allen & Co. to oversee the development of a cruise operation that would eventually aim to compete with industry giants including Carnival Corporation.'" (Am. Compl. ¶ 202.)  One year later, Plaintiffs filed this suit.

## ARGUMENT

**I.      THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO DISTINGUISH AMONG THE VIRGIN DEFENDANTS.**

In their initial complaint, Plaintiffs lumped four separate defendants together, referring to them "collectively" as "Virgin" and, contrary to the requirement in this district, providing "no factual basis to distinguish their conduct." *Lane v. Capital Acquisitions and Management Co.*, No. 04-cv–60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *see* D.E. 1-1.  Rather than

---

[2]    Attached hereto as Exhibit A is a true and correct copy of the June 8, 2012 letter from Alan Axelrod, P.A. to Nirmal Saverimuttu and Anthony Marino, incorporated by referenced in paragraph 199 of the Amended Complaint.

correcting this error in the face of a motion to dismiss, Plaintiffs made the problem worse by lumping *400 separate entities* together in the Amended Complaint—including named-defendants VMUSA, VGIL, VGHL, and VEL, along with other unnamed defendants—referring to all of those entities collectively as the "Virgin Group." (Am. Compl. ¶¶ 49-52, 144.)

Incredibly, ***Plaintiffs allege they entered into binding agreements with all 400 of these entities*** that purportedly form the Virgin Group.[3] (*Id.* ¶ 74 ("Mr. Veitch understood, and intended, that he was contracting with the 'Virgin Group' … and that [his] contracts and agreements were binding on Virgin Group"); *id.* ¶ 144 (alleging that "all of the entities included in the Virgin Group" were purportedly "partners" with Plaintiffs); *id.* ¶ 162 ("Mr. Veitch had always believed that his partnership was with the 'Virgin Group' and that the Virgin Group consisted of the various Virgin corporate entities that worked on, and approved, the project.").) By continuing to lump the Virgin Defendants together with 400 other entities, Plaintiffs still fail to meet the basic pleading requirement that they "distinguish the[] misconduct" of each named defendant in the Amended Complaint. *George & Co., LLC v. Alibaba.com, Inc.*, No. 10-cv-719, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011); *Lane*, 2006 WL 4590705, at *5.

Plaintiffs cannot evade their pleading obligations by alleging that *all* representatives of every Virgin Defendant were actually acting as "agents for the broader Virgin Group." (Am. Compl. ¶ 271; *see, e.g., id.* ¶ 88 (alleging that employees of VMUSA were at all times "acting not on behalf of [VMUSA], but rather on behalf of the Virgin Group generally"); *id.* ¶ 104 (alleging that VMUSA representatives were at all times acting as agents "on behalf of the Virgin Group, under the control of the Virgin Group, and [] obtaining instructions and approvals from the Virgin Group").) By Plaintiffs' own admission, the "'Virgin Group' is not a U.S., British, or European corporation" for whom any person or entity may act as an "agent." (*Id.* ¶ 50.) This precludes Plaintiffs from asserting either an actual or apparent agency theory, as both require an acknowledgment from the alleged principal that the purported agent was acting on its behalf. *See Great Florida Bank v. Countrywide Home Loans, Inc.*, No. 10-cv-22124, 2011 WL 382588, at *4 (S.D. Fla. Feb. 3, 2011) (both actual and apparent agency require a representation by the "purported principal" that would lead the plaintiff to believe that the representative was an agent

---

[3]   According to Plaintiffs, the "Virgin Group" includes countless companies that indisputably have ***nothing*** to do with the cruise industry, for example Virgin Galactic (spaceflight), Virgin Atlantic (airline), and Virgin Records (music). (*See, e.g.*, Am. Compl. ¶¶ 163, 170.)

of the principal). The 400 entities that form the admittedly non-existent "Virgin Group" certainly could not have provided such acknowledgment here, and Plaintiffs do not allege as much. Plaintiffs also admit that they were unaware of the existence of VGHL, VGIL and VEL until *after* the alleged agreements were allegedly formed. (Am. Compl. ¶ 213.) Thus, according to Plaintiffs' own allegations, neither the Plaintiffs nor those entities could have known, much less communicated, that there was an agency relationship amongst them.[4]

Plaintiffs' improper lumping of these entities provides no basis for each of the Virgin Defendants to distinguish their alleged individual misconduct, mandating complete dismissal of the Amended Complaint. *U.S. Bank Nat'l Assoc. v. Capparelli*, No. 13-cv-80323, 2014 WL 2807648, at *2-3 (S.D. Fla. June 20, 2014) (dismissing complaint where it "merely lumps [defendants] together in each claim and provides no factual basis to distinguish their conduct"); *George & Co., LLC*, 2011 WL 6181940, at *2 (same). Because Plaintiffs already amended their complaint once in response to this argument, dismissal now should be with prejudice. *See, e.g.*, *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-81271, 2015 WL 2198470, at *4 n. 9 (S.D. Fla. May 11, 2015) (dismissing claim with prejudice where plaintiffs "were on notice of [a] defense from Defendants' first Motion to Dismiss, yet [plaintiffs] failed to cure it in their First Amended Complaint"); *Stoner v. Young Concert Artists, Inc.*, No. 13-cv-4168, 2014 WL 661424, at *8 (S.D.N.Y. Feb. 7, 2014) (dismissing complaint with prejudice: "[plaintiff] amended his complaint after Defendant filed its first motion to dismiss, which pointed out the deficiencies in Plaintiff's first complaint. Still, Plaintiff failed to correct those deficiencies"); *Cantiere Nautico Cranchi, S.p.A. v. Luxury Marine Grp., LLC*, No. 09-cv-60883, 2009 WL 3538722, at *6 (S.D. Fla. Oct. 28, 2009) (dismissing amended complaint claim with prejudice where plaintiff continued to "improperly lump[] Defendants together and allege[] generically that 'Defendants'" were responsible for wrongful conduct).

---

[4]   To the extent Plaintiffs are attempting to allege alter-ego, this also fails, as Plaintiffs have not come close to pleading the requisite elements for the "extraordinary" relief of alter-ego liability. *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd,* No. 05-cv-60055, 2011 WL 1232986, at *6 (S.D. Fla. Mar. 30, 2011). For example, there is no allegation that VGIL, VGHL or VEL (or any other entity in the "Virgin Group" for that matter) utilized the corporate form for any improper purpose, or that plaintiffs suffered harmed as a result of abuse of the corporate form. *E.g. Merritt v. Lyons Heritage Pasco, LLC*, No. 09-cv-1201, 2010 WL 3666763, at *5 (M.D. Fla. Sept. 15, 2010) (dismissing alter-ego theory: "[t]here [was] no allegation that [the alleged alter-ego companies] used the corporate form for an improper purpose").

## II.   PLAINTIFFS' REQUESTS FOR AN INJUNCTION PROHIBITING THE USE OF PUBLIC INFORMATION MUST BE DISMISSED WITH PREJUDICE.

For each of Counts I through VII in the Amended Complaint, Plaintiffs seek injunctive relief "enjoining the Defendants from further use of" information "contained in the Ultra Ships Business Plan or otherwise disclosed pursuant to the NDA." (*E.g.*, Am. Compl. at pp. 53, 54, 56, 59, 61, 62, 65.)  However, such injunctive relief is unavailable as a matter of law because this allegedly "confidential and proprietary information" is now public, due to the expiration of the NDA and Plaintiffs voluntary publication of its purported "trade secret."  Accordingly, all of Plaintiffs requests for injunctive relief should be dismissed with prejudice.

Under both New York[5] and Florida law, an injunction "is a type of remedy—not a separate cause of action." *Venerus v. Avis Budget Car Rental, LLC*, No. 13-cv-921, 2014 WL 4092323, at *7 (M.D. Fla. Aug. 18, 2014); *Trustees of the Nat. Ret. Fund v. Wildwood Corp.*, No. 11-cv-6287, 2013 WL 8446003, at *2 n.1 (S.D.N.Y. Dec. 17, 2013) ("an injunction is not a claim, but rather, a form of relief").  Thus, Plaintiffs' Count II asserts a non-existent cause of action and should be dismissed with prejudice.  *Brevard Cnty., Fla. v. Priceline.com, Inc.*, No. 09-cv-1695, 2010 WL 680771, at *5 (M.D. Fla. Feb. 24, 2010) (dismissing separate "claim" for injunctive relief with prejudice).

A court also may not award injunctive relief enforcing expired contractual confidentiality obligations.  *See TNS Media Research, LLC v. TRA Global, Inc.*, No. 11-cv-4039, 2014 WL 1370279, at *1 (S.D.N.Y. Apr. 7, 2014).  *TNS Media Research* is instructive.  There, the plaintiff sought injunctive relief for an alleged breach of "a 2008 Non-Disclosure Agreement ('NDA') [and] a 2009 NDA," both of which had expired prior to plaintiffs' injunction request.  *Id.*  The court denied plaintiff's request, finding that the two NDAs "have expired, rendering injunctive relief moot."  *Id.* (*citing Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 214 n.2 (1979) ("The contracts have expired, and the question of injunctive relief is out of the case.")).

Similarly here, the NDA between Veitch and VMUSA expired by its express terms at least 14 months ago, on March 11, 2014. (NDA, § 6.)  Thus, Plaintiffs' requests for an injunction in Counts I through VII of the Amended Complaint—all of which seek injunctive relief preventing the use of information "disclosed pursuant to the NDA"—must be dismissed with

---

[5]   The NDA is "governed by the internal laws of New York."  NDA, § 8.

prejudice. *See, e.g.*, *TNS Media Research,* 2014 WL 1370279, at *1; *Banner Indus. of N.E., Inc. v. Wicks*, No. 11-cv-1537, 2014 WL 6810623, at *18 (N.D.N.Y. Dec. 1, 2014) (rejecting claim for injunctive relief where three-year prohibition period "has expired; thus, [the contract provision] is not enforceable by injunctive relief"); *Stanley Tulchin Assocs., Inc. v. Vignola,* 186 A.D.2d 183, 185-86 (N.Y. App. Div. 1992) ("Since the three-year period [of the NDA prohibiting former employee from making use of plaintiff's client list] has expired, we cannot grant injunctive relief."); *accord Convolve, Inc. v. Compaq Computer Corp.*, No. 00-cv-5141, 2011 WL 7144803, at *26 (S.D.N.Y. Oct. 6, 2011) (injunctive relief is unavailable in 2011 where defendant's "duty to protect any disclosed confidential information" expired in 2003 under the parties' NDA) (*rev'd in part on other grounds*)); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 694 (Bankr. M.D. Fla. 2010) (rejecting request for an injunction where "the period for any injunction arising from [the parties' alleged agreement] had long expired").

To the extent Plaintiffs seek injunctive relief in connection with their misappropriation claim, such relief is also barred, since Plaintiffs' alleged "trade secret" is no longer a secret.  Not only did the NDA expire on March 11, 2014, Plaintiffs voluntarily disclosed their alleged trade secrets to the public on March 11, 2015, by detailing them in and attaching them as exhibits to their initial complaint. (*See, e.g.*, D.E. 1-1, Compl. ¶¶ 22–108; *see also* D.E. 1-4, 1-5, 1-6, & 1-7.) As a matter of law, injunctive relief is unavailable after an alleged secret is voluntarily disclosed. Fla. Stat. Ann. § 688.003(1) (any injunction "shall be terminated upon application once a trade secret ceases to exist …"); *In re Nat'l Consumer Mortgage, LLC*, 512 B.R. 639, 642 (D. Nev. 2014) (admitting claimed trade secrets "into evidence before the jury in open court during the trial" constituted a "public release[]" and extinguished trade secret); *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 189 (N.Y. App. Div. 2007) ("plaintiffs waived any trade secret protection by publicly filing the document" disclosing the alleged secret).

Thus, all of Plaintiffs requests for injunctive relief should be dismissed with prejudice.

## III.  PLAINTIFFS' CLAIMS FOR BREACH OF THE VEITCH-VIRGIN AGREEMENT, PURPORTED PARTNERSHIP AND JOINT VENTURE AGREEMENTS, AND THE DUTY OF GOOD FAITH SHOULD BE DISMISSED.

### A.  No "Veitch-Virgin Agreement" was ever formed.

Plaintiffs allege: "The parties reached the Veitch-Virgin Agreement in May 2011 through meetings, negotiations, and the exchange of e-mails setting forth a complete and binding agreement between Veitch and Virgin."  (Am. Compl. ¶ 264.)  But three separate documents

expressly incorporated by reference into the Amended Complaint conclusively demonstrate that no such agreement was reached, mandating dismissal of Count VI.

First, it is well-settled that a contract is not enforceable without a "meeting of the minds between the parties" on the essential terms of the agreement, and one such essential term is "the identification of the parties." *Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*, No. 99-cv-0441, 2000 WL 1457079, at *3 (S.D.N.Y. Sept. 28, 2000); *Dreyfuss v. Dreyfuss*, 701 So.2d 437, 438 (Fla. 3rd DCA 1997) ("essential terms" include the identification of "the parties to the contract").[6] Plaintiffs' allegations confirm there was no such meeting of the minds here.

In their initial complaint, Plaintiffs alleged that they entered into various agreements with VMUSA, Virgin Management Ltd., VGIL, and "Virgin Cruises." (D.E. 1-1, at ¶¶ 136, 177-78.) In the Amended Complaint, Plaintiffs drop Virgin Management Ltd. and "Virgin Cruises," add VGHL, VEL, Virgin Cruises Intermediate Ltd. and Virgin Cruises Ltd., and allege they believed they were contracting with all 400 of the entities that form the alleged "Virgin Group." (Am. Compl. ¶ 74.) Plaintiffs apparently do not know with whom they contracted. Nor do they allege that any of the Virgin Defendants intended to bind 400 separate entities, including entities entirely unrelated to the cruise industry such as Virgin Galactic and Virgin Records, (*id.* ¶ 170), to any Veitch-Virgin Agreement. (*See generally id.*) This is fatal to Plaintiffs' contract claim. *Nelson v. Target Corp.*, No. 07-cv-1990, 2009 WL 2150893, at *3 (M.D. Fla. July 13, 2009) ("A lack of identification of the parties" to a contract evidences "a lack of a 'meeting of the minds.'"); *e.g. Zell v. Cobb*, 566 So. 2d 806, 808 (Fla. 3rd DCA 1990) (no enforceable contract arose where there was no agreement on the "identity of the party or parties to be bound by the alleged contract").

Second, where a purported agreement leaves essential terms "subject to future negotiation, there can be no enforceable contract." *Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Grp., Inc.*, 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998) (*citing Suggs, Jr. v. Defranco's, Inc.*, 626 So.2d 1100, 1101 (Fla. 1st DCA 1993)); *Lieberman v. Good Stuff Corp.*, No. 94-cv-5601, 1995 WL 600864, at *3 (S.D.N.Y. Oct. 11, 1995) (under New York law, a contract is unenforceable where any "material term is left for future negotiations") (citation omitted). Here, Plaintiffs contend that "Veitch and Virgin came to an agreement as to the essential terms

---

[6]   While Plaintiffs do not allege whether Florida or New York law would govern the alleged Veitch-Virgin Agreement, the Veitch-Virgin Agreement is unenforceable under both.

between themselves for the proposed venture," (Am. Compl. ¶ 86), but the emails purportedly forming the Veitch-Virgin Agreement confirm that no such agreement was reached.[7] (*See* D.E. 26-3, Compl. Ex. C.)[8]

Plaintiffs concede that terms such as the "licensing fee" and percentage of "the Promote" each party would be entitled to were "essential terms" of the alleged Veitch-Virgin Agreement. (Am. Compl. ¶ 265.)  And the emails purportedly forming the alleged Veitch-Virgin Agreement make clear that these terms were expressly made "subject to further review as [the parties] get into the fund raising," as the parties recognized that they would "need to reconsider" key terms in the future based on "targets and thresholds of the other [third-party] potential providers of seed capital and of main capital." (*See* D.E. 26-3, Compl. Ex. C.)  Plaintiffs' allegations confirm the preliminary nature of the parties' discussions:  Following the "phone conference" in which "the Veitch-Virgin Agreement was concluded," both parties nevertheless "recognized that when the fundraising began, the investors might seek certain changes in the deal, ***such as the minimum return or the percentage of the Promote*** that would be available to Mr. Veitch and Virgin." (Am. Compl. ¶ 111-12 (emphasis added).)  Because these "essential" terms were purposefully left open "subject to further review," no enforceable agreement was reached in May 2011.  *E.g., Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606-07 (N.Y. App. Div. 2014) (finding agreement unenforceable when essential terms were left "subject to future negotiations and approval"); *Servicios De Almacen*, 2007 WL 628133, at *2-3 (dismissing contract claim where the "purported joint venture agreement is unenforceable as a matter of

---

[7]   *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-cv-21598, 2007 WL 117935, at *4 (S.D. Fla. Jan. 10, 2007) ("While normally on a motion to dismiss the Court must accept the facts alleged in a complaint as true, if an allegation in the complaint is contradicted by a document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate."); *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *see, e.g., See, e.g. Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A., a/k/a S.A.F., S.A. v. Ryder Int'l, Inc.*, No. 06-cv-22774, 2007 WL 628133, at *2-3 (S.D. Fla. Feb. 26, 2007) (dismissing contract claim where documents incorporated into the complaint demonstrate that no agreement was reached).

[8]   This email correspondence that allegedly "form[ed] the Veitch-Virgin Agreement" may be considered at the dismissal stage because it was attached as Exhibit C to the Amended Complaint.  *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08-cv-60739, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008) ("A copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes, including a Rule 12(b)(6) motion to dismiss." (*citing* Fed. R. Civ. P. 10(c))).

law:" "[a]t most, the subject documents [attached to the complaint] constitute an agreement to agree in the future, which Florida courts have uniformly refused to enforce").

Although this email correspondence alone is sufficient to warrant dismissal, two additional documents incorporated by reference into the Amended Complaint further confirm that no enforceable agreement was reached in May 2011.  The March 12, 2012 LOI—which is dated nearly a year after Plaintiffs allege the formation of a purported agreement with the Virgin Defendants—explicitly states that its provisions were "subject to satisfaction of" the finalization of "co-venturing arrangements" between Plaintiffs and the Virgin Defendants.  (LOI, at p. 5.)[9] Obviously, there would be no such language in the 2012 LOI if such conditions had been satisfied (and, tellingly, Plaintiffs do not allege the satisfaction of such conditions).  As such, Plaintiffs confirmed—in a signed writing—that as of that date, ***no co-venturing arrangement had been finalized***.[10]  (*See id.*)

A June 8, 2012 letter from Plaintiffs' counsel also demonstrates that, far from agreeing to proceed with any partnership or joint venture, Plaintiffs and the Virgin Defendants instead chose to "***terminat[e] [] discussions and activities*** regarding the long-term cruise line partnership." (Ex. A (emphasis added).)[11]  These documents, which Plaintiffs chose to incorporate into the

---

[9]   The terms of the LOI may also be considered at the dismissal stage because it was attached as Exhibit D to the Amended Complaint.  *Indulgence Yacht Charters*, 2008 WL 4346749 at *4.

[10]   The LOI is "governed by" and "construed in accordance with English law," (LOI, § 6(D)), under which "[a]ll parties" to an agreement "are bound by [an] agreed statement" in a contract. *See Richards v. Wood*, [2014] EWCA Civ. 327, at ¶ 16 (publicly available online at http://www.bailii.org/ew/cases/EWCA/Civ/2014/327.html).  Accordingly, by executing the LOI, VSM Development, Inc. is bound by its confirmation that no "co-venturing arrangement" had been "finaliz[ed]" between the parties.  (LOI, § 6(B).)

[11]   While this June 8, 2012 letter was not attached to the Amended Complaint, it may still be considered at the dismissal stage because: (a) it was expressly referenced therein (*see* Am. Compl. ¶ 199); (b) it is central to Plaintiffs' claim that the parties formed an alleged joint-venture agreement; and (c) Plaintiffs cannot dispute the authenticity of this letter. *See Eveillard v. Nationstar Mortgage LLC*, No. 14-cv-61786, 2015 WL 127893, at *4 (S.D. Fla. Jan. 8, 2015) ("A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment"); *e.g. Garcia v. Carnival Corp.*,

Amended Complaint, confirm that no enforceable Veitch-Virgin Agreement was *ever* formed and, accordingly, no breach claim may lie.  *See, e.g.*, *Servicios De Almacen*, 2007 WL 628133, at *2-3; *Argent Acquisitions, LLC v. First Church of Religious Sci.*, 118 A.D.3d 441, 445 (N.Y. App. Div. 2014) (affirming dismissal of breach of contract claim where "the documentary evidence created after the execution of the September 14 letter" that allegedly formed the basis for an agreement "establishes that it was not meant to constitute a final agreement"); *Atl. St. John, LLC v. Yoemans*, 5 Misc. 3d 1031(A), 2004 WL 2941402, at *4 (N.Y. Sup. Ct. Oct. 21, 2004) (dismissing breach of contract claim where "[t]he e-mails and memoranda which passed between the parties … establish, as a matter of law, that no final agreement existed").

> **B.** **Plaintiffs' partnership and joint venture claims must be dismissed because no partnership or joint venture was ever formed as a matter of law.**

Under Florida law, "[t]o establish a partnership, there must be a 'community of interest in performance of a common purpose, joint control or right of control, joint propriety of interest in subject matter, right to share in the profits, and duty to share in any losses which may be sustained.'"  *Dreyfuss*, 701 So.2d at 439 (internal quotations and citation omitted).  There are "five elements necessary" for a joint venture claim:  "1) the intention of the parties to create a joint venture; 2) joint control or right of control; 3) joint proprietary interests in the subject matter of the venture; 4) right of both ventures to share in the profits; and 5) duty of both to share in the losses."  *Bridgewater v. Carnival Corp.*, No. 10-cv-22241, 2011 WL 976467, at *2 (S.D. Fla. Mar. 2, 2011).  "These requirements are strictly construed," *Dreyfuss*, 701 So.2d at 439, and "Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing."  *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002).  Plaintiffs fail to allege at least two essential elements for these claims.

First, the documentary evidence discussed above conclusively demonstrates that no agreement was reached on the parties' respective right to share in the profits of an alleged venture.  (*See* Section III.A, *supra*); *see, e.g.*, *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1296298, at *5-6 (S.D. Fla. Mar. 27, 2013) (dismissing joint venture claim where document "reference[d] in [plaintiff's] Amended Complaint, and which is central to Plaintiff's joint venture claim, contradicts the allegations that [the parties] were engaged in a joint venture").  The plain language of the emails that purportedly "together form the Veitch-

---

838 F. Supp. 2d 1334, 1338 (S.D. Fla. 2012).

Virgin Agreement" conclusively demonstrates that no final agreement on the allocation of profits was reached.  (Am. Compl. ¶ 106; *see* D.E. 26-3, Compl. Ex. C, at p. 3 (the essential terms the parties discussed were left "subject to further review as [the parties] get into the fund raising").)  Both the LOI and the June 8, 2012 letter from Plaintiffs' counsel similarly confirm that no "joint venture" or "partnership" agreement was ever reached.  (*See* Section III.A, *supra*; LOI, § 6(B) (confirming that as of March 2012, the parties had not yet "finaliz[ed] their co-venturing arrangements"); Ex. A (confirming that by June, 2012 the parties had chosen to "terminat[e] [] discussions and activities regarding the long-term cruise line partnership.").)  The absence of an agreement to "share in the profits" of any cruise venture bars Plaintiffs' partnership and joint venture claims.  *Bridgewater*, 2011 WL 976467, at *2 (dismissing claim where the plaintiff had "made no factual allegation to support" its conclusory statement that the alleged joint venturers agreed to "share[] profits and losses"); *USAirways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 493 (S.D.N.Y. 1997) (dismissing claim where plaintiff "fail[ed] to plead" an agreement to share the "profits and losses in the alleged joint venture").

Plaintiffs also fail to allege that the parties maintained "joint control" over any partnership or venture, another essential element for these claims.  *Dreyfuss*, 701 So. 2d at 439; *Bridgewater*, 2011 WL 976467, at *2.  "Joint control" under Florida law requires that each member "have mutual control over the subject matter of the venture ***and the authority to bind one another with respect to the subject matter of the venture***."  *Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth.*, No. 04-cv-200, 2005 WL 1051932, at *3 (M.D. Fla. Apr. 12, 2005) (emphasis added) (*citing Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1539 (11th Cir. 1989)); *In re Cuenant*, 339 B.R. 262, 276 (Bankr. M.D. Fla. 2006) (under Florida law, "[w]here the actions of one party do not bind the other, joint control does not exist").

There is no allegation that Plaintiffs ever had the authority to bind any of the Virgin Defendants, or that the Virgin Defendants conversely had the authority to bind Plaintiffs.  (*See generally* Am. Compl.)  To the contrary, Plaintiffs admit that the parties "never reached the stage of formally establishing the entity that they would both own jointly and would serve as the general partner of the cruise line."  (*Id.* ¶ 116.)  The absence of an agreement allowing the parties to bind one another with respect to a purported cruise venture precludes Plaintiffs' partnership and joint venture claims as a matter of law.  *See, e.g.*, *Bridgewater*, 2011 WL 976467, at *2 (dismissing joint venture claim where plaintiff had "not pleaded that [the alleged joint-venturers]

had joint control over the operations at issue"); *Ely v. Shuman*, 233 So. 2d 169, 170 (Fla. 3rd DCA 1970) (affirming dismissal of complaint where plaintiff failed to allege "joint control of the subject matter of the claimed joint venture").

Accordingly, Counts VII and VIII of the Amended Complaint must be dismissed as to all of the Virgin Defendants with prejudice.[12]

### C. Plaintiffs' breach of duty of good faith claim must be dismissed because no such claim may stand absent an enforceable contract.

Plaintiffs' "breach of duty of good faith" claim is premised on the Veitch-Virgin Agreement "creat[ing] an enforceable obligation on Virgin to negotiate in good faith." (Am. Compl. ¶¶ 303.) However, as discussed above, the Veitch-Virgin Agreement never existed. It is axiomatic that absent an enforceable contract, a duty of good faith claim cannot stand. *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1362 (S.D. Fla. 2011) (applying Florida law: "a proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract"); *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-7500, 2015 WL 585589, at *5 (S.D.N.Y. Feb. 11, 2015) (applying New York law: to "allege a claim for breach of the covenant of good faith and fair dealing adequately, a party must first allege the existence of a contract"). Because the contract forming the basis for Plaintiffs' good faith claim does not exist, Count IX of the Amended Complaint must be dismissed. *See, e.g., Senter,* 810 F. Supp. 2d at 1362 (dismissing good faith claim where "Plaintiffs failed to adequately plead that the [agreements allegedly breach] are valid contracts"); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03-cv-1537, 2003 WL 23018888, at *6 (S.D.N.Y. Dec. 22, 2003) (same); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001) (same); *Univ. Creek Assocs. II, Ltd.*, 100 F. Supp. 2d at 1340-41 (same).

### IV. PLAINTIFFS' CLAIMS FOR BREACH OF THE ALLEGED VEITCH-VIRGIN, PARTNERSHIP, AND JOINT VENTURE "AGREEMENTS" MUST BE DISMISSED AS TO VGIL, VGHL AND VEL.

By the NDA's plain terms, VMUSA is the only Virgin Defendant that is a party to that agreement. (NDA, at p. 1-2.) VMUSA is similarly the only signatory to the email purportedly

---

[12]  Plaintiffs seemingly pursue their partnership and joint venture claims under Florida law (Am. Compl. ¶ 274), but even if they sought to recover under New York law the result would be the same, as New York law also requires allegations of "joint control" and an agreement to "sharing of both profits and losses" for such claims. *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-cv-9258, 2014 WL 1331046, at *11-12 (S.D.N.Y. Mar. 31, 2014).

forming the basis for the alleged "Veitch-Virgin," "partnership" and "joint venture" agreements. (D.E. 26-3, Am. Compl. Ex. C, at p. 7.)

Nevertheless, to avoid the "hornbook law that an entity must be a party to a contract for a claim of breach of that contract to lie,"[13] Plaintiffs rely on parole evidence to assert that liability should extend to Virgin Defendants VGIL, VGHL, and VEL (and all 400 other entities in the Virgin Group). Specifically, based on purported "representations of the Virgin Group," Plaintiffs allege that they "understood" that they were "contracting with the 'Virgin Group' … and that [their] contracts and agreements were binding on Virgin Group." (Am. Compl. ¶¶ 74-75; *see also id.* ¶¶ 144, 162.) The unambiguous record contradicts these bare allegations and thus precludes Plaintiffs from relying on this parole evidence as a matter of law. *Walsky v. Monel, Inc.*, No. 12-cv-23031, 2012 WL 4338868, at *2 (S.D. Fla. Sept. 20, 2012) ("while courts accept the facts in a complaint as true in considering a motion to dismiss, the allegations can be trumped by contradictory facts presented in an exhibit or attachment to the pleading"); *Gene Codes Forensics, Inc. v. City of New York*, No. 10-cv-1641, 2012 WL 1506166, at *3 (S.D.N.Y. Apr. 26, 2012) (although the "court must accept as true all well-pleaded allegations" on a motion to dismiss, where allegations "are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference") (internal citation omitted).

The NDA expressly states that VMUSA is the ***only*** Virgin Defendant that is a party to that agreement: "This NONDISCLOSURE AGREEMENT … is made by and between [VMUSA], a Delaware corporation … and Colin Veitch, an individual." (NDA, at p. 1.) While Plaintiffs allege that "representations of the Virgin Group" led them to "underst[and]" that "[VMUSA] was acting as the authorized agent for Virgin Group" in signing the NDA, (Am. Compl. ¶ 74-75), that conclusory allegation is also belied by the NDA, which shows that it was signed by "Thayer Thompson" acting ***as "authorized signatory" for "Virgin Management, USA, Inc."*** (NDA, at p. 2 (emphasis added).) These unambiguous statements render any "underst[anding]" by Plaintiffs that they were "contracting with" VGIL, VGHL, VEL, or the "Virgin Group" irrelevant as a matter of law. *2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital L.L.C.*, No. 00-cv-5773, 2001 WL 410074, at *9 (S.D.N.Y. Apr. 23, 2001).

---

[13]   *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-cv-227, 2015 WL 1011816, at *7 (S.D.N.Y. Mar. 9, 2015), *see also R/V Beacon, LLC v. Underwater Archeology & Exploration Corp.*, No. 14-cv-22131, 2014 WL 4930645, at *3 (S.D. Fla. Oct. 1, 2014).

The unambiguous language of the email that purportedly formed the alleged "Veitch-Virgin," "partnership" and "joint venture" agreements similarly contradicts Plaintiffs' allegations that they believed they were contracting with the "Virgin Group," as it too was expressly signed: "Nirmal Saverimuttu, **_Principal, Virgin Management USA, Inc._**"  (D.E. 26-3, Am. Compl. Ex. C, at p. 7 (emphasis added).)  Accordingly, Plaintiffs' conclusory allegations that it "understood" all "Virgin Group" entities to be parties to the alleged agreements, based on parole evidence contradicted by unambiguous writings, must be rejected.  *See, e.g.*, *Kamdem-Ouaffo*, 2015 WL 1011816, at *7 (dismissing contract claim against non-signatory where, despite conclusory complaint allegations otherwise, the record showed that the defendant was not a party to the relevant agreement); *Dragon Head LLC v. Elkman*, 102 A.D.3d 552, 552 (N.Y. App. Div. 2013) (affirming order dismissing contract claim: "Plaintiff's allegations [that defendant was a party to the contract] are not entitled to be deemed true, since they consist of bare legal conclusions and factual assertions that are flatly contradicted by the documentary evidence showing that [defendant] was not a party to the written agreements at issue"); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So. 2d 1157, 1159 (Fla. 3rd DCA 2008) (affirming dismissal of claim where "the contract attached to the complaint" established that the defendant "was not a party" to the agreement upon which plaintiff's claims were based).

Plaintiffs' breach of the NDA claims against VGIL, VGHL, and VEL also fail because the NDA's merger clause precludes Plaintiffs from relying on parole evidence to allege that, based on "representations [from] the Virgin Group," Plaintiffs "understood" VMUSA to be "acting as the authorized agent for Virgin Group."  (Am. Compl. ¶¶ 74-75); *see Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000) ("Where the contract clearly states that it contains the entire agreement between the parties, claims based on prior understandings that contradict the plain terms of the written contract are barred.").  Here, the NDA "contain[ed] the entire agreement between [Veitch and VMUSA] with respect to the subject matter, and supersede[d] all prior and contemporaneous agreements with respect to the subject matter." (NDA, § 8.)   Plaintiffs therefore cannot rely on parole evidence, including alleged "representations of the Virgin Group," to assert that non-signatories VGIL, VGHL, and VEL were somehow parties to the NDA, mandating dismissal of Counts I and II as to those entities. *See, e.g.*, *Fierro v. Gallucci*, No. 06-cv-5189, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008) (dismissing breach of contract claim that relied on alleged oral representations by defendant,  as

17

the contract's merger clause rendered the "contract fully integrated," thus "any oral representations between the parties" could not support a claim).

Finally, given that VGIL, VGHL, and VEL were not parties to the NDA, the Veitch-Virgin Agreement, or any other partnership or joint venture agreements, Plaintiffs' claim for breach of the duty of good faith (Count IX) must be dismissed as to those entities. *United Magazine Co.*, 146 F. Supp. 2d at 405 (dismissing good faith claim where plaintiffs failed to allege that a valid contract existed).

In sum, Counts I, II, and VI - IX of the Amended Complaint must be dismissed with prejudice as to defendants VGIL, VGHL and VEL.

## V.   PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT AND UNFAIR COMPETITION MUST BE DISMISSED WITH PREJUDICE

Counts IV and V seek to recover for unjust enrichment and unfair competition, respectively. (*See* Am. Compl. ¶¶ 237-262.) Each of these claims is preempted by the FUTSA, and fail for the separate reason that Plaintiffs do not allege sufficient facts to support each claim.

### A.   Plaintiffs' unjust enrichment claim is barred by the FUTSA, and fails to identify any present benefit conferred on the Virgin Defendants.

The factual predicate underlying Plaintiffs' unjust enrichment claim is the same as that underlying Plaintiffs' FUTSA claim. (*Compare* Am. Compl. ¶ 244 (alleging unjust enrichment as "[p]laintiffs conferred benefits upon defendants by presenting them the Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA") *with id.* ¶ 230 (alleging that defendants misappropriated the "Ultra Ships Plan and other Confidential Information disclosed pursuant to the NDA").) The relief sought is also identical for both claims. (*Compare id.* at p. 56 (seeking relief for its misappropriation claim) *with id.* at p. 58-59 (seeking identical relief for its unjust enrichment claim); *see also* Fla. Stat. § 688.004(1) (expressly permitting recovery for unjust enrichment caused by misappropriation).)

"It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). "[B]ecause an adequate remedy exists at law" under the FUTSA, Plaintiffs have "not stated a claim upon which relief may be granted" for unjust enrichment, and Count IV should be dismissed with prejudice. *See, e.g., id.* (dismissing unjust enrichment claim as it was "predicated on the same set of allegations supporting their claims under FUTSA … "); *New Lenox Indus., Inc. v. Fenton*, 510 F.

Supp. 2d 893, 910 (M.D. Fla. 2007) ("Because FUTSA expressly authorizes a plaintiff to recover the 'unjust enrichment caused by misappropriation' a claim for unjust enrichment is indistinguishable from the remedy under the statute and therefore is preempted.").

Plaintiffs' unjust enrichment claim also fails because Plaintiffs cannot allege that any benefit has been conferred on the Virgin Defendants.  Under Florida law, "there must be a benefit conferred before unjust enrichment exists."  *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d 710, 712 (Fla. 2nd DCA 1988); *accord Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259-60 (S.D.N.Y. 2012) ("The essence of [an unjust enrichment] claim is that one party *has* received money or a benefit at the expense of another.") (emphasis in original).

Here, while Plaintiffs summarily allege that they "conferred benefits upon Defendants by presenting them the Ultra Ships Plan," (Am. Compl. ¶ 244), they fail to allege that any Virgin Defendant has, to date, benefitted from a future cruise venture, other than through misappropriation of an alleged trade secret (which claim would be preempted).  (*See generally* Am. Compl.)  The absence of an allegation identifying a concrete benefit conferred on the Virgin Defendants, other than any alleged misappropriation of a trade secret, mandates dismissal of Plaintiffs' unjust enrichment claim.  *See, e.g., Iberiabank v. Coconut 41, LLC,* No. 11-cv-321, 2012 WL 473576, at *3 (M.D. Fla. Feb. 14, 2012) (dismissing unjust enrichment claim where complaint failed to allege supporting facts stating "how [defendant] knowingly benefitted" from alleged improvements); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So. 2d 883, 884 (Fla. 2nd DCA 1982) (while plaintiff may have "enhanced the value of the equipment" it repaired, recovery for unjust enrichment was still barred because "it [was] speculative to say that any benefit has come to [defendant]" where defendant had not profited from rental of the equipment).

### B.  Plaintiffs' unfair competition claim is barred by the FUTSA, and fails because Plaintiffs do not allege consumer confusion.

Count V seeks to recover for "unfair competition" and is based on allegations that: (1) "Virgin engaged in unfair competition as it misappropriated Mr. Veitch's Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA;" and (2) "Virgin engaged in unfair competition as it exploited the skill, expenditures and labors of Mr. Veitch before setting itself up as a competitor to Mr. Veitch."  (Am. Compl. ¶¶ 259-60.)  Florida law precludes recovery under either of these theories.

To the extent Plaintiffs' unfair competition claim is based on alleged misappropriation,

(*id.* ¶ 260), that claim is displaced by the FUTSA and must be dismissed with prejudice. *See, e.g.*, *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002) (dismissing unfair competition claim as preempted where it was based on the "use of the trade secrets, confidential information, and other information"); *Coulter Corp. v. Leinert*, 869 F. Supp. 732, 735 (E.D. Mo. 1994) (dismissing unfair competition claim under Florida law because "the only wrong alleged by plaintiff centers on misappropriation of trade secrets").

Nor can Plaintiffs maintain an unfair competition common law claim based on the allegation that the Virgin Defendants "exploited the skill, expenditures and labors of Mr. Veitch …" (Am. Compl. ¶ 259.)  In *North Atlantic Marine Ltd. v. Sealine International, Ltd.*, for example, the plaintiff asserted an unfair competition claim alleging that the defendant "misappropriated the labors of and expenditures of [plaintiff]."  No. 06-cv-20200, 2007 WL 5298433, at *11–12 (S.D. Fla. Mar. 29, 2007).  The court noted that to prevail on an unfair competition claim based on these allegations, "a plaintiff must 'establish … [a] likelihood of consumer confusion.'"  *Id.* at *12 (*citing M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493-94 (11th Cir. 1990)).  Here, the Amended Complaint does not allege that the Virgin Defendants conduct was ever likely to cause "consumer confusion."  (*See generally* Am. Compl.)  Plaintiffs' failure to plead this essential element of their unfair competition claim also mandates dismissal.  *See, e.g.*, *Lorador v. Vasquez*, No. 14-cv-433, 2015 WL 300433, at *1 (M.D. Fla. Jan. 22, 2015) (dismissing counterclaim where party "fail[ed] to allege facts showing that the plaintiffs' conduct will cause consumer confusion"); *North Atlantic Marine*, 2007 WL 5298433 at * 13.

## CONCLUSION

For the foregoing reasons, the Virgin Defendants request that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismiss the Amended Complaint in its entirety with prejudice.  In the alternative, the Virgin Defendants request dismissal with prejudice of (a) Count II (Breach of Contract (NDA) for Injunction), (b) Count IV (Unjust Enrichment), (c) Count V (Unfair Competition), (d) Count VI (Breach of Contract (Virgin-Veitch Agreement)), (e) Count VII (Breach of Partnership Agreement), (f) Count VIII (Breach of Joint Venture Agreement), and (g) Count IX (Breach of Duty of Good Faith).  In addition, VGIL, VGHL and VEL request dismissal of Count I (Breach of Contract (NDA)) against them with prejudice.   A proposed Order is attached as Exhibit B.

Dated: June 1, 2015                         Respectfully submitted,

                                            s/ *Janet T. Munn*
                                            Janet T. Munn, Fla. Bar No. 501281
                                            Email:  jmunn@rascoklock.com
                                            Rasco Klock Perez & Nieto, P.L.
                                            2555 Ponce de Leon, Suite 600
                                            Coral Gables, FL  33134
                                            Telephone:  305.476.7101
                                            Telecopy:  305.476.7102

                                            *AND*

                                            s/ *Claude M. Stern*
                                            Claude M. Stern*
                                            Email:  claudestern@quinnemanuel.com
                                            Evette D. Pennypacker*
                                            Email:  evettepennypacker@quinnemanuel.com
                                            Quinn Emanuel Urquhart & Sullivan LLP
                                            555 Twin Dolphin Drive, Suite 500
                                            Redwood Shores, CA  94065
                                            Telephone:  650.801.5000
                                            Telecopy:  650.801.5100

                                            Marc Greenwald*
                                            Email:  marcgreenwald@quinnemanuel.com
                                            Quinn Emanuel Urquhart & Sullivan LLP
                                            50 Madison Avenue, 22nd Floor
                                            New York, New York 10010
                                            Telephone:  212.849.7000
                                            Telecopy:  212.849.7100

                                            *Counsel for Defendants Virgin Management
                                            USA, Inc., Virgin Group Investments Ltd.,
                                            Virgin Group Holdings Limited, and Virgin
                                            Enterprises Limited*

                                            * *Admitted Pro Hac Vice*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

Jeffrey W. Gutchess, Esq.
Fla. Bar No.: 702641
jgutchess@bilzin.com
Daniel Tropin, Esq.
Fla. Bar No.: 100424
dtropin@bilzin.com
Brandon Rose, Esq.
Fla. Bar No.: 99984
brose@bilzin.com
**Bilzin Sumberg Baena**
**Price & Axelrod LLP**
1450 Brickell Avenue, 23rd Floor
Telephone: 305.350.7312
Facsimile: 305.351.2132

*Counsel for Plaintiffs*

Dale M. Cendali*
Email:  dale.cendali@kirkland.com
Johanna Schmitt*
Email:  johanna.schmitt@kirkland.com
Phillip A. L. Hill*
Email:  phil.hill@kirkland.com
**Kirkland & Ellis LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

P. Daniel Bond*
Email:  daniel.bond@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle

Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Admitted Pro Hac Vice*

*Counsel for Virgin Cruises Intermediate Limited
and Virgin Cruises Limited*

By: s/ *Janet T. Munn*
   Janet T. Munn