UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1520989-CIV-MOORE/McALILEY

COLIN VEITCH,
VSM DEVELOPMENT, INC.,

    Plaintiffs,

v.

VIRGIN MANAGEMENT USA, INC.,
VIRGIN GROUP INVESTMENTS LTD.,
VIRGIN GROUP HOLDINGS LIMITED,
VIRGIN ENTERPRISES LIMITED,
VIRGIN CRUISES INTERMEDIATE LIMITED,
VIRGIN CRUISES LIMITED,

    Defendants.
_____/

**MOTIONS & MEMORANDUM OF LAW TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FILED BY DEFENDANTS VIRGIN CRUISES INTERMEDIATE LIMITED & VIRGIN CRUISES LIMITED AND FOR JUDICIAL NOTICE**

Defendants Virgin Cruises Intermediate Limited ("VCIL") and Virgin Cruises Limited ("VCL") (collectively, the "VC Defendants") hereby move to dismiss the claims against them in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for this Court to take judicial notice of certain records regarding the incorporation of the VC Defendants.

**PRELIMINARY STATEMENT**

In this case, Plaintiffs Colin Veitch and VSM Development, Inc. (collectively, "Veitch") attempt to convert a narrow, albeit meritless, breach of contract case against one party into an expansive, multicount lawsuit involving overreaching tort and quasi-contract claims against numerous companies. The Amended Complaint revolves around a non-disclosure agreement ("NDA") entered into between Veitch and defendant Virgin Management USA, Inc. ("VMUSA"). That NDA was entered into on March 11, 2011, *more than three years before the VC Defendants came into existence*. Similarly, the VC Defendants did not exist during the entirety of Veitch's dealings with VMUSA (or any other Virgin entity) because those dealings concluded no later than June 2012—still nearly *two years before Virgin Cruises formed*. What

is more, the VC Defendants did not exist when the NDA expired by its own terms—terms that Veitch bargained for and agreed to—on March 11, 2014.  The fact that the VC Defendants did not even come into existence until long after the facts giving rise to Veitch's purported claims amply demonstrates that they do not belong in this case.

Rather than merely assert his dubious contract claim against VMUSA, Veitch filed a "shotgun" complaint alleging eight separate causes of action against entities with little or no connection to the facts of this case.  As an initial matter, Veitch alleges no facts relevant to VCL, and fails to assert a single cause of action against it—VCL should obviously be dismissed from this case on that basis alone.  VCIL stands accused of only two meritless claims arising from Veitch's NDA with VMUSA: trade secret misappropriation and unjust enrichment.  Both claims fail for several reasons.

*First*, Veitch alleges trade secret misappropriation under both Florida statutory law and New York common law.  But Veitch fails to allege that the VC Defendants undertook any actions in New York, so his common law claim must fail.  Further, regardless of which law applies, by the time the VC Defendants formed Veitch's purported trade secrets were no longer protected as trade secrets.  Specifically, the NDA between Veitch and VMUSA—which was the sole mechanism employed by Veitch to protect his purported trade secrets—expired long before the VC Defendants even came into existence.  Veitch cannot deny that once that NDA expired neither VMUSA nor anyone else had any obligations under the NDA by its express terms.  Similarly, because the VC Defendants did not exist during the term of the NDA, Veitch cannot state a misappropriation claim against them—it would be factually and legally impossible for them to access these alleged trade secrets while they were still purportedly secret.

Moreover, Veitch is not entitled to injunctive relief for trade secret misappropriation as a matter of law.  A court cannot grant injunctive relief under a trade secret claim once the trade secrets at issue have become public.  Any alleged trade secrets Veitch disclosed to VMUSA pursuant to their NDA have become public not once, but three times: (1) in March 2014, when the NDA expired by its own terms; (2) in March 2015, when Veitch chose to file a public complaint discussing them in exhaustive detail and attached exhibits purporting to contain these "trade secrets" without filing them under seal; and (3) in May 2015, when Veitch reaffirmed his decision to disclose his alleged trade secrets to the public by filing an Amended Complaint discussing these "trade secrets" in further detail.  (*See* Dkt. No. 25, at 15 n.9; Dkt. No. 26.)

2

Veitch's own conduct caused his alleged trade secrets to become matters of public record, and he cannot enjoin the VC Defendants (or anyone else) from making use of that public information.

*Second*, Veitch cannot state a claim for unjust enrichment against the VC Defendants, because that claim is preempted by his trade secret claim pursuant to the Florida Uniform Trade Secrets Act. Moreover, Veitch has not alleged any direct benefit conferred upon the VC Defendants as required under the governing law, nor could there be any. Indeed, it would be factually impossible because the VC Defendants did not exist until after Veitch's dealings with VMUSA ceased. But even if the VC Defendants somehow benefited from information Veitch provided VMUSA under to the NDA (and they did not), it would not be "unjust" for the VC Defendants to retain any such benefit because the NDA had already expired.

For these reasons, Veitch's claims against the VC Defendants, and all relief sought from them, should be dismissed without leave to amend.

## PLAINTIFFS' FACTUAL ALLEGATIONS

I.  **PLAINTIFFS COLIN VEITCH AND VSM DEVELOPMENT, INC.**

Plaintiff Colin Veitch is a former Norwegian Cruise Line ("NCL") executive domiciled in Florida. (Doc. No. 26 ¶¶ 1, 12.) Plaintiff VSM Development, Inc. is a Florida corporation headquartered in Florida, and serves as "Mr. Veitch's investment vehicle." (*Id.* ¶¶ 2, 121 n.16.)

II. **THE VC DEFENDANTS.[1]**

The VC Defendants are corporations organized under the laws of Bermuda. (*Id.* ¶¶ 7, 8.) Both VC Defendants were incorporated in late 2014—VCL was incorporated on August 28, 2014 and VCIL on September 16, 2014. The VC Defendants request that the Court take judicial notice of the Certificates of Incorporation attached as Exhibit A, which show that VCL and VCIL were incorporated on August 28, 2014 and September 16, 2014, respectively. (Ex. A at 5, 10.) Courts in this Circuit regularly take judicial notice of documents related to a party's incorporation. *See Mukamal v. Bakes*, 383 B.R. 798, 818 n.21 (S.D. Fla. 2007) (taking judicial notice of state of incorporation); *see also Herrera v. JFK Medical Center Ltd. P'Ship*, Case No. 01-20793-CIV, 2015 WL 730039, at *3 (M.D. Fla. Feb. 20, 2015) (taking judicial notice of certificates of incorporation on a motion to dismiss).

---

[1] The remaining defendants are collectively referred to as the "VM Defendants."

3

**III.     VEITCH'S ALLEGED DEALINGS WITH THE VM DEFENDANTS.**

   **A.     The "Ultra Ships Plan."**

According to the Amended Complaint, by the time Veitch retired from NCL in 2008, two "Ultra Ships"—NCL's *Norwegian Epic*, as well as . . . Royal Caribbean's new Ultra Ship, the *Oasis of the Seas*"—had already been designed, manufactured, and successfully launched.  (*See* Dkt. No. 26 ¶ 24.)  Veitch allegedly analyzed their success and prepared a presentation he dubbed the "Ultra Ships Plan." (*Id.* ¶ 30.)  Upon completing the Ultra Ships Plan, "Mr. Veitch considered enlisting a 'branding partner' for the venture." (*Id.* ¶ 47.)  In December 2010 and February 2011, Veitch contacted Anthony Marino, then-CEO for Virgin Hotels, to discuss a possible collaboration on a new cruise industry venture. (*Id.* ¶¶ 68–70.)

   **B.     The NDA between VMUSA and Veitch.**

On March 11, 2011, Veitch and VMUSA executed a NDA to facilitate discussions about "a potential business relationship between them . . . ." (*Id.*, Ex. B at 1.)  VMUSA is the only defendant that is a party to the NDA.  Nevertheless, Veitch alleges that he "understood, and intended, that he was contracting with 'Virgin Group' through [VMUSA], and that [VMUSA's] contracts and agreements were binding on Virgin Group." (*Id.* ¶ 72.)  The VC Defendants were not signatories to the NDA, and did not exist when it was executed in 2011.

The NDA contained the "entire agreement" between Veitch and VMUSA, and covered "Confidential Information" exchanged between them, defined as "all ideas and all non-public confidential or proprietary information and materials which the Receiving Party receives or acquires from, or on behalf of, the Disclosing Party, in the course of evaluating the Potential Transaction." (*Id.* ¶ 72, Ex. B at 1.)  The NDA prohibited VMUSA and Veitch from using Confidential Information for their own purposes until three years after its execution:

> The term of this Agreement shall commence upon [March 11, 2011] and shall continue in full force and effect until the earlier of (a) such time as Confidential Information is publicly disclosed with Disclosing Party's written authorization, and (b) three (3) years from the date hereof.

(*Id.*, Ex. B at 2.)  Thus, by the NDA's express terms, the restrictions governing the "Confidential Information" shared by Veitch pursuant to the NDA expired by March 11, 2014. (*Id.*)

4

Case 1:15-cv-20989-KMM   Document 53   Entered on FLSD Docket 06/01/2015   Page 5 of 19

      **C.**    **Veitch's Subsequent Dealings with VMUSA.**

After signing the NDA, Veitch alleges a course of dealing with VMUSA that ended in June 2012 regarding a potential partnership to start a cruise line. (*Id.* ¶¶ 86–200.) None of these dealings involved the VC Defendants, and they concluded before the VC Defendants formed. After the relationship between Veitch and VMUSA ended, on June 8, 2012, Veitch's counsel sent a letter confirming that any potential partnership between the parties was terminated, and "emphasizing" that Confidential Information remained protected "*for three years after the NDA . . . .*" (*i.e.*, until March 11, 2014). (*Id.* ¶ 199 (emphasis added).)

**IV.**    **THE ANNOUNCEMENT OF VIRGIN CRUISES.**

Almost two years after Veitch confirmed the termination of his discussions with VMUSA, on February 28, 2014, "Sky News reported that 'Virgin Group has appointed the US-based corporate advisory firm Allen & Co. to oversee the development of a cruise operation . . . .'" (*Id.* ¶ 202.) The story also reported discussions with "banks about raising an estimated $1bn of debt to finance the acquisition of the company's first vessels" and "$700m of equity by selling stakes in Virgin Cruises to outside investors." (*Id.*) The NDA expired by its terms less than two weeks later, but Veitch did not file this suit for another year. In August and September 2014, the VC Defendants were incorporated in Bermuda. (Ex. A.)

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Pleadings consisting only of "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation and citations omitted).

**I.**    **VCL MUST BE DISMISSED FROM THIS CASE.**

As a threshold matter, VCL must be dismissed from this case because Veitch does not allege any actions by, or counts against, that defendant. The opening paragraph of the Amended Complaint states that Veitch is suing only five of the six Defendants, omitting reference to VCL.

5

(Dkt. No. 26 at 1)  Veitch alleges only that VCL was formed by "Virgin Group," and its shareholders are "private equity/sovereign wealth/family-office type investors."  (*Id.* ¶ 204.)  Veitch's allegations about "Virgin Cruises," "Virgin," and "Defendants" do not implicate VCL because they specifically define those terms ***to exclude VCL***.  (*See id.* at 1, ¶ 7.)  Thus, Veitch fails to allege a single cause of action "[a]gainst" VCL.  (*See id.* at 51, 54–55, 57, 59, 61, 63, 65, 67.)  Veitch nevertheless requests a constructive trust over VCL.  (*See id.* at 53, 56, 59, 61–62, 68.)  Simply put, Veitch cannot seek relief from a "party" against whom he has not lodged a single relevant factual allegation or cause of action.

## II.    VEITCH'S REQUEST FOR RELIEF AGAINST VCIL UNDER COUNTS I–II AND V–IX MUST BE DISMISSED.

Veitch asks this Court for relief against VCIL under Counts I–II and V–IX, but that request must be dismissed because these counts are not asserted against VCIL.  Veitch defines the term "Virgin Cruises" to mean VCIL, and incorporates "Virgin Cruises" into the definition of "Virgin" and "Defendants."  (*Id.* at 1, ¶ 7.)  Using these definitions, Veitch asserts only two causes of action "[a]gainst" Virgin Cruises:  Count III for "Misappropriation" and Count IV for "Unjust Enrichment."  (*Id.* at 55, 57.)  Yet, Veitch seeks relief involving VCIL, its parent, and its subsidiary for Counts I–II and V–IX.  (*See id.* at 53-56, 59, 61-62, 64, 66.)  It is self-evident that Veitch cannot obtain relief from VCIL for causes of action he has not asserted against it.  These requests for relief must be dismissed on that basis alone.

## III.   VEITCH'S TRADE SECRET MISAPPROPRIATION CLAIM AGAINST VCIL MUST BE DISMISSED.[2]

Veitch alleges trade secret misappropriation against the VM Defendants and VCIL under both the Florida Uniform Trade Secrets Act ("FUTSA"), and, alternatively, New York common law.  (Dkt. No. 26 ¶ 229.)  This claim must be dismissed.  As an initial matter, Veitch's New York common law claim against VCIL fails because he fails to allege that VCIL took any action in New York.  Veitch's claim also fails under both Florida and New York law for two additional reasons.  First, Veitch fails to allege a plausible claim that he had any protected "trade secrets" at

---

[2] As noted above, Defendant VCL should be dismissed from this action because Plaintiffs have not alleged any actions by, or counts against, VCL.  But if this Court finds VCL is a party to any of Plaintiffs' claims against VCIL, they fail for the same reasons his claims against VCIL fail, as discussed in further detail below.

6

the time VCIL formed. Second, Veitch fails to allege a plausible claim that VCIL misappropriated the same. Finally, at a minimum, Veitch's claim for injunctive relief fails because he has not alleged, and cannot allege, that he presently has any protectable trade secrets.

### A.  Veitch Has No Claim against the VC Defendants under New York Law.

Under Florida choice-of-law rules, "the principal location of a defendant's allegedly unlawful conduct will usually be given the greatest weight" in trade secret misappropriation actions. *Social Language Processing, Inc. v. Ott*, No. 12-cv-62286, 2013 WL 1442168, at *5 (S.D. Fla. Apr. 9, 2013) (citations omitted). While Veitch offers conclusory allegations that "the conduct that caused the injury was centered in New York" (Am Compl. ¶ 229.), those allegations do not identify any conduct by VCIL in New York. In short, without alleging any New York-based conduct, Veitch cannot sue a Bermuda defendant under New York law in a Florida court.

In a desperate attempt to mask this deficiency, Veitch resorts to "shotgun pleading" that conflates the VM Defendants with the VC Defendants. But a complaint that "lump[s] all the defendants together" must be dismissed because it provides "no factual basis to distinguish their conduct." *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-cv–60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *see also U.S. Bank Nat'l Assoc. v. Capparelli*, No. 13-cv- 80323, 2014 WL 2807648, at *3 (S.D. Fla. June 20, 2014) (dismissing complaint); *George & Co., LLC v. Alibaba.com, Inc.*, No. 10-cv-719, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (dismissing complaint where "plaintiff briefly alleges that the defendants are separate entities . . . but then fails to distinguish their misconduct"). Because Veitch has not alleged any New York conduct by VCIL, Florida law applies because Veitch is domiciled in Florida and VSM Development, Inc. is a Florida corporation headquartered in Florida. (Dkt. No. 26 ¶¶ 1–2.)

### B.  Veitch Fails to Plead Facts Sufficient to State a Plausible Claim that He Had Any Protectable Trade Secrets When VCIL Formed.

Veitch's misappropriation claim fails regardless of which state's law applies. Under Florida and New York law, Veitch must allege the existence of a "trade secret" he owned, and that the VC Defendants "misappropriated" it within the meaning of the law. Fla. Stat. § 688.002; *accord In re Cross Media Mktg. Corp.*, 367 B.R. 435, 456–57 (Bankr. S.D.N.Y. 2007). The Amended Complaint is deficient as to both elements. First, Veitch had no trade secrets by the time the VC Defendants formed. Second, once the VC Defendants formed, it was permissible to

7

use the claimed trade secrets because any confidentiality obligations or use limitations had already expired pursuant to the express terms of the NDA.

Under the FUTSA, a trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process that (a) derives independent economic value, actual or potential, from not being generally known to, and ***not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use***; and (b) [i]s the subject of ***efforts that are reasonable under the circumstances to maintain its secrecy***." Fla. Stat. § 688.002(4) (emphasis added); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1183–84 (11th Cir. 2011) (quoting statute); *Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993) (same under NY law).

Veitch fails to identify his claimed trade secrets with any (much less sufficient) particularity, but alleges the existence of a "duty to limit [the claimed trade secrets'] use, including but not limited to the NDA." But the only "effort" Veitch actually identifies to protect his "trade secrets" is his NDA with VMUSA. (Dkt. No. 26 ¶¶ 231, 233.) Veitch cannot overcome this shortcoming by vaguely alluding to other unspecified actions he took to protect his purported "trade secrets." The only information allegedly subject to an effort to maintain its secrecy—and therefore potentially capable of trade secret protection—was disclosed pursuant to, and is limited by, the NDA. Thus, any of the alleged trade secrets that Veitch disclosed to VMUSA lost all protection by the time VCIL came into existence in September 2014—long after the NDA shielding these alleged trade secrets expired. (Dkt. No. 26, Ex. B at 2.)

Veitch does not allege any other steps he took to keep this information secret, so these alleged trade secrets evaporated the moment they were no longer the subject of reasonable efforts to maintain their secrecy. *See Expansion Plus Inc. v. Brown-Forman Corp.*, 132 F.3d 1083, 1086 (5th Cir. 1998) (affirming judgment for defendant where claimed trade secrets were used and sold to another company after expiration of contract's three-year nondisclosure provision, and new agreement did not contain any nondisclosure terms); *ECT Int'l., Inc. v. Zwerlein*, 228 Wis. 2d 343, 355 (Ct. App. 1999) (holding employment agreement limiting confidentiality obligation to one year "manifested [an] intent that after one year there was no need to maintain the secrecy of any sensitive and confidential information"); *All West Pet Supply Co. v. Hill's Pet Prods.*, 840 F. Supp. 1433, 1439 (D. Kan. 1993), *amended*, 842 F. Supp. 1376 (D. Kan. 1994)

(holding confidentiality obligation expires upon termination of the agreement). Thus, as of the expiration of the NDA in March 2014, Veitch had no trade secrets for VCIL to misappropriate.[3]

Even if the NDA had not already expired, Veitch still would have no claim against VCIL. The mere allegation that VCIL is somehow "affiliated" with VMUSA "does not alone impose any duty or obligation upon [VCIL] to keep [his] information confidential." *Gusler v. Fischer*, 580 F. Supp. 2d 309, 320 (S.D.N.Y. 2008) (dismissing trade secret misappropriation and unjust enrichment claims, because there was no breach of a duty of confidence where plaintiff "believed" that an individual was affiliated with defendant and disclosed information to him believing he would be bound by defendant's NDA).

Veitch's attempt to avoid this result by claiming "[u]pon information and belief" that VMUSA was an "agent" of VCIL is unavailing. (Dkt. No. 26 ¶ 235.) It is well-settled that a third party's "reliance on the apparent authority of a principal's agent must be reasonable and ***rest in the actions of or appearances created by the principal*** [*i.e.*, VCIL]," not those of the alleged agent (*i.e.*, VMUSA). *See, e.g.*, *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000) (affirming directed verdict and JNOV on these grounds). Regardless, VCIL could not have acted in any manner sufficient to create an agency relationship because it ***did not exist*** when Veitch and VMUSA executed the NDA.

### C. Veitch Fails to Plausibly Allege Any Misappropriation by VCIL.

Veitch's trade secret claims also fail for the independent reason that Veitch has not alleged actionable "misappropriation." Not every taking is "misappropriation" under trade secret law. Under the FUTSA, misappropriation occurs only where a defendant (1) acquires a trade secret while knowing or having reason to know that the trade secret was acquired by "improper means"; or (2) discloses or uses the trade secret without express or implied consent, and knowing

---

[3] Indeed, it is likely that the NDA did not constitute a reasonable step to protect Veitch's alleged trade secrets. Courts in other jurisdictions have held that disclosure pursuant to an NDA with "only a limited duration" fails to satisfy the "reasonable steps" requirement. *See Silicon Valley, Inc. v. Analogix Semiconductor, Inc.*, No. 07-cv-00635, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008) (citing legislative history of California statute); *ECT Int'l*, 228 Wis. at 355–56 (holding one-year term insufficient effort to protect confidentiality); *DB Riley, Inc. v. AB Eng'g Corp.*, 977 F. Supp. 84, 91 (D. Mass. 1997) (denying preliminary injunction, holding that plaintiff failed to prove "it took reasonable steps to preserve the secrecy of its trade secrets" because it disclosed drawings under "time limited" confidentiality agreement with ten-year term).

or having reason to know that its knowledge of the trade secret was (a) derived from a person who had used "improper means" to acquire it, (b) acquired under circumstances giving rise to a duty to maintain secrecy or limit use, or (c) derived from a person who owed a duty to the plaintiff to maintain its secrecy or limit its use.  Fla. Stat. § 688.002(2); *see also Knights Armament*, 654 F.3d at 1183-84 (quoting statute); *Natural Organics, Inc. v. Smith*, 12 Misc. 3d 1185(A), at *2 (N.Y. Eq. Ct. Nassau Cnty. 2006) (under New York law, requiring use of a trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means); *Fabkom, Inc. v. R.W. Smith & Assocs., Inc.*, No. 95-cv-4552, 1996 WL 531873, at *13 (S.D.N.Y. Sept. 19, 1996) (applying the knowing-or-having-reason-to-know standard under New York law).  Veitch has not alleged facts sufficient to meet this requirement for three reasons.

*First*, Veitch's claims fail to satisfy prong 2(b) or 2(c) of the test above, which find misappropriation where a defendant acquires knowledge of trade secrets under circumstances giving rise to a duty to maintain secrecy or limit use, or derives such knowledge from a person who owed such a duty to the plaintiff.  As discussed in Section III.B, *supra*, the NDA was the sole instrument imposing any such duty on VMUSA and, by its terms, those duties expired by March 2014 before VCIL was incorporated.  Thus, VCIL could not have acquired its alleged knowledge subject to any such duty, and was permitted to receive information derived from the VM Defendants' knowledge of this information, which was no longer subject to the NDA.

*Second*, Veitch's allegations also fail under the remaining prongs 1 and 2(a), which require the use of "improper means."  Under the statute, "improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Fla. Stat. § 688.002(1); *see also Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 273 (S.D.N.Y. 2014) (applying Restatement definition of "improper means": "fraudulent misrepresentations to induce disclosure, tapping of telephone wires, eavesdropping or other espionage").  Notably, Veitch does not allege any nefarious conduct by VCIL like theft, bribery, or espionage.  Rather, the only claimed "improper means" is an alleged breach of the NDA.  But as noted above, VCIL was ***not a party*** to the NDA, which had ***already expired by the time VCIL came into existence***.  Therefore, VCIL could not have employed "improper means" to acquire such information.  Moreover, because the NDA was defunct, VCIL could not "know or have reason to know" that its alleged acquisition of such knowledge was improper—because it was not improper.

10

*Finally*, there is no cause of action for trade secret misappropriation where, as here, the alleged owner expressly or impliedly consented. Fla. Stat. § 688.002(2). The NDA, which Veitch bargained for, agreed to, and is now suing under, placed a limit on VMUSA's confidentiality obligation, and therefore he consented to the use of his "trade secrets" upon expiration on March 11, 2014. *See ECT Int'l*, 228 Wis. 2d at 355 (holding that one-year confidentiality term "manifested [an] intent that after one year there was no need to maintain the secrecy of any sensitive and confidential information"). Veitch cannot use this Court to unilaterally rewrite the terms of a NDA he freely entered into.

        **D.**      **Veitch Is Not Entitled to Injunctive Relief for Misappropriation.**

Even if Veitch prevails on the trade secret claim, he cannot obtain an injunction as a matter of law. It is well settled that injunctive relief for trade secret misappropriation is not available once the trade secret ceases to exist. *See* Fla. Stat. Ann. § 688.003(1) (providing that any injunction "shall be terminated upon application once a trade secret ceases to exist"); *TNS Media Research, LLC v. TRA Global, Inc.*, No. 11 CIV. 4039 SAS, 2014 WL 1370279, at *1–2 (S.D.N.Y. Apr. 7, 2014) (finding that because the non-disclosure agreement covering claimed trade secrets had expired, the question of "injunctive relief [was] moot"); *cf. Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1219 (S.D. Fla. 2005) (denying request for injunction where non-compete agreement had expired); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 694 (Bankr. M.D. Fla. 2010) (denying permanent injunction as moot because plaintiff did not seek preliminary injunction for breach of non-compete, and the term of the covenant had long been expired before trial); *Stanley Tulchin Assocs., Inc. v. Vignola*, 186 A.D.2d 183, 185–86 (N.Y. Ct. App. 2d Dep't 1992) ("[W]e cannot grant injunctive relief" because the three-year period" of the NDA prohibiting former employee from using of plaintiff's "unique and confidential information . . . has expired"); *Banner Indus. of N.E., Inc. v. Wicks*, No. 1:11-CV-1537, 2014 WL 6810623, at *18 (N.D.N.Y. Dec. 1, 2014) (finding that because "[t]he three-year period [of the NDA and non-compete agreement] has expired . . . [it] is not enforceable by injunctive relief"); *RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 WL 504998, at *6 (Tex. Ct. App. Mar. 3, 2006) (holding that plaintiff could not obtain injunctive relief to protect alleged "confidential information and trade secrets" because defendant's "contractual obligation not to compete has expired" and plaintiff "did not diligently pursue an equitable extension of the covenant not to compete" before it expired). Here, it is clear that any trade secrets Veitch allegedly disclosed to

11

VMUSA in 2011 and 2012 can no longer be considered "trade secrets" now as a matter of law for two reasons.

*First*, Veitch agreed to an NDA with an explicit termination date of March 11, 2014. On that date, VMUSA ceased to be bound by any obligation to maintain the confidentiality of information disclosed pursuant to that NDA. *See TNS Media Research*, 2014 WL 1370279, at *1–2; *Stanley Tulchin Assocs.*, 186 A.D.2d at 185–86; *RenewData Corp. v. Strickler*, 2006 WL 504998, at *6. If Veitch desired broader protections, he was free to negotiate for them. Because he did not, Veitch is bound by the unambiguous terms of his contract with VMUSA.

*Second*, Veitch voluntarily disclosed his claimed trade secrets publicly on March 11, 2015 when he filed the original Complaint and accompanying exhibits containing the "Ultra Ships Plan" and other presentations without seeking leave to file them under seal. (*See, e.g.*, Dkt. No. 1 ¶¶ 22–108, Exs. A, D–G; Dkt. No. 26 ¶¶ 24–171, Exs. A, D–G.); s*ee also In re Nat'l Consumer Mortgage, LLC*, 512 B.R. 639, 642 (D. Nev. 2014) (holding that claimed trade secrets no longer existed because they were admitted "into evidence before the jury in open court during the trial" constituted a "public release"); *Keystone Plastics, Inc. v. C&P Plastics, Inc.*, 340 F. Supp. 55, 64–65 (S.D. Fla. 1972) (holding that publication of trade secret in Canadian patent relinquished trade secret). Indeed, VMUSA's motion to dismiss the Complaint argued, among other things, that Veitch had no present trade secrets because he publicly disclosed them in the Complaint and accompanying exhibits. (*See* Dkt. No. 25, at 15 n.9.) In response, Veitch made no effort to correct this disclosure by, among other things, seeking to re-file under seal. Rather, Veitch again publicly disclosed his claimed trade secrets by filing the Amended Complaint with the same accompanying exhibits. Veitch has not sought to correct this error since.

Veitch tacitly admits that his trade secrets are defunct by belatedly seeking a so-called "extension" of the NDA for an additional three years. (Dkt. No. 26 at 55.) Veitch is not entitled to such relief. Because the NDA has already expired, Veitch seeks not an "extension" but rather to revive an agreement that expired by its terms a full year before this lawsuit commenced, and nearly 14 months before Veitch thought to belatedly request the so-called "extension." Further, as the Amended Complaint concedes, articles about Virgin Cruises have been published since February 2014, but Veitch waited nearly a full year before filing suit. (Doc. No. 26 ¶¶ 202–07.) In any case, Veitch has himself twice publicly disclosed his alleged trade secrets and other Confidential Information formerly protected under the NDA, and he cannot unring that bell.

Veitch's lack of diligence defeats a request for equitable extension, let alone resuscitation of an already-defunct agreement. *See RenewData Corp*, 2006 WL 504998 at *5 (affirming refusal to equitably extend non-compete agreement, because plaintiff did not diligently pursue its claims); *TNS Media Research*, 2014 WL 1370279, at *1–2 (finding injunctive relief moot because NDA covering claimed trade secrets had expired).

In sum, the misappropriation claim must be dismissed because the allegations fail to plausibly establish the validity of Veitch's claimed trade secrets, and that VCIL has committed any actionable misappropriation. At minimum, Veitch cannot seek injunctive relief.

## IV. VEITCH'S UNJUST ENRICHMENT CLAIM AGAINST VCIL MUST BE DISMISSED.

Veitch's unjust enrichment claim against VCIL fails for several reasons. First, it is preempted by the FUTSA. Further, Veitch has not alleged that he conferred any direct benefit upon VCIL as required under governing law. Finally, even if the VCIL somehow indirectly benefited from information Veitch provided VMUSA pursuant to the NDA, which it did not, it would not be "unjust" as a matter of law for VCIL to retain any such benefit.

### A. The FUTSA Preempts Veitch's Unjust Enrichment Claim.

The FUTSA is clear that its provisions "displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. ¶ 688.008(1). Indeed, unjust enrichment is a remedy available under the FUTSA. Fla. Stat. § 688.004(1). Consequently, "a claim for unjust enrichment is indistinguishable from the remedy under the statute and therefore is preempted." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893 (M.D. Fla. 2007) (holding unjust enrichment claim preempted on these grounds).

Here, Veitch premises his unjust enrichment claim on the same allegations as his trade secret misappropriation claim under FUTSA. (*Compare* Dkt. No. 26 ¶ 244 (alleging unjust enrichment as "[p]laintiffs conferred benefits upon defendants by presenting them the Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA"), *with id.* ¶ 230 (alleging misappropriation of the "Ultra Ships Plan and other Confidential Information disclosed pursuant to the NDA"), and *id.* at 56 (seeking as relief for the misappropriation claim "unjust enrichment caused by the misappropriation").) Because these claims are indistinguishable, the FUTSA preempts the unjust enrichment claim.

13

### B. VCIL Was Not Unjustly Enriched by Veitch.

Veitch's claim also fails because he has not alleged facts showing that VCIL was unjustly enriched by him. Specifically, Veitch must allege (with plausible factual allegations) that (1) he conferred a benefit on VCIL; (2) VCIL knew of the benefit; (3) VCIL accepted and retained the benefit; and (4) under the circumstances, it would be inequitable for VCIL to retain the benefit without paying the value thereof. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (citations omitted). Florida law also requires that the alleged benefit be "direct, not indirect or attenuated." *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-cv-1121, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 200); *accord Prescient Acquisition Grp., Inc. v. MJ Pub. Trust*, No. 05-cv-6298, 2006 WL 2136293, at *7 (S.D.N.Y. July 31, 2006) (holding that plaintiff must allege that it "directly conferred" a benefit).

In *Prescient*, the plaintiff Perfect Circle alleged that it provided a benefit to non-party PCC, and that defendant MJ Publishing was thereafter "enriched" because of PCC's success. 2006 WL 2136293, at *6. The court dismissed the unjust enrichment claim because, "[a]ccepting all allegations of the [Complaint] as true, defendants have not been unjustly enriched at the expense of Perfect Circle because Perfect Circle has not conferred a benefit upon defendants but rather upon PCC/Prescient which indirectly may have benefited defendants." *Id.* at *7. Similarly, Veitch's claim must be dismissed as against VCIL because the allegations fail to plausibly establish any of these elements.

#### 1. Veitch could not have directly benefitted VCIL.

As noted above, VCIL did not exist for the entirety of Veitch's alleged business dealings with the VM Defendants. (*See* Dkt. No. 26 ¶¶ 47–200.) VCIL did not come into existence until nearly two years after Veitch allegedly parted ways with the VM Defendants. Thus, it is factually impossible that Veitch could have *directly* conferred any benefit on VCIL, or that VCIL could have known that such an alleged benefit was conferred.

At most, Veitch alleges that VCIL is a subsequent, indirect beneficiary of the benefits he conferred on the VM Defendants years prior to VCIL's formation. Such an attenuated relationship is insufficient to sustain an unjust enrichment claim. *See, e.g.*, *Peoples Nat'l Bank of Comm. v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (affirming dismissal of unjust enrichment claim where plaintiff "could not and did not allege that

it had directly conferred a benefit on the defendants"); *Prescient*, 2006 WL 2136293, at *7; *Outrigger Const. Co. v. Bank Leumi Trust Co. of N.Y.*, 240 A.D.2d 382, 384 (2d Dept. 1997) (dismissing unjust enrichment claim against alleged indirect beneficiary); *cf. Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (affirming dismissal of unjust enrichment claim because complaint lacked allegations that "would indicate a relationship between the parties," finding that "the connection between the parties is too attenuated").

Veitch alleges that he conferred some unspecified amount of labor, effort, and expense on the VM Defendants. (Dkt. No. 26 ¶ 241.) But any "labor, effort, and expense" that Veitch allegedly expended was during the time period that he was dealing with VMUSA from December 2010 until June 2012. As discussed in Section III.B, *supra*, the VC Defendants did not exist at that time. Therefore, Veitch cannot premise the unjust enrichment claim against VCIL on the benefits the VM Defendants allegedly received years before the VC Defendants' formation in 2014.

### 2.     **VCIL has not inequitably retained any benefit from Veitch.**

Veitch alleges only that VCIL is a subsequent, downstream beneficiary of "the Ultra Ships Plan, and the additional Confidential Information developed and disclosed pursuant to the NDA." (Dkt. No. 26 ¶ 244–45.) As discussed in Section III.B, *supra*, however, the NDA expired by its terms before the VC Defendants came into being. By the time the VC Defendants existed, the "Ultra Ships Plan" and any "Confidential Information developed and disclosed pursuant to the NDA" were no longer subject to any confidentiality obligation pursuant to the NDA. Thus, even assuming *arguendo* that VCIL used Veitch's proprietary information after forming in 2014, it did so properly and with Veitch's consent. Therefore, it would not be inequitable for VCIL to retain any such information.

### **CONCLUSION**

For the foregoing reasons, the VC Defendants respectfully request that the Court dismiss all claims against them with prejudice pursuant to Rule 12(b)(6). A proposed Order is attached as Exhibit B.

**CERTIFICATE OF PRE-FILING CONFERENCE**

I hereby certify that prior to filing the request for judicial notice contained in this motion to dismiss and motion for judicial notice, I conferred, pursuant to Local Rule 7.1, both telephonically and by electronic mail with counsel for Plaintiffs, Jeffrey W. Gutchess, Esq., on May 28, May 29 and June 1, 2015, in a good faith attempt to resolve by consent the VC Defendants' request for judicial notice. At this time, Plaintiffs have indicated that they are unable to consent to the VC Defendants' request, but reserve the right to revisit the issue once they have had the opportunity to review the VC Defendants' motion to dismiss and formal request for judicial notice.

                                                s/ Janet T. Munn
                                                Janet T. Munn

Dated: June 1, 2015                                    Respectfully submitted,

                                                s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Email:  jmunn@rascoklock.com
**RASCO KLOCK PEREZ & NIETO, P.L.**
2555 Ponce de Leon, Suite 600
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.468.6281

*Counsel for Defendants Virgin Cruises Intermediate Limited and Virgin Cruises Limited*

s/ Dale M. Cendali
Dale M. Cendali*
Email:  dale.cendali@kirkland.com
Johanna Schmitt*
Email:  johanna.schmitt@kirkland.com
Phillip A. L. Hill*
Email:  phil.hill@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

P. Daniel Bond*
Email:  daniel.bond@kirkland.com
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*\* Admitted Pro Hac Vice*

*Counsel for Virgin Cruises Intermediate Limited and Virgin Cruises Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically. Notices of Electronic Filing:

    Jeffrey W. Gutchess, Esq.
    Fla. Bar No.: 702641
    jgutchess@bilzin.com
    Daniel Tropin, Esq.
    Fla. Bar No.: 100424
    dtropin@bilzin.com
    Brandon Rose, Esq.
    Fla. Bar No.: 99984
    brose@bilzin.com
    **Bilzin Sumberg Baena**
    **Price & Axelrod LLP**
    1450 Brickell Avenue, 23rd Floor
    Telephone: 305.350.7312
    Facsimile: 305.351.2132

    *Counsel for Plaintiffs*

    Claude M. Stern*
    Email: claudestern@quinnemanuel.com
    Evette D. Pennypacker*
    Email: evettepennypacker@quinnemanuel.com
    **QUINN EMANUEL URQUHART &**
    **SULLIVAN LLP**
    555 Twin Dolphin Drive, Suite 500
    Redwood Shores, CA 94065
    Telephone: 650.801.5000
    Telecopy: 650.801.5100

    Marc Greenwald*
    Email: marcgreenwald@quinnemanuel.com
    **QUINN EMANUEL URQUHART &**
    **SULLIVAN LLP**
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Telephone: 212.849.700
    Telecopy: 212.849.7100

*\*Admitted Pro Hac Vice*

*Counsel for Defendants Virgin Management USA, Inc., Virgin Group Investments Ltd., Virgin Group Holdings Limited, and Virgin Enterprises Limited*

By: s/ Janet T. Munn
      Janet T. Munn