UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20989-CIV-MOORE/McALILEY

COLIN VEITCH,
VSM DEVELOPMENT, INC.,

    Plaintiffs,

v.

VIRGIN MANAGEMENT USA, INC.,
VIRGIN GROUP INVESTMENTS LTD.,
VIRGIN GROUP HOLDINGS LIMITED,
VIRGIN ENTERPRISES LIMITED,
VIRGIN CRUISES INTERMEDIATE LIMITED;
AND VIRGIN CRUISES LIMITED.

    Defendants.
_____

**DEFENDANTS' MOTIONS & MEMORANDUM OF LAW TO COMPEL AND
FOR ENTRY OF A PROTECTIVE ORDER AND REQUEST FOR HEARING**

Parties who assert a trade secret misappropriation claim must identify their purported trade secrets with reasonable particularity *before* a defendant is required to produce discovery. The policy underlying this rule is self-evident: if a plaintiff is not required to identify its trade secrets prior to obtaining discovery from a defendant, it may vaguely allege a trade secret claim, take discovery, then identify as trade secrets what it finds in defendants' files. Plaintiffs have not provided this particularized statement. Instead, Plaintiffs' interrogatory response purporting to identify trade secrets merely generally identifies a 42-page document attached to their Complaint and then lists vague categories of information such as "a proprietary analysis" or "insights" without any elaboration. Plaintiffs do not identify *any* specific aspects of the 42-page document, "analyses," or "insights" it claims as trade secrets, yet seek extensive discovery from Defendants, including proprietary details on Defendants' future business plans. Defendants thus ask the Court to compel Plaintiffs to provide a particularized statement of the alleged trade secrets they contend have been misappropriated and enter a protective order sequencing discovery so that Plaintiffs obtain discovery after identifying their alleged trade secrets with particularity.[1]

## I.  Factual and Procedural Background.

Plaintiffs Colin Veitch and his "investment vehicle" VSM Development, Inc. filed this lawsuit on March 11, 2015,[2] and allege the "Virgin Group"[3] misappropriated "a business idea, business plan, and business that was fully developed by Mr. Colin Veitch and presented to Virgin pursuant to non-disclosure, non-use, and other agreements." (D.E. 26, at p. 1.) Plaintiffs assert nine separate counts all related to this alleged "misappropriation," including breach of a non-disclosure agreement, breach of alleged agreements between certain of the parties to

---

[1]  Defendants do not seek to continue deadlines, are prepared to proceed under the current schedule, and do not seek to prevent Plaintiff from obtaining any discovery. Without waiving objections stated herein, Defendants agree to promptly produce documents and communications exchanged with Plaintiff(s) and to identify individuals requested to be identified in certain of Plaintiffs' interrogatories, since such information cannot be used by Plaintiffs (even unintentionally) to develop their trade secret statement. Once Plaintiffs produce a particularized trade secret statement, Defendants are prepared to proceed with discovery on Plaintiffs' other requests immediately (subject to their relevance, breadth, privilege and other objections).

[2]  Plaintiffs filed an Amended Complaint on May 5, 2015. (D.E. 26.)

[3]  Plaintiffs allege the "Virgin Group" is "a tangled web of enterprises" that "consists of about 400 operations," "owned via a complicated series of offshore trusts and overseas holding companies," which operate as "a huge family office with a portfolio" of investments held for the benefit of Sir Richard Branson's family. (*Id.* ¶¶ 51-52.)

1

"partner," unjust enrichment, unfair competition, and "misappropriation" under the Florida Uniform Trade Secrets Act ("FUTSA"). (*Id.* ¶¶ 209-306.)

On June 1, in response to an interrogatory, Plaintiffs provided only conclusory statements and "categories" of trade secrets rather than a particularized statement. (*See* Ex. A, at pp. 5-14.)[4] Plaintiffs have rejected Defendants repeated efforts to resolve this issue without motion practice.

## II. **Plaintiffs Should be Compelled to Provide a Particularized Trade Secret Statement.**

Plaintiffs asserting a FUTSA claim have "the burden to describe the alleged trade secret with ***reasonable particularity***." *Am. Registry, LLC v. Hanaw*, No. 13-cv-352, 2013 WL 6332971, at \*3 (M.D. Fla. Dec. 5, 2013) (emphasis added); *Levenger Co. v. Feldman,* 516 F. Supp. 2d 1272, 1287 (S.D. Fla. 2007). It is insufficient to "describe [a] trade secret by generic category," but instead Plaintiffs must "identify the specific characteristics of each trade secret." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008).

Plaintiffs interrogatory response fails to meet this standard. Plaintiffs first contend that their trade secret is the "totality" of their "Ultra Ships Plan," a 42-page document attached as Exhibit A to the Amended Complaint. (*See* D.E. 26-1; *e.g.* Ex. A, at p. 5 ("the totality of the plan and the insights it offers … is plainly novel, is plainly non-public, and is plainly the proprietary product of Plaintiffs' special knowledge").) Referring generally to a multi-page business "plan" and its appendices is inadequate, as it leaves Defendants to "embark upon a fishing expedition to ascertain what [plaintiff's alleged] secrets are," impermissibly shifting the burden to Defendants to identify Plaintiffs' alleged trade secret. *Del Monte*, 148 F. Supp 2d at 1326; *cf., e.g., Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 263 (S.D.N.Y. 2014) (broad designations of multiple documents as a trade secret "impermissibly shifts [Plaintiffs'] burden onto [Defendant] (and the Court)"); *cf. IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002) (plaintiff may not rely on "a 43-page description" where those 43 pages "do[] not separate the trade secrets from the other information"). Florida law places the burden squarely on Plaintiffs to "identify the specific characteristics of each trade secret," and their reference to the entirety of the Ultra Ships Plan does not meet this requirement. *Knights Armament Co.*, 254 F.R.D. at 467 (plaintiff must "describe with reasonable particularity all of its trade secrets, including those involving 'business methods, know-how, machines,

---

[4] Attached as Exhibit A is a true and correct copy of excerpts from Plaintiffs' June 1, 2015 objections and responses to interrogatories.

manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information, ... [and] supplier and vendor lists' as alleged in [its complaint]").[5]

Plaintiffs' purported trade secret disclosure next makes broad, conclusory statements that fail to provide anything but categories and general subject matter. For example, Plaintiffs list 18 "components" of the Ultra Ships Plan, such as "a proprietary analysis of the development of the cruise industry;" "a proprietary model of the financial operations of a business venture based on two Ultra Ships;" "a proprietary prototype ship to fit the Ultra Ship profile;" and "a financial model of the operations and the equity and royalty returns of the business venture." (Ex. A, at pp. 6-10.) But Plaintiffs **never specifically identify or provide** the underlying "analyses," "models" or "prototypes" they are referring to, or provide any detail as to what information included in those "analyses" is allegedly a trade secret. (*See generally id.*) Listing "broad and generic categories of information," without more, still "provide[s] insufficient notice as to the actual trade secrets misappropriated." *Am. Registry, LLC*, 2013 WL 6332971, at *3 (categories such as "financial data," "lists," "research," and "information and records" relating to a product are insufficiently specific to identify a trade secret); *cf., e.g.*, *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (list of alleged trade secrets including "[d]etailed manufacturing drawings of the [product]," "[r]esearch and test data provided to [defendant]," and "manufacturing process information," "wholly fail[ed] to provide the particulars or specificity required by law").

Plaintiffs also contend that the "Ultra Ships Plan" is a trade secret because it was based on Mr. Veitch's "insights" that were developed during his career in the cruise industry. (Ex. A, at pp. 10-14.) But these alleged "insights" are again broad generalizations, such as: "The introduction of a new Ultra Ship had the ability to generate tremendous publicity and consumer excitement;" "A new Ultra Ship would command consumer attention as a stand-alone attraction;" and "Mr. Veitch [] recognized that the ability to design, build and finance a new Ultra Ship paved the way to breaking the formidable barriers to entering the cruise market." (*Id.*) These "insights" are simply restatements of publicly available information, and thus cannot be trade secrets. (*E.g. id.*, at p. 10 (Mr. Veitch's "insights" included that already-existent Ultra

---

[5] Florida federal courts consider opinions interpreting similar UTSA to be "persuasive authority." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, No. 07-cv-1323, 2012 WL 3932863, at *5 n.9 (M.D. Fla. Aug. 20, 2012).

Ships had historically charged "significant premiums in ticket prices," generated "high returns," and had "efficient scale … with respect to operating costs"); *see Pilkerton v. Carnival Crop.*, No. 06-cv-22609, 2007 WL 1239576, at *2 (S.D. Fla. Apr. 27, 2007) (information that is "public knowledge" "cannot be considered a trade secret"). Even if that were not the case, however, Plaintiffs' "vague" descriptions do not sufficiently identify specific information or data that comprise Mr. Veitch's allegedly protectable, trade secret "insights." *See e.g. Levenger Co.,* 516 F. Supp. 2d at 1287 (disclosure is inadequate where the "trade secret[] appear to be ... [an individual's] knowledge about the best type of plastic to be used in making the disks," but plaintiff never provided "more specificity or clarification" regarding his alleged know-how).

To satisfy their burden, Plaintiffs must, at a minimum, (a) provide all "analyses" (and specify the data therein) that they contend form the "components" of their trade secret; (b) specifically highlight each piece of information in their Ultra Ships Plan they contend is proprietary, confidential, and an alleged trade secret; and (c) identify each non-public "insight" Mr. Veitch disclosed that Plaintiffs allege is trade secret. Until Plaintiffs do so, they have not met their burden of "identify[ing] the specific characteristics of each trade secret" they contend Defendants allegedly misappropriated. *Knights Armament Co.*, 254 F.R.D. at 467.

### III.     Defendants are Entitled to a Protective Order.

Under Florida law, until Plaintiffs meet the threshold requirement of identifying their trade secrets with particularity, Defendants need not produce any discovery. *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1325-26 (S.D. Fla. 2001); *cf. AAR Mfg., Inc. v. Matrix Composites, Inc.*, 98 So. 3d 186, 188 (Fla. Dist. Ct. App. 2012) (citing *Del Monte* for the proposition that trade secret identification must be made "before proceeding with discovery."); *Revello Med. Mgmt., Inc. v. Med-Data Infotech USA, Inc.*, 50 So. 3d 678, 679 (Fla. 2nd DCA 2010) (same). "[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives." *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).

Here, all nine of Plaintiffs' claims stem from allegations that Defendants improperly misappropriated information from Plaintiffs and used that information to create its own cruise ship venture that is derivative of, and contains stolen components from, Plaintiffs' purported confidential "trade secrets." (E.g. D.E. 27, Am. Compl. ¶ 218 (count I seeking to recover for Defendants' allegedly improper "use [of] Plaintiffs' Confidential Information without consent");

4

id. ¶ 223, 234, 239, 260, 265, 284, 298, 304 (alleging for Counts II – IX that Defendants obtained Plaintiffs' confidential information and then breached the parties' alleged "partnership" agreement, proceeding to individually develop a cruise business while improperly using Plaintiffs information).)  And, Plaintiffs demand expansive information regarding the specific traits of Defendants' prior, current and future business plans and cruise ship design.  (E.g. Ex. B, at Request 10 (seeking "[a]ll documents relating to … proposals by or for [any of Defendants] to enter the cruise market in any capacity at any time"); *id.* Request 36 (seeking "[a]ll documents relating to the design of the ships planned for Virgin Cruises").)[6]

Defendants' offered to produce certain discovery if Plaintiffs could identify specific requests that would not require the disclosure of information that could be used by Plaintiffs to tailor their misappropriation claim, but Plaintiffs have not—because they cannot—adequately "differentiate[d] between" its requests, given that their misappropriation claim is inextricably woven with the remainder of their counts. *See, e.g., Switch Commc'ns Grp. v. Ballard*, No. 11-cv-00285, 2012 WL 2342929, at *1 (D. Nev. June 19, 2012) (requiring that a plaintiff differentiate between those requests seeking information related to a misappropriation claim and those related to other counts for a plaintiff to be entitled to any discovery prior to identifying its trade secret).  The Court should not allow Plaintiffs access to information that would allow Plaintiffs to "simply claim whatever [they] find" in Defendants' discovery as their own trade secrets. *DeRubeis*, 244 F.R.D. at 681.

Plaintiffs must therefore provide their particularized trade secret statement before seeking additional discovery outside of those documents and communications previously shared with Plaintiffs, which Defendants have offered to provide as an accommodation.

## CONCLUSION

Defendants respectfully request that the Court grant their motions and enter the proposed Order attached as Exhibit C.

## REQUEST FOR HEARING

Defendants believe that the Court and the parties would benefit from an opportunity to present their arguments and answer any questions the Court may have on this vitally important issue.  Defendants estimate that a half hour would be sufficient for such a hearing.

---

[6]  Attached as Exhibit B is a true and correct copy of excerpts from Plaintiffs' May 1, 2015 requests for production.

5

**CERTIFICATE OF PRE-FILING CONFERENCE**

I, Janet T. Munn, Esq., hereby certify that prior to filing the foregoing motions and request for a hearing: (1) on April 24, 2015, I sent proposed revisions to the parties' joint scheduling order requesting that Plaintiffs "identify with reasonable particularity the trade secret(s) it claims that Defendant(s) misappropriated" by May 14, 2015, but Plaintiffs' objected to the inclusion of this provision; (2) on May 8, 2015, I sent proposed revisions to the parties' joint scheduling order that included authority supporting the position that Defendants are not required to provide discovery until Plaintiffs identify their trade secret with particularity, but Plaintiffs' objected to the inclusion of this provision; (3) during an in-person meeting on June 2, 2015, myself and other counsel for certain Defendants, including Claude Stern, Esq. and Dale Cendali, Esq., reiterated Defendants' position on the issues discussed in this motion to Jeffrey W. Gutchess, Esq., counsel for Plaintiffs; (4) on June 5, 2015, Mr. Stern sent Mr. Gutchess a letter reiterating Defendants' position on the issues discussed in this motion, and providing additional authority in support of their position; and (5) on June 10, 2015, counsel for the Defendants, including Mr. Stern, Ms. Pennypacker, Mr. Bond and I, conferred with Mr. Gutchess and Mr. Tropin, counsel for Plaintiffs via telephone, and discussed the issues raised in this motion. Plaintiffs do not consent to a hearing on these issues. All of this was done in a good faith effort to resolve this motion by agreement, but the parties could not agree.

                                                    s/Janet T. Munn
                                                    Janet T. Munn

Dated: June 10, 2015                  Respectfully submitted,

                                            s/ Janet T. Munn
                                            Janet T. Munn (FBN 501298)
                                            jmunn@rascoklock.com
                                            **RASCO KLOCK PEREZ & NIETO PL**
                                            2555 Ponce de Leon Blvd., Suite 600
                                            Coral Gables, FL 33134
                                            Telephone: 305.476.7101
                                            Facsimile: 305.476.7102

                                            *Counsel for Defendants*
                                            *Virgin Management USA, Inc., Virgin Group*
                                            *Investments Ltd., Virgin Group Holdings Limited,*

*Virgin Enterprises Limited,*
*Virgin Cruises Intermediate Limited and*
*Virgin Cruises Limited*

s/ Claude M. Stern
Claude M. Stern*
Email: claudestern@quinnemanuel.com
Evette D. Pennypacker*
Email: evettepennypacker@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**
555 Twin Dolphin Drive, Suite 500
Redwood Shores, CA 94065
Telephone: 650.801.5000
Telecopy: 650.801.5100


Marc Greenwald*
Email: marcgreenwald@quinnemanuel.com
**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.700
Telecopy: 212.849.7100

*\*Admitted Pro Hac Vice*

*Counsel for Defendants Virgin Management USA, Inc., Virgin Group Investments Ltd., Virgin Group Holdings Limited, and Virgin Enterprises Limited*

s/ Dale Cendali, P.C.
Dale Cendali, P.C.*
Email: dale.cendali@kirkland.com
Johanna Schmitt*
Email: johanna.schmitt@kirkland.com
Daniel Bond*
Email: dbond@kirkland.com
Phillip Hill*
Email: phil.hill@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
United States
Telephone: 212.446.4800

7

Fax: 212.446.4900

*Admitted Pro Hac Vice*

*Counsel for Defendants Virgin Cruises Intermediate Limited and Virgin Cruises Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

>Jeffrey W. Gutchess, Esq.
>Fla. Bar No.: 702641
>jgutchess@bilzin.com
>Daniel Tropin, Esq.
>Fla. Bar No.: 100424
>dtropin@bilzin.com
>Brandon Rose, Esq.
>Fla. Bar No.: 99984
>brose@bilzin.com
>eservice@bilzin.com
>margote@bilzin.com
>**Bilzin Sumberg Baena**
>**Price & Axelrod LLP**
>1450 Brickell Avenue, 23rd Floor
>Telephone: 305.350.7312
>Facsimile: 305.351.2132
>
>*Counsel for Plaintiffs*

By: s/ Janet T. Munn
    Janet T. Munn