UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20989-CIV-MOORE/MCALILEY

**COLIN VEITCH**,
**VSM DEVELOPMENT, INC.**,

    Plaintiffs,

v.

**VIRGIN MANAGEMENT USA, INC.**,
**VIRGIN GROUP INVESTMENTS LTD.**,
**VIRGIN GROUP HOLDINGS LIMITED**,
**VIRGIN ENTERPRISES LIMITED**,
**VIRGIN CRUISES INTERMEDIATE LIMITED**,
**VIRGIN CRUISES LIMITED**

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO VIRGIN CRUISE
DEFENDANTS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

I.    **INTRODUCTION**

Virgin Cruises [1] claims that the very companies organized by the Virgin Group Defendants[2] to implement Mr. Veitch's protected Ultra Ship cruise line business plan ("Ultra Ships Plan"), which was misappropriated during the term of a Non-Disclosure Agreement ("NDA"), cannot be held liable because the Virgin Group Defendants waited to incorporate Virgin Cruises until after the NDA's term had expired.  This is incorrect because Plaintiffs alleged that Virgin Cruises wrongfully received and used the trade secret information at issue, and that Virgin Cruises' receipt and use of this information _**at any time**_ results in liability. Thus, Virgin Cruises' receipt and use of this trade secret information subjects it to liability, regardless of the date of incorporation.

II.   **BACKGROUND**

Plaintiff, Colin Veitch, the former CEO of Norwegian Cruise Lines, developed a novel plan that would enable a new entrant, such as Virgin, to break through the barriers to entry by financing and constructing two new "Ultra Ships." (Amended Complaint ("AC") at ¶ 29.) Ultra Ships feature an array of attractions, command premium pricing and onboard revenue that would reward pioneering, non-traditional, investors with extremely profitable returns. (*Id*. at 2.) Mr. Veitch first enlisted the support of a prominent investment bank, Allen & Co.  (*Id*. at ¶¶ 42-46.) When Allen & Co. supported the plan and expressed confidence in their ability to raise the equity required for the venture, Mr. Veitch then set out to enlist a brand partner.  (*Id*. at ¶ 47.)

The Virgin Group – a leading consumer brand in the travel and leisure industries – had previously sought to enter the cruise market for more than a decade without any success.  (*Id*. at ¶ 47.)  The Virgin Group Defendants agreed to evaluate Mr. Veitch's Ultra Ships Plan pursuant to the terms of a NDA that prohibited Virgin from using Mr. Veitch's information for three years.  (*Id*. at ¶¶ 70-78.)  The Virgin Group Defendants expressed strong interest in the plan, and Mr. Veitch and the Virgin Group Defendants proceeded to negotiate and agree upon the financial structure of the deal between them, defined in the Amended Complaint as the "Veitch-Virgin

---

[1] Plaintiffs file this memorandum of law in opposition to the Motion to Dismiss ("Motion to Dismiss") [D.E. 53] filed by Virgin Cruises Intermediate Limited (VCIL) and Virgin Cruises Limited (VCL) (collectively, "Virgin Cruises").

[2] The "Virgin Group Defendants" include Virgin Management USA, Inc. (VMUSA), Virgin Group Investments Ltd. (VGIL), Virgin Group Holdings Limited (VGHL), and Virgin Enterprises Limited (VEL). "Virgin" is used to refer to all named Defendants.

Agreement." (*Id* at ¶¶ 86-106.) With a binding agreement on the financial terms, Mr. Veitch spent over a year, and committed extraordinary resources, developing the Vietch-Virgin Cruise business to a level where it was ready to present to the investors. (*Id*. at ¶¶ 121-171.)

In doing so, Mr. Veitch contributed key ideas and plans and his own labor, leveraged his relationships throughout the industry to have work done on spec ("on speculation", e.g., without payment at the time), and even contributed his own money. (*Id*. at ¶ 241.) Mr. Veitch also spent hundreds of thousands of dollars of his own money and devoted an extraordinary amount of time and expertise. (*Id*. at ¶ 129). Such efforts included: (1) assembling a team of industry experts to design the unique Ultra Ships; (2) negotiating and executing a letter of intent with a German shipyard to build the ships; (3) negotiating and obtaining a letter of intent from a German bank to provide debt financing for the ships; (4) presenting to and securing the support of two German government ministries responsible for providing export credit guarantees to the banks providing the debt financing; (5) completing the management presentation and other materials necessary for a road show to enlist the equity investors; (6) utilizing an extraordinary quantity of trade secret information, including proprietary analyses, models, and presentation, without which it would have been impossible to design or build the Veitch-Virgin cruise business. (*Id*.) Many of these documents referred to the entity Veitch was building up to attracting investors as "Virgin Cruises." (*Id*. at ¶¶ 121, 166, 191); *see* [DE 26-5].

As Mr. Veitch developed the plan, he took steps to ensure its confidentiality and trade secret status. Mr. Veitch "required everyone [involved] to sign confidentiality and non-disclosure agreements. (AC at ¶ 130.) For example, he executed confidentiality and non-disclosure agreements with the shipbuilder, Meyer Werft, on July 27, 2011, as well as other entities including: (1) SMC, on August 1, 2011; (2) Randall Marine Services, LLC, on August 1, 2011; (3) jMMY Group, on August 1, 2011; and (4) Markus Aarnio and Foreship, on August 2, 2011." (*Id*.) "As the project advanced, Mr. Veitch had at least four additional parties sign non-disclosure agreements in February and March 2012 as the design work and creation of detailed specifications continued." (*Id*. at ¶ 130 & n. 18.)

In addition, Mr. Veitch labelled numerous documents as confidential: the "Ultra Ships: A Green Field Opportunity in the Cruise Industry," attached as Ex. A to the Amended Complaint, is labeled as "Strictly Confidential." The Letter of Intent signed with Meyer Werft to build the ships contains clauses requiring it remain confidential. [D.E. 26-4]. Each page of the

2

management or investor presentations, entitled, "Virgin Cruises - Cruising for the 21st Century - Opportunity to Make 'Ultra Returns" is stamped "confidential." [D.E. 26-1, 26-6, & 26-7].

In derogation of the Veitch-Virgin Agreement, after Mr. Veitch secured the commitments from the shipyard to build the ship and the bank to finance the ship (and upon recognizing the potential for Virgin Cruises to be one of Virgin's biggest businesses), Virgin breached the Veitch-Virgin Agreement by seeking to radically renegotiate the financial terms to which it was bound. (AC at 4-5.)

After Virgin rejected its contractual obligations, Veitch took a critical step to enforce his rights under the NDA and protect his confidential and trade secret information. Paragraph 4 of the NDA requires Virgin, upon Mr. Veitch's demand, to "return . . . or destroy all copies of Confidential Information which are in [Virgin's] possession." [D.E. 26-2]. On June 8, 2012, Mr. Veitch's counsel exercised his right under Paragraph 4 of the NDA and demanded that Virgin return or destroy all confidential and trade secret information. [D.E. 52-1] (demanding that Virgin "either return to Colin Veitch or destroy the originals and all copies of all Confidential Information provided to ***Virgin or its representatives*** by or on behalf of our client or otherwise developed from such Confidential Information and cease using such Confidential Information") (emphasis added). Virgin responded that they would comply. (AC at ¶ 200.) Thus, as of June 8, 2012, it was unlawful and improper for ***any*** Virgin entity to possess or use ***any*** of Veitch's confidential and trade secret information.

Yet, Virgin breached its obligations under the Veitch-Virgin Agreement and the NDA by continuing to use all of Mr. Veitch's confidential and trade secret information to forge ahead with building the Veitch-Virgin cruise business, but without Mr. Veitch. To replace Mr. Veitch, Virgin almost immediately hired Tom McAlpin, the current CEO of Virgin Cruises, to take over leadership of the Veitch-Virgin business just weeks after squeezing Mr. Veitch out. (AC at 6.) Under a shroud of secrecy, Virgin continued utilizing Veitch's confidential and trade secret information to obtain the debt and equity financing, and to otherwise continue proceeding with the Veitch-Virgin business plan. (*Id*.) They even used Allen & Company, the same bank introduced into the project by Mr. Veitch in late 2010, before he ever approached Virgin, to raise the equity for Virgin Cruises. (*Id*.)

After improperly failing to destroy or return Mr. Veitch's confidential and trade secret information, but rather continuing to use it for years in order to bring the Veitch-Virgin business

3

plan to fruition, on December 4, 2014, Virgin generated tremendous publicity when it formally announced the "formation of Virgin Cruises, its new cruise line business," based on the financing and construction of two new Ultra Ships, just as Mr. Veitch had planned. (*Id*.)

Virgin Cruises' very existence is based upon misuse of Mr. Veitch's confidential and trade secret information that Virgin unlawfully failed to return or destroy. Virgin Cruises was established by the Virgin Group Defendants for the sole purpose of operating the Veitch-Virgin cruise business, and shares with the other Defendants overlapping officers and directors, including Mr. Nirmal Saverimuttu (Principal at Virgin Group and Chief Commercial Officer of Virgin Cruises) and Mr. Thayer Thompson (General Counsel to VMUSA and Alternate Director for Virgin Cruises). (*Id.* at ¶ 163; 236); (Virgin Cruises corporate registrations attached hereto as Ex. A & B.)

Plaintiffs Amended Complaint [D.E. 26] alleges nine causes of action: Breach of the Non-Disclosure Agreement (Count I); Permanent Injunction (Count II); Misappropriation (Count III); Unjust Enrichment (Count IV); Unfair Competition (Count V); Breach of Contract (Count VI); Breach of Partnership Agreement (Count VII); Breach of Joint Venture Agreement (Count VIII); and Breach of Duty of Good Faith (Count IX). Each of these counts is asserted against the Virgin Group Defendants. In addition, Counts III and IV, for Misappropriation of Trade Secrets and Unjust Enrichment are also asserted against the Virgin Cruise Defendants.

### III.   ARGUMENT

#### A. PLAINTIFFS' ADEQUATELY ALLEGE MISAPPROPRIATION

The Virgin Cruise Defendants make a number of arguments as to why the claims against Virgin Cruises should be dismissed. Each is without merit.

**1. Plaintiffs Properly Protected Their Trade Secrets**

First, Virgin Cruises argues that Mr. Veitch's confidential and trade secret information is not protected because Plaintiffs did not take sufficient measures to protect the secrecy of Mr. Veitch's novel business idea. (Mot. at 8.) Apparently, Virgin Cruises ignores the fact that Plaintiffs' allegations must be taken as true. Instead, Virgin improperly attempts to rebut the allegations in the Amended Complaint through extraneous factual arguments, which this Court is not permitted to consider.

Mr. Veitch alleges that he "required everyone [involved] to sign confidentiality and non-disclosure agreements. As such, he executed confidentiality and non-disclosure agreements with

Meyer Werft on July 27, 2011, SMC on August 1, 2011, Randall Marine Services LLC on August 1, 2011, jMMY Group on August 1, 2011, and Markus Aarnio and Foreship on August 2, 2011," and that, "[a]s the project advanced, Mr. Veitch had at least four additional parties sign non-disclosure agreements in February and March 2012 as the design work and creation of detailed specifications continued."  (AC at ¶ 130 & n. 18.)

In addition to all of these non-disclosure agreements, Mr. Veitch (and Virgin) labelled documents as confidential.  For example, the "Ultra Ships: A Green Field Opportunity in the Cruise Industry," attached as Ex. A to the Amended Complaint, is labeled as "Strictly Confidential."  The Letter of Intent signed with Meyer Werft to build the ships contains clauses requiring it remain confidential.  [D.E. 26-4].  Each page of the management or investor presentations, entitled, "Virgin Cruises - Cruising for the 21st Century - Opportunity to Make 'Ultra Returns" is stamped "confidential."  [D.E. 26-1, 26-6, & 26-7].

Further, Paragraph 4 of the NDA required Virgin, upon Mr. Veitch's request, to "return . . . or destroy all copies of Confidential Information which are in Receiving Party's possession." [D.E. 26-2].  Plaintiffs exercised this right and Virgin was obligated – and agreed to – destroy or return Plaintiffs' Confidential Information.  [D.E. 52-1]; (AC at ¶¶ 199-200).  Therefore, Virgin could not simply stow away the confidential information until the NDA expired: doing so was clearly a breach.  Because Mr. Veitch demanded and Virgin agreed to destroy the confidential information during the term of the NDA, there was no occasion for the NDA to expire and allow Virgin to use or disclose the confidential information after three years.

All these allegations demonstrate that Mr. Veitch took reasonable steps to protect the secrecy of his novel business idea from the date he approached Virgin until the present.

Moreover, Virgin Cruises' argument is an inappropriate argument to raise at the motion to dismiss stage: "[W]hether a party has taken reasonable steps under the circumstances to preserve its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1285 (S.D. Fla. 2010) (denying motion to dismiss on misappropriation claim); s*ee also, e.g., Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1293 (S.D. Fla. 2001) (holding that whether Plaintiff had taken reasonable efforts to protect its trade secret raises a "question [] of fact cannot be resolved on motions to dismiss"); *see also ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 986 (Fed. Cir. 2014) (applying Florida law).

5

As stated by *Ashland Mgmt. v. Janien*, which was cited by Virgin Cruises, "a trade secret must first of all be secret: whether it is generally a question of fact." 82 A.D.2d 395, 407 (N.Y. 1993). Thus, even according to Virgin Cruises' cases, it is inappropriate to resolve the secrecy issue on motion to dismiss. Unsurprisingly, none of the cases Defendants cites on this issue are motion to dismiss cases. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1183–84 (11th Cir. 2011); *Expansion Plus Inc. v. Brown-Forman Corp.*, 132 F.3d 1083, 1086 (5th Cir. 1998); *ECT Int'l., Inc. v. Zwerlein*, 228 Wis. 2d 343, 355 (Ct. App. 1999); *All West Pet Supply Co. v. Hill's Pet Prods.*, 840 F. Supp. 1433, 1439 (D. Kan. 1993), *amended by* 842 F. Supp. 1376 (D. Kan. 1994); *Gusler v. Fischer*, 580 F. Supp. 2d 309, 320 (S.D.N.Y. 2008).

### 2. All the Virgin Defendants Are Liable for Improperly Using Veitch's Confidential and Trade Secret Information Before and After the Expiration of the NDA

Virgin Cruises argues that after the NDA's three-year term expired on March 11, 2014, the Virgin Group Defendants were not restricted from using Mr. Veitch's confidential and trade secrets. This is not correct. After Virgin received the letter from Mr. Veitch's counsel on June 8, 2012 demanding that it return or destroy all confidential and trade secret information, no Virgin entity was permitted from that point forward (including after the expiration of the NDA) to possess or use ***any*** of Mr. Veitch's confidential or trade secret information. Thus, at the time the Virgin Cruise entities were incorporated in 2014, no Virgin entity could have lawfully been in possession of, much less have been using, Mr. Veitch's trade secrets. It follows that if any Virgin Cruise entity possessed or used any of this information after being incorporated in 2014, it was because this information was unlawfully received from another Virgin entity after the June 8, 2012, "return and destroy" date. As such, Virgin Cruises' possession of this confidential or trade secret information, which is clearly alleged in the Amended Complaint, is a breach of the NDA and an act of misappropriation by Virgin Cruises. (AC at ¶¶ 227-236.)

#### a. Plaintiffs Adequately Allege Misappropriation Before and After the Three-Year Term of the NDA

Plaintiffs have alleged that the Virgin Group Defendants breached the NDA during its three-year term, which expired on March 11, 2014. Indeed, the Amended Complaint clearly alleges that after Virgin breached the Veitch-Virgin Agreement, it continued building the Veitch-Virgin cruse business based on all of Mr. Veitch's confidential and trade secret information that it was obligated to return and destroy. (AC at ¶¶ 227-236.) Plaintiffs further allege that Virgin

replaced Mr. Veitch with "Tom McAlpin in the summer of 2012 to take over leadership of the project just weeks after squeezing Mr. Veitch out of their erstwhile 'partnership,'" using Veitch's confidential and trade secrets that had been used to build the business up to that point. (*Id*. at 6.)

Plaintiffs also allege that on February 28, 2014 – within the NDA's three-year term – Sky News reported that Virgin had held detailed talks with banks about raising an estimated $1bn of debt to finance the acquisition of the company's first vessels" and "$700m of equity by selling stakes in Virgin Cruises to outside investors" and that by March 2014 "most of the money is now committed." (AC at ¶¶ 202-03.) This activity precisely tracks the business plan execution that Mr. Veitch was pursuing before Virgin breached the Veitch-Virgin Agreement and pushed him out.

Of course, given that the debt and equity financing were obtained in February or March of 2014, Virgin clearly was continuing to execute and roll out the Veitch-Virgin business plan using all the confidential and trade secret information that went into creating the plan in the first place. Plaintiffs further allege that it was "under a shroud of secrecy" that "Virgin proceeded to obtain the debt and equity financing to proceed with the very business plan it stole from Mr. Veitch. They even used Allen & Company to raise the equity for Virgin Cruises, the very bank introduced into the project by Mr. Veitch in late 2010 even before he approached Virgin." (AC at 6.)

Finally, the formation of the Virgin Cruise entities in 2014 signaled the culmination of the Veitch-Virgin business plan by finally bringing the plan to market through the Virgin Cruise entities, the operating companies for the Veitch-Virgin business plan. The Amended Complaint clearly alleges that the entire formation, infrastructure, organization, operations, revenue model, profitability metrics, etc. are based entirely on Mr. Veitch's confidential and trade secret information, which all Virgin entities had an obligation to return and destroy as of June 8, 2012. (AC at ¶¶ 227-236); [52-1]. Instead, this confidential and trade secret information, which Mr. Veitch built into a nascent enterprise before being pushed out, has now been brought to market through the Virgin Cruise entities, which unlawfully received and possess this confidential and trade secret information. Therefore, Plaintiffs have adequately stated a claim for breach of the NDA and misappropriation.

7

### 3. <u>Virgin Cruises Is Liable For Misappropriation</u>

Florida Stat. § 688.002 defines "misappropriation" in two ways. First, it is defined as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" which includes "a breach of a duty to maintain secrecy . . . ."

Second, it is defined as the "use of a trade secret . . . by a person who . . . knew or had reason to know that . . . the trade secret was:

    a. Derived from or through a person who had utilized improper means to acquire it;

    b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or,

    c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or . . . .

*Id.*

Virgin Cruises is liable for misappropriation under each of these alternative definitions. First, Virgin Cruises, upon their incorporation, acquired the trade secrets from the Virgin Group Defendants, and Virgin Cruises knew that the Virgin Group Defendants had used those trade secrets to develop the Virgin Cruise business in breach of the NDA and in breach of the fiduciary duties owed as partners and members of a joint venture.[3] (AC at ¶ 201.) The Virgin Cruise Defendants knew of the breach because they were established by, and share with, the Virgin Group Defendants, overlapping officers and directors in Mr. Saverimuttu (Principal at Virgin Group and Chief Commercial Officer of Virgin Cruises) and Mr. Thompson (General Counsel to VMUSA and Alternate Director for Virgin Cruises). (*Id.* at ¶¶ 163; 236); (Virgin Cruises corporate registrations attached hereto as Ex. A & B.)[4] The fact that the Virgin Group

---

[3] Notably, it was not just the NDA that restricted the use of the information. In addition to the NDA, the fiduciary duties that arose from the parties' partnership and joint venture also restricted the Virgin Group Defendants from using Mr. Veitch's novel business ideas. *S.E.C. v. Peters*, 735 F. Supp. 1505, 1521 (1st Cir. 1990) (holding that "under the expectations of the [ ] partners, a partner's conversion for personal use of confidential information belonging to another partner would constitute a breach of fiduciary duty"); *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893, 2007 WL 1434990, at *6 (E.D.N.Y. May 14, 2007) (stating that joint-venturers owe one another they finest loyalty and such relationship "gives rise to a fiduciary duty on the [defendant fiduciary's] part to preserve and protect plaintiff's interest").

[4] Courts in this jurisdiction regularly take judicial notice of such documents. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (holding publicly filed, legally required documents could be

Defendants failed to return and destroy the confidential and trade secret information, and continued to use the information in secrecy for years, only waiting for the term of the NDA to expire to announce the launch of Virgin Cruises, relieves neither the Virgin Group Defendants nor the Virgin Cruise Defendants of liability for breach of the NDA and misappropriation.

This case is similar to *Sensormatic Elec. Corp. v. Tag Co. US, LLC*, 632 F. Supp. 2d 1147 (S.D. Fla. 2008). In that case, Mr. Krom worked at plaintiff Sensormatic until April 2000, but later founded a new company in 2003. *Sensormatic*, 632 F. Supp. 2d. at 1183. Mr. Krom thereafter obtained from a Sensormatic licensor certain Sensormatic label specifications, and sought to have defendant TAG, his next employer replicate those specifications. *Id.* TAG was held liable for misappropriation because Mr. Krom should have known that the third party licensor had confidentiality agreements with Sensormatic. *Id*. at 1184-86. This case is analogous because TAG, like Virgin Cruises, was liable for misappropriation, even though it was the intermediary, Mr. Krom and the other Virgin Defendants, respectively, who were actually subject to a confidentiality agreement. Like TAG, Virgin Cruises "knew or should have known" that the relevant information was confidential, and thus, is liable for misappropriation under FUTSA. *Id*. at 1186.

Further, the Amended Complaint alleges that the Virgin Defendants improperly maintained, used and shared amongst themselves, Veitch's confidential and trade secret information after they no longer had any right to do so, thus breaching of the NDA, improperly misappropriating this material, and breaching the fiduciary duties owed as partners and joint venturers. (AC at ¶¶ 227-236); s*ee also, NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, No. 12-23930, 2014 WL 714812, at *3 (S.D. Fla. Feb. 22, 2014) (denying motion to dismiss where plaintiff alleged that defendant obtained the trade secret from a party who they knew or should have known was subject to a confidentiality agreement); *Int'l Hair & Beauty Sys., LLC v. Simply Organic, Inc.*, No. 8:11-CV-1883-30AEP, 2011 WL 5359264, at *7 (M.D. Fla. Sept. 26, 2011) *report and recommendation adopted as modified*, No. 8:11-CV-1883-T-30AEP, 2011 WL

---

judicially noticed under Fed.R.Evid. 201 at the motion to dismiss stage); *Villafana v. Feeding S. Florida, Inc.*, 13-60760-CIV, 2013 WL 2646729, at *1 (S.D. Fla. 2013) (taking judicial notice of registration of nonprofit entity); *Allstate Ins. Co. v. Estate of Robert M. Levesque*, 8:08-CV-2253-T33EAJ, 2010 WL 2978037, at *1 (M.D. Fla. 2010) (taking judicial notice of documents filed with the Division of Corporations and collecting cases); *Sziranyi v. Allan R. Dunn, M.D., P.A.*, 07 CV 21762 (SJ), 2009 WL 6613675, at *2 (S.D. Fla. 2009) *aff'd,* 383 Fed. Appx. 884 (11th Cir. 2010) (taking judicial notice of registration from sunbiz.org).

5360098 (M.D. Fla. Nov. 3, 2011) (granting preliminary junction upon finding that party "knew or had reason to know" that trade secret was acquired through improper means and/or was derived from a or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use").

Finally, Virgin Cruises also argues that its "affiliation" with VMUSA does not "alone impose any duty or obligation upon VCIL not to use Mr. Veitch's trade secrets." (Mot. at 9 (citing *Gusler v. Fischer*, 580 F. Supp. 23 309, 320 (S.D.N.Y. 2008).) As already, this is incorrect because no Virgin entity, including Virgin Cruises, had the right to possess or use any of Veitch's confidential or trade secret information after June 8, 2012, the "return and destroy" date. *Gusler* is inapplicable because the plaintiff there shared his drawings with the defendant (1) without an NDA; (2) without any request they be kept confidential; and (3) without any contractual right to demand that the confidential information be returned and destroyed. Therefore, Plaintiffs have sufficiently alleged misappropriation by Virgin Cruises.

### 4. The Factual Record Must Be Developed Before The Court Can Decide Which State's Laws Apply

Virgin Cruises argues that New York law should not apply because the defendant's principal location should be given the most weight and the Amended Complaint does not allege that the VC defendants took any action in New York. (Mot. at 7.) However, it is entirely proper at the pleading stage "to allege the applicability of multiple bodies of law in the alternative" and, as this Court recently held when presented with this same argument, "[w]ithout the benefit of discovery or briefing on the issue by the Parties, it is premature to rule on the controlling law of the case." *Smith v. Carnival Corp.,* 584 F. Supp. 2d 1343, 1349 (S.D. Fla. 2008); s*ee also Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1275 (S.D. Fla. 2004) (concluding that, due to undeveloped record at the motion to dismiss stage, a choice of law analysis "would certainly be premature").

Nevertheless, the Amended Complaint includes numerous allegations concerning actions taken in New York by Defendants. The key individuals for the Virgin Group Defendants – Messrs. Saverimuttu, Thompson and Marino, as well as Defendant VMUSA – were based in New York and acted in New York. (AC at ¶¶ 3, 63, 73, 87, 92, 123.) Several key meetings discussed in the Amended Complaint likewise occurred in New York. (*Id.* at ¶¶ 73-78, 80-81, 87, 92-97, 123-127, 146.) Moreover, the parties chose New York law to govern the NDA. [26-

2.] Virgin Cruises has utilized the misappropriated information in New York, as further demonstrated by public filings in Bermuda show that Messrs. Saverimuttu and Thompson – who are both based in New York – are directors, shareholders, and officers of the Virgin Cruise entities. (Ex. A & B.)

### B. PLAINTIFFS' PROPERLY PLEAD A CLAIM FOR UNJUST ENRICHMENT

#### 1. The Unjust Enrichment Count Is Not Preempted

Virgin argues that the Florida Uniform Trade Secrets Act ("FUTSA") preempts Plaintiffs unjust enrichment claim. However, FUTSA specifically provides that its preemptive power does *not* affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(b).

Courts have consistently rejected the application of preemption where unjust enrichment claims are not founded solely upon misappropriation of trade secrets. *See Chetu, Inc. v. Salihu*, No. 09-60588-CIV, 2009 WL 1916609, at *1-2 (S.D. Fla. July 3, 2009) (denying motion to dismiss unjust enrichment claim because plaintiff "makes both contractual and quasi-contractual claims for [defendant's] misappropriation of all confidential material, which might prove to be a broader field of material than what FUTSA defines as 'trade secrets'"); *Prof'l Energy Mgmt., Inc. v. Necaise*, 684 S.E. 2d 374, 378 (Ga. Ct. App. 2009) (reversing dismissal and finding no preemption where party alleged unjust enrichment "not merely by the value of proprietary information they allegedly misappropriated, but also by receiving, for example, reimbursements for expenses . . . used to solicit [plaintiff's] customers"); *Melville Capital, LLC v. Tenn. Commerce Bank*, No. 3:11-cv-00888, 2011 WL 6888476, at *10-11 (M.D. Tenn. Dec. 29, 2011) (finding no preemption of unjust enrichment claim where party's claim was distinguishable from the trade secrets claim); *Lucini Italia Co. v. Grappolini*, 231 F. Supp. 2d 764, 772 (N.D. Ill. 2002) (finding that to the extent that unjust enrichment claim was based on the usurpation of a business opportunity, the claim is not preempted by the Illinois Trade Secrets Act).

Here, Plaintiffs plead additional facts in addition to misappropriation that support their unjust enrichment claim. For example, Plaintiffs plead that because "Mr. Veitch contributed the key ideas and plans, his own labor, leveraged his relationships throughout the industry to have work done on spec, and even contributed his own money, Virgin now stands to benefit …" (AC at ¶ 241); *see also* (AC at ¶ 175) ("many thousands of man hours were spent by Mr. Veitch and his team, SMC's team, and Meyer's team"); (AC at ¶ 186) (Virgin reneged on the deal after

"having the benefit of a year's worth of Mr. Veitch's work, and after seeing the value of that work"). Mr. Veitch also spent significant sums of his own money developing the Veitch-Virgin business, which Defendants have unjustly benefitted from. (AC at ¶ 129) ("Mr. Veitch spent hundreds of thousands of dollars of his own money and, of course, devoted substantial time and expertise"). The Virgin defendants benefitted from, and were unjustly enriched by, all of these contributions. Therefore, given that Plaintiffs' allegations supporting its unjust enrichment claim are distinguishable from their claim for misappropriation, dismissal on the basis of preemption is improper.

Further, under New York law, there is no preemption. New York law does not follow the Uniform Trade Secrets Act and does not preempt claims for unjust enrichment which are based on factual allegations of trade secret misappropriation. *See Innovative BioDefense, Inc. v. VSP Tech., Inc.*, No. 12-Civ.-3710, 2013 WL 3389008, at *3 (S.D.N.Y. July 3, 2013) (noting that New York has no comparable statutory provisions to California's UTSA, and therefore does not preempt a claim for unjust enrichment which is based entirely on the same factual allegations that form the basis of a trade secrets claim).

Thus, New York law allows both misappropriation and unjust enrichment claims to be alleged based on the same underlying facts. *See JTH Tax, Inc. v. Gouneh*, 721 F.Supp.2d 132, 138-140 (N.D.N.Y. 2010) (finding that party properly stated claim for misappropriation of trade secrets and unjust enrichment); *SRM Beauty Corp. v. Sook Yin Loh*, 30 Misc. 3d 1222(A), 2011 WL 521124, at *4-5 (Sup. Ct. Queens Cnty. Feb. 14, 2011) (denying motion to dismiss as to misappropriation of trade secrets and unjust enrichment claims); *Isra Fruit Ltd. v. Agrexco Agric. Exp. Co. Ltd.*, 631 F. Supp. 984, 986-990 (S.D.N.Y. 1986) (denying motion to dismiss claims for breach of joint venture, unjust enrichment and misappropriation of trade secrets).

### 2. **Plaintiffs Have Sufficiently Pled A Direct Benefit Upon Virgin Cruises**

Virgin Cruises argues that while Mr. Veitch's efforts may have benefited the other Virgin Group Defendants, they did not benefit Virgin Cruises directly because Virgin Cruises did not exist until after Mr. Veitch stopped working with Virgin. (Mot. at 14.) This is incorrect. As explained above, the Amended Complaint alleges that Virgin Cruises possesses and is improperly using Mr. Veitch's confidential and trade secret information, which it unlawfully received either from VMUSA or one of the other Virgin Defendants.

12

Moreover, this Court has repeatedly held that the mere fact that a benefit passes through an intermediary does not defeat a claim for unjust enrichment. As this Court stated: "It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant." *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014); s*ee also Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct contact, or privity, is not the equivalent of conferring a direct benefit."); *Romano v. Motorola, Inc*., No. 07–60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct contact with direct benefit."); *Ulbrich v. GMAC Mortg., LLC*, No. 11–62424, 2012 WL 3516499, at *2 (S.D. Fla. Aug. 15, 2012) (holding that direct contact not needed to find a direct benefit). Therefore, even assuming, *arguendo*, that Virgin Cruises unlawfully received the confidential and trade secret information at issue through another Virgin intermediary, Virgin Cruises is still a direct beneficiary for unjust enrichment purposes. Indeed, not only is Virgin Cruises a "direct" beneficiary of Mr. Veitch's ideas and work, it was the "intended beneficiary."

In sum, the Amended Complaint's allegations pertaining to unjust enrichment clearly link the direct enrichment of Virgin Cruises to Mr. Veitch's efforts. While Virgin Cruises was not incorporated until 2014, the Amended Complaint sufficiently alleges that Mr. Veitch's activities and confidential and trade secret information unjustly enriched Virgin Cruises. (*See* AC at ¶¶ 121, 154, 166, 191.)

### C. PLAINTIFFS PROPERLY SEEK INJUNCTIVE RELIEF

Virgin argues Mr. Veitch is not entitled to injunctive relief because the term of the NDA expired on March 11, 2014. (Mot. at 11.) Fla. Stat. § 688.003, authorizes the court to enter an order enjoining misappropriation even after a contractual restriction has expired. Recognizing that trade secrets may cease to exist despite ongoing misappropriation, the statue provides that "an injunction shall be terminated when the trade secret has ceased to exist, *but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation*." *Id*. (emphasis added). This is an express recognition of the Court's equitable powers to extend injunctions under appropriate circumstances, such as exist here. *See, e.g., MicroStrategy Inc. v. Bus. Objects, S.A.,*

13

331 F. Supp. 2d 396, 431 (E.D. Va. 2004) ("The court is well-aware that the documents described may no longer constitute trade secrets . . . . However, the statute also permits the court to extend the injunction for a reasonable period despite this fact.")

In fact, many courts equitably extend the duration restrictive covenants as an equitable remedy for breach. *See, e.g., Capelouto v. Orkin Exterminating Co. of Fl., Inc.* 183 So. 2d 532, 534 (Fla. 1966). There, when an employee had been in competition with his former employer for two years, the trial court entered an injunction against the employee that began to run from the time of the final decree. *Id.* at 533. On appeal before the Florida Supreme Court, the employee argued it was an abuse of discretion to enjoin him from competing for a period of two years starting from the time of the entry of the final decree, rather than two years from the date he terminated his employment. *Id.* at 534. The Court, found, however, that the "employer was entitled to a period of two years during which the [employee] would not be in competition with it" and since the employee had been in competition with the employer since his resignation, extending the duration of the agreement was "the only way to give the [employer] its two competition-free years" even though the final time period extended beyond that contemplated by the agreement. *Id. See also United Subcontractors, Inc. v. Godwin,* No. 11-81329-CIV, 2012 WL 1593173, at *10 (S.D. Fla. Feb. 3, 2012) ("In Florida, tolling of the non-competition agreement . . . so that the former employer receives the competition-free period that was intended in the bargain is allowed."); *Overholt Crop Ins. Serv. Co. v. Travis,* 941 F.2d 1361, 1371 (8th Cir. 1991) (extending the term of the covenant, in part, based on the defendant's breach of the covenant not to compete); *Premier Indus. Corp. v. Tex. Indus. Fastener Co.,* 450 F.2d 444, 448 (5th Cir. 1971) (holding grant of injunction beyond time provided for in employment agreement was proper in light of the fact the employee worked for competitor during portion of the agreed-upon term).

Similarly here, Mr. Veitch is entitled to a period of three years during which Virgin would not use the confidential information "received or acquired from, or on behalf of, the disclosing party, in the course of evaluating the potential transaction." Virgin simply ignores the fact that Mr. Veitch is still entitled to the benefit of the bargain; namely, three years during which Virgin cannot disclose confidential or trade secret information. Here, extending the duration of the NDA to account for the breach is the only way Mr. Veitch will receive the competition-free period that was originally bargained for in the NDA.

14

### D. VIRGIN CRUISES LIMITED SHOULD NOT BE DISMISSED BASED ON A SCRIVENER'S ERRORS

Virgin Cruises argues that VCL should be dismissed because – despite being named as a Defendant in the caption and in paragraph 8 of the Amended Complaint – the first paragraph of the Amended Complaint omits VCL from the list of parties being sued, and it also refers to "VGL" instead of VCL in Counts III and IV. (Mot. at 5.) After Plaintiffs pointed out that these were obviously scrivener's errors, VCL and VCIL indicated via correspondence that they would consent to Defendants filing a Second Amended Complaint fixing those scrivener's errors, should this Court deem that to be necessary. It would be inequitable to permit Virgin Cruises to avoid litigation on the merits, and if necessary an amendment to correct the scrivener's error is appropriate.

### E. A CONSTRUCTIVE TRUST IS AN APPROPRIATE REMEDY

Although Virgin Cruises' motion is to dismiss specific counts in the Amended Complaint, in passing they also frown on the remedy of a constructive trust. (Mot. at 6.) While this is undoubtedly premature, constructive trusts are an appropriate remedy for trade secret misappropriation. For example, in *Arral Industries, Inc. v. Touch Entertainment, Inc.,* No. 99-0916, 2000 WL 141269, at *4 (S.D. Fla. Jan. 18, 2000) the complaint alleged that the Touch Defendants misappropriated "the design for, and prototype of, the Fun Station kiosk/terminal" and claimed that such misappropriation rendered the Touch Defendants "involuntary trustees" holding that property in trust for Plaintiff. On a motion to dismiss (which the Court denied), the Court ruled that complaint sufficiently alleged facts that would entitle Plaintiff to the equitable remedy of a constructive trust.

If Plaintiffs prevail on their claims against Defendants, one of the remedies to which Plaintiffs will be entitled is a constructive trust over the property at issue, which for these purposes would be shares in the Virgin Cruises Defendants. *See e.g., Doyle v. Maruszczak*, 834 So. 2d 307, 308-309 (Fla. 5th DCA 2003) (imposing a constructive trust over the property that Defendant had purchased for himself while being entrusted to make purchases on behalf of plaintiff); *Sweeteners Plus, Inc. v. Global Supply Source, Inc*., No. 6:11-CV-1799, 2013 WL 4495002, at *6 (M.D. Fla. Aug. 19, 2013) (noting that "a constructive trust is a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment," the Court held that Plaintiff was "is entitled to a constructive trust on the … property"). Thus,

15

while Virgin Cruises suggestion concerning the propriety of a constructive trust remedy is premature, this is a case where a constructive trust would be an appropriate remedy.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court deny Virgin Cruises' Motion to Dismiss.

Dated: June 18, 2015.

Respectfully Submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Plaintiffs*
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593


By:  */s/ Jeffrey Gutchess*
　　　Jeffrey W. Gutchess (FBN 702641)
　　　jgutchess@bilzin.com
　　　David Massey (FBN 86129)
　　　dmassey@bilzin.com
　　　Daniel Tropin (FBN 100424)
　　　dtropin@bilzin.com
　　　Brandon Rose (FBN 99984)
　　　brose@bilzin.com
　　　margote@bilzin.com
　　　eservice@bilzin.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of June, 2015, a true and correct copy of the above and foregoing was sent via email to counsel for Defendants below:

| | |
|---|---|
| Janet T. Munn<br>**Rasco Klock Perez & Nieto, PL**<br>2555 Ponce de Leon, Suite 600<br>Coral Gables, FL 33134<br>Telephone: (305) 476-7101<br>Telecopy: (305) 476-7102<br>jmunn@rascoklock.com | Claude M. Stern<br>Evette D. Pennypacker<br>**Quinn Emanuel Urquhart & Sullivan LLP**<br>555 Twin Dolphin Drive, Suite 500<br>Redwood Shores, CA 94065<br>Telephone: (650) 801-5000<br>Telecopy: (650) 801-5100<br>claudestern@quinnemanuel.com<br>evettepennypacker@quinnemanuel.com |
| Marc Greenwald<br>**Quinn Emanuel Urquhart & Sullivan LLP**<br>50 Madison Avenue, 22d Floor<br>New York, New York 10010<br>Telephone: 212.849.7000<br>Telecopy: 212.849.7100<br>marcgreenwald@quinnemannuel.com | Dale Cendali<br>Phillip Hill<br>Johanna Schmitt<br>**Kirkland & Ellis, LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: 212-446-4846<br>Telecopy: 212-446-4900<br>johanna.schmitt@kirkland.com<br>phil.hill@kirkland.com<br>dale.cendali@kirkland.com |
| Daniel Bond<br>**Kirkland & Ellis, LLP**<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: 312-862-7026<br>Telecopy: 312-862-2200<br>daniel.bond@kirkland.com | |

                                        */s/ Jeffrey Gutchess*
                                          Jeffrey Gutchess

MIAMI 4642299.12 81649/46204