**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1520989-CIV-MOORE/McALILEY**

**COLIN VEITCH,**
**VSM DEVELOPMENT, INC.,**

      Plaintiffs,

v.

**VIRGIN MANAGEMENT USA, INC.,**
**VIRGIN GROUP INVESTMENTS LTD.,**
**VIRGIN GROUP HOLDINGS LIMITED,**
**VIRGIN ENTERPRISES LIMITED,**
**VIRGIN CRUISES INTERMEDIATE LIMITED,**
**VIRGIN CRUISES LIMITED,**

      Defendants.

_____/

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT FILED BY DEFENDANTS**
**<u>VIRGIN CRUISES INTERMEDIATE LIMITED & VIRGIN CRUISES LIMITED</u>**

As Defendants Virgin Cruises Intermediate Limited ("VCIL") and Virgin Cruises Limited ("VCL") (collectively "VC") showed in their opening brief, Plaintiffs Colin Veitch and VSM Development, Inc. (collectively, "Veitch") have not included any factual allegations in their Amended Complaint that, taken as true, could state a claim against VC for misappropriation or unjust enrichment. Nor could they because VC only came into existence years after: (1) Veitch's alleged dealings with VMUSA ended; and (2) the NDA governing disclosure of the alleged trade secrets to VMUSA was executed and expired by its own terms. In an effort to escape dismissal, Veitch employs two tactics. First, recognizing the shortcomings of his allegations as to VC, he unilaterally seeks to amend his Amended Complaint via his opposition. Second, recognizing his inability to assert any actionable conduct by VC, he attempts to attribute the conduct of the other defendants ("VM") to VC, either by improperly lumping them together or by conclusory and unpled derivative liability theories. Neither tactic suffices.[1]

## I.      VEITCH CANNOT AMEND HIS COMPLAINT VIA HIS OPPOSITION BRIEF

On May 4, 2015, Veitch amended his complaint as of right. Thus, Veitch cannot amend again without Defendants' consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). He has neither. To salvage his claims, Veitch seeks to amend via his opposition in three improper ways.

*First*, Veitch relies heavily on an unpled allegation that VMUSA (not VC) "stowed away" copies of Veitch's "Confidential Information" and thus violated the NDA. (*See* Opp. at 3–6.) The Amended Complaint contains no such allegation. Veitch cites only Paragraphs 199 and 200— describing a 2012 letter his counsel sent "emphasizing that Virgin may not, for three years after the NDA . . . use Confidential Information," and VMUSA's agreement to comply with the NDA— and the letter itself. (*Compare* Opp. at 5, *with* Am. Compl. ¶¶ 199–200.) Neither these allegations, nor any others, allege a failure to comply with a return-or-destroy request, so they must be disregarded. *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) ("Plaintiff may not amend a complaint via a response to a motion to dismiss").

*Second*, Veitch's opposition alleges, for the first time, that VC "knew" that VM "used [his] trade secrets to develop the Virgin Cruise business" in breach of the NDA and their purported partnership or joint venture agreement with VM. (Opp. at 8–9 (citing Am. Compl. ¶ 201.) This

---

[1] In the opening brief, VC argued that Veitch cannot obtain relief against them in Counts I–II and V–IX. (*See* Mot. at 6.) Veitch does not dispute this point, and thereby concedes it. *See McGee v. S-Bay Dev., LLC*, 2012 WL 760797, at *5 (M.D. Fla. Mar. 8, 2012).

paragraph contains no allegation of any specific knowledge attributable to VC, and Veitch cannot amend his Amended Complaint to allege such knowledge via his opposition brief.

*Finally*, the opening brief showed that VCL should be dismissed from the case because Veitch failed to specify any causes of action against it.  (Mot. at 5–6.)  Veitch concedes his failure, and attributes it to "scrivener's errors," but asks the Court add VCL to Counts III and IV.  (Opp. at 15.)  Veitch cannot circumvent Rule 15 for "scrivener's errors."[2]

## II.     VEITCH'S MISAPPROPRIATION CLAIM MUST BE DISMISSED

As argued in the opening brief, Veitch fails to adequately plead a cause of action for trade secret misappropriation regardless of whether Florida or New York law applies.  (*See* Mot. at 6– 11.)  In response, Veitch argues that VC are liable under "each of the[] alternative definitions" of "misappropriation" provided in the FUTSA.  (Opp. at 8.)  Veitch's opposition does not assert, and thereby waives, any misappropriation theory under New York law.  Regardless, the FUTSA provides two categories of misappropriation: (1) where the defendant directly and unlawfully acquired knowledge of a purported trade secret ("Direct Misappropriation"), Fla. Stat. §§ 688.002(2)(a), (b)(1), (b)(2)(b); and (2) where the defendant knowingly derived knowledge of a purported trade secret from a third party who unlawfully obtained it ("Derivative Misappropriation"), *id.* §§ 688.002(2)(b)(2)(a), (c).  The opposition does not argue that any facts remotely suggest liability for Direct Misappropriation, (*see* Opp. at 8–9), so Veitch's claim only survives dismissal if Veitch alleges sufficient facts supporting Derivative Misappropriation.

### A.     Taken as True, the Allegations Fail to Show Derivative Misappropriation.

Recognizing that he had no protectable trade secrets by the time VC existed, the opposition seeks salvation by arguing Derivative Misappropriation, which exists only where a defendant (1) discloses or uses a purported trade secret (2) without express or implied consent, and (3) at the time of disclosure or use, knew or had reason to know that its knowledge of the trade secret was (a) derived from a person who had used "improper means" to acquire it, or (b) derived from a person who owed a duty to the plaintiff to maintain its secrecy or limit its use.  Fla. Stat. §§ 688.002(2)(b)(2)(a), (c).  Veitch cannot allege such a claim.

---

[2] Veitch falsely represents that Defendants consent to this attempt.  (*Id.*)  Not so.  Defendants stated that they "will ***not oppose a motion*** by Plaintiffs ***for leave to file a second amended complaint*** fixing . . . specific typographical errors . . . ."  (Emphasis added.)  Pursuant to Local Rule 7.7(b), VC will submit copies of this correspondence at the Court's request.

### 1.      Veitch fails to allege disclosure or use by VC.

Veitch fails to allege any actionable use or disclosure by VC in three ways.  *First*, Veitch flatly asserts "that the entire formation, infrastructure, organization, operations, revenue model, profitability metrics, etc. are based entirely on Mr. Veitch's" purported trade secrets.  (Opp. at 7 (citing Am. Compl. ¶¶ 227–36; Dkt. No. 52-1).)  These supporting citations allege ***nothing*** about ***any*** specific aspect of VC's business.  They contain conclusory assertions that the "Ultra Ships Plan and other Confidential Information" were protectable, and the Defendants "used" them in some unspecified way.  In essence, Veitch fails to argue any use or disclosure by VC other than their mere existence, and improperly lumps the Defendants together. (Opp. at 6–10.) These vague, conclusory, and lumped allegations fail to identify actionable use or disclosure by VC.  *See Lane v. Capital Acquis. & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006).

*Second*, the opposition alleges a December 4, 2014 announcement of a "new cruise line business, based on the financing and construction of two new Ultra Ships, just as Mr. Veitch had planned."  (Opp. at 3–4.)  The allegations cite reports that VC would build "two large ships," "construct two new world class ships," and use "two new 4,200-passenger cruise ships late this decade."  (Am. Compl. ¶¶ 203, 205, 207.)  These allegations fail to show use or disclosure of any purported trade secret.  Exhibit A hereto is the July 7, 2010 *Travel Weekly* article incorporated by reference into the Amended Complaint (*id.* ¶¶ 22–23 & n.5).[3]  It shows that many months before Veitch met VMUSA in December 2010, it was well known that Norwegian Cruise Lines was building "at least two" large ships with 4,200-passenger capacity, one of which already set sail.  The "Ultra Ships Plan" itself says that "three Ultra Ships ha[d] been built" before Veitch penned the plan.  (Am. Compl., Ex. A at 5.)  Veitch cannot claim as a trade secret the idea of building "Ultra Ships" like those in operation (and widely celebrated) before he created the plan, even if VC did in fact intend to build such ships.  *Third*, the opposition cites pre-formation reports that "Virgin executives and their advisers" talked with banks about raising "$1bn of debt" to finance

---

[3] The Court may consider this article without converting to a motion for summary judgment.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (approving consideration of defendants' contract without conversion); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, at *5-6 (S.D. Fla. Mar. 27, 2013) (document referenced in complaint contradicting allegations "is central to Plaintiff's" claim and may be considered); *cf. Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) (allowing consideration of articles submitted by defendant in deciding motion on the pleadings, relying on "identical" rules for 12(b)(6) motions).

ship acquisition and "$700m of equity by selling stakes in Virgin Cruises . . . ." (Am. Compl. 26 ¶¶ 202, 204.)[4]  But the Amended Complaint's Exhibits show that the idea of funding a large, new business with outside equity and debt finance pre-dates any dealings between Veitch and VMUSA. (*See, e.g.*, Am. Compl., Ex. 1 at 6 ("[T]raditional finance structure" at "the three European shipyard[s] . . . that build virtually all of today's modern cruise ships" permits 80% debt financing); *id.*, Ex. 7 at 11 ("Virgin is experienced and highly successful in attracting equity partners").) Veitch cannot prevent VM or VC from using concepts that were public knowledge.

### 2.    Veitch fails to allege any intermediary acted improperly.

In addition, Derivative Misappropriation only applies if the defendant knew or had reason to know that its knowledge of the trade secret was derived from a person who (a) used "improper means to acquire it," or (b) owed a duty to the plaintiff to maintain its secrecy or limit its use.  Fla. Stat. §§ 688.002(2)(b)(2)(a), (c).  The opposition argues that VC are liable for VM's conduct because (1) they "knew" that *VM* used Mr. Veitch's "trade secrets to develop the Virgin Cruise business in breach of the NDA and in breach of the fiduciary duties owed as partners and members of a joint venture" and (2) they, along with VM, "improperly maintained, used and shared amongst themselves, Veitch's confidential information after they no longer had any right to do so, thus breaching the NDA" and "the fiduciary duties owed" to Veitch.  (Opp. at 8–9.)  Of course, the Court must disregard the latter assertions because they rely on the unpled and conclusory allegations that a Defendant failed to return or destroy copies of Veitch's materials or that VC had knowledge of the same, and improperly lumps the Defendants together.  Regardless, Veitch cannot prevail because VM did not use improper means, and violated no duty to maintain secrecy or limit use.  Veitch only argues "breaches" relating to completely innocent conduct.

### a.    VM did not unlawfully acquire any trade secrets.

Veitch's unpled allegations that VMUSA failed to destroy copies of his "Confidential Information" are beside the point.  It is undisputed that Veitch willingly gave any purported trade secrets to VMUSA under the NDA, which expired by March 11, 2014.  Even if VMUSA failed to destroy *copies* of documents containing such information upon request, which has not been alleged by Veitch, under the NDA the *information itself* lost all protection when the agreement expired.

---

[4] Even if these allegations related to VC, these dollar amounts appear nowhere in the Amended Complaint or exhibits, failing to support a claim.  (*See id.* ¶¶ 41, 157.)

Veitch cites nothing in the NDA suggesting that a failure to comply with a return-or-destroy obligation somehow extended the period of time during which *information* covered by the NDA would remain protected by that agreement. (*Compare* Opp. at 3, *and id.* at 4–6, 9–10, *with* Am. Compl., Ex. B ¶ 4.)[5] Under the precise terms Veitch bargained for and agreed to, VMUSA cannot be found to have unlawfully acquired information covered by the NDA merely by possessing it after the NDA expired.

Veitch cannot alter this result by relying on any duties arising implicitly from any alleged fiduciary duty. The NDA is the sole instrument governing confidentiality of any purported trade secrets, contains a merger clause, and can only be modified upon written agreement signed by both parties. (Am. Compl., Ex. B ¶ 8.) Thus, this theory of liability must be rejected because Veitch does not argue that any implied duty or understanding superseded the NDA's express terms. *Fierro v. Gallucci*, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008).

> **b.      Veitch does not allege the breach of any agreement or duty.**

Veitch tries to assert derivative liability against VC by claiming VM breached its duties during the term of the NDA. But the only allegations Veitch relies on in his brief for this proposition is: (1) the unpled claim that copies were not destroyed; and (2) they hired Tom McAlpin and secured some financing. (Opp. at 6–7.) These allegations do not suggest any illegal or improper conduct. The NDA may have prohibited VMUSA from using or disclosing "Confidential Information" during its term, but it did not prohibit employing a third party in an effort to enter the cruise industry, and the idea of funding businesses through debt and equity is well known. Veitch fails to bolster these innocent allegations by alluding to a "shroud of secrecy," because this colorful language is legally irrelevant, and entirely "compatible" with the lawful development of a cruise business. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

---

[5] Veitch's reliance on *Sensormatic Electronic Corp. v. Tag Co. US, LLC*, 632 F. Supp. 2d 1147 (S.D. Fla. 2008), is misplaced. *Sensormatic* involved a Defendant-corporation whose founder acquired trade secret product specifications from plaintiff's licensee. There, unlike here, the founder "knew" *at the time he acquired them* that they were *existing* trade secrets that the plaintiff "considered confidential," and "knew" that were provided *to the licensee* pursuant to a confidentiality agreement *that was in force* at the time. *See id.* at 1184, 1186. Here, by the time VC could have possibly acquired any purported trade secrets, the alleged intermediary (some VM entity) was no longer subject to the NDA. Thus, VC could not have had similar knowledge.

### 3. The allegations fail to show lack of express or implied consent.

Derivative Misappropriation also requires that *VC* lacked "express or implied consent." *Id.* § 688.002(2)(b). VC's opening brief showed the NDA's three-year confidentiality limit constitutes consent upon expiration. *See ECT Int'l., Inc. v. Zwerlein*, 228 Wis. 2d 343, 355 (Ct. App. 1999) (holding employment agreement limiting confidentiality to one year "manifested [an] intent that after one year there was no need to maintain the secrecy of any sensitive and confidential information") (Mot. at 8–9, 11.) Veitch does not dispute this argument, and offers nothing to suggest his unpled allegation of "stowaway" copies would alter this result.

### B. Taken as True, the Allegations Fail to Show Direct Misappropriation.

The opposition does not refute the opening brief's argument that Veitch cannot sustain a Direct Misappropriation claim because the NDA had already expired by the time VC was formed. (*See* Mot. at 8–11.) Even so, Direct Misappropriation occurs only where a defendant (1) acquires a trade secret while knowing or having reason to know that it was acquired by "improper means"; or (2) discloses or uses the trade secret without express or implied consent, and at the time of use or disclosure, knew or had reason to know that its knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain secrecy or limit use. Fla. Stat. § 688.002(2)(a), (b)(1), (b)(2)(b). Here, the same arguments apply as in Section II.A, *supra*, about VC's alleged disclosure and use, and consent. Further, Direct Misappropriation focuses on VC's actions, and forecloses reliance on third-party pre-formation conduct.

### 1. Veitch had no trade secrets when VC formed.

The opening brief showed that once VC existed, and thus could possibly acquire any purported trade secret, the NDA had already expired. (Mot. at 8–9.) In response, Veitch argues that it is inappropriate to evaluate his efforts to maintain secrecy on a motion to dismiss, but courts routinely do just that. *See, e.g.*, *Laing v. BP Exploration & Prod. Inc.*, 2014 WL 272846, at \*3 (S.D. Fla. Jan. 23, 2014) (granting motion to dismiss and rejecting claim "that the adequacy of an effort to maintain secrecy 'cannot be resolved on a motion to dismiss'"); *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1077 (S.D. Fla. 2003) (same). This is an even easier case that those cited by Veitch, which required an evaluation of whether the alleged facts show a sufficient degree of effort to maintain secrecy or still-effective NDAs or where

no NDA existed at all.  (Opp. at 5.)[6]  Here, the NDA is the sole mechanism governing the confidentiality of the purported trade secrets and it had a clear expiration date after which "secrets" were no longer protected.  Thus, any alleged trade secrets dissolved before VC could possibly acquire them.  (Mot. at 8–9.)  Veitch attempts to evade dismissal in two ways.

*First*, Veitch invokes his decision to stamp certain documents "confidential" and cites NDAs between himself and various third parties from 2011–12.  (Opp. at 4–5.)  This is a red herring, because both of these actions occurred pursuant to his NDA with VMUSA.  Once that agreement expired, these purported steps to protect his information expired with it.

*Second*, Veitch obfuscates these deficiencies by again conflating VC with VMUSA, calling them both "Virgin."  This is yet another example of the repeated and improper efforts to treat all Defendants as the same.  Veitch uses improper "lumping" to impliedly argue that "Virgin," defined to include VC, was a party to the NDA.  (*Id.*)  This position is legally and factually impossible.  VC did not exist when the NDA came into (and went out of) existence.

### 2.  The allegations fail to show improper acquisition.

Veitch's unpled and conclusory allegations and naked suggestions of guilt-by-association are insufficient to show VC acquired a purported trade secret by improper means or subject to any duty.  Veitch asserts that "***the Virgin Defendants*** improperly maintained, used and shared amongst themselves" his purported trade secrets, "breaching the NDA" and "the fiduciary duties owed as partners and joint venturers."  (Opp. at 9 (emphasis added).)  That is not enough.  As an initial matter, the opposition fails to dispute that VC were not parties to the NDA.  (Mot. at 10–11.)  Moreover, by lumping all the Defendants together, Veitch apparently argues that VC owes a fiduciary duty as "partners and joint ventures."  (Opp. at 8–9 & n.3.)  Veitch does not allege that he ever had any such relationship with VC.  Regardless, there are no allegations that VC received any copies of materials, when they received them, what was received, or how those materials have

---

[6] *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1285 (S.D. Fla. 2010) (employee of company that signed still-effective NDA claimed he was not a party to that agreement, plaintiff alleged strict limitation of access to trade secrets, and gave "repeated instruction" to maintain confidentiality); *Del Monte Fresh Produce Co. v. Dole Food Co*., 136 F. Supp. 2d 1271, 1293 (S.D. Fla. 2001) (no NDA and allegations that a third party acquired trade secrets and provided them to Defendant); *ABB Turbo Sys. AG v. Turbousa, Inc*., 774 F.3d 979, 986 (Fed. Cir. 2014) (plaintiff alleged defendant acquired trade secrets from plaintiff's employee subject to an ongoing NDA).

been disclosed or used in VC's business.   Veitch's "unadorned" assertions are entirely "compatible" with lawful behavior and cannot support a claim.  *Iqbal*, 556 U.S. at 678.

<p style="text-align:center">*       *       *</p>

In sum, Direct or Derivative Misappropriation fails because Veitch does not adequately allege VC's use or disclosure or lack of consent, or any entity's unlawful acquisition.  Because the allegations show proper conduct, VC necessarily lacked the requisite state of mind.

## III.    VEITCH'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Veitch's unjust enrichment claim against VC fails for two reasons.  First, it is preempted and foreclosed under Florida law.  Second, even if it were not, he fails to allege any direct benefits to VC that could theoretically support an unjust enrichment claim.

### A.     Florida Law Preempts and Forecloses Veitch's Unjust Enrichment Claim.

VC's opening brief argued that Florida, not New York, law governed the claims in this action.  (Mot. at 7.)  In response, Veitch argues that it is "entirely proper" to allege alternative bodies of law.  (*See* Opp. at 10, 12.)  But New York law can be pled in the alternative only if Veitch has pled facts that suggest the Court's choice-of-law analysis could result in applying that law.  *See, e.g.*, *GV Sales Grp., Inc. v. Apparel Ltd., LLC*, 2012 WL 3866460, at *1 (S.D. Fla. Sept. 5, 2012) (dismissing complaint for want of facts sufficient to decide applicable law); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1316 (S.D. Fla. 2009) (applying Florida law absent facts that "substantiate application of any particular foreign law").  Veitch seeks discovery before the Court decides this issue (Opp. at 10), but his pleadings cite no facts relevant to VC that make New York law potentially applicable, and thus fail to "unlock the doors of discovery."  *Iqbal*, 556 U.S. at 678–79; *see also David*, 629 F. Supp. 2d at 1314.

As to unjust enrichment, the opposition cites only alleged benefits conferred upon ***VM*** in New York before VC existed.  (Opp. at 11–12 (citing Am. Compl. ¶¶ 129, 175, 186, 241).)  Veitch musters an allegation against VC only by lumping the "Virgin defendants" together (Opp. at 12), but a complaint cannot "lump . . . defendants together" because it provides "no factual basis to distinguish their conduct."   *Lane*, 2006 WL 4590705, at *5.   Even considering the misappropriation allegations, the opposition cites only allegations of New York-based conduct of ***VM*** that took place ***before VC existed***.  (*See* Opp. at 10–11 (citing Am. Compl. ¶¶ 3, 63, 73–78, 80–81, 87, 92–97, 123–27, 146).)  The opposition cites the NDA's choice-of-law provision (*id.* at 10), but VC were not, and could not have been, parties to the NDA because it was executed ***more***

<p style="text-align:center">8</p>

*than three years* before they existed, and it expired months before then. (*See* Am. Compl., Ex. B; Mot., Ex. A at 5–6, 10–11.) Veitch cites two directors or officers of VC located in New York at the time of formation. (*Id.* at 10.) Their mere existence in New York is entirely "compatible" with lawful behavior, and hardly alleges any unlawful, New York-based behavior attributable to VC on or after formation. *Iqbal*, 566 U.S. at 678–80.

Thus, Veitch fails to plead facts suggesting New York law is available for this motion. As such, Florida law applies by default. *David*, 629 F. Supp. 2d at 1316. Florida law is also proper because Plaintiffs are in Florida. (Mot. at 7.) Thus, Veitch's unjust enrichment claim is preempted by the FUTSA to the extent it is premised on the same facts as the trade secret claim. Fla. Stat. § 688.008. (*Compare* Am. Compl. ¶ 236, *with id.* ¶ 249.) Further, Florida Statute § 501.972 forecloses unjust enrichment to the extent it is premised on VC's use of "key ideas and plans." (Opp. at 11.) Other than a trade secret claim, any claim concerning "use" of any "idea," "concept," "or other creation" not protected under federal copyright fails "unless ***the parties to the claim*** . . . have executed a writing sufficient to indicate that a contract has been made ***between them*** governing such use." Fla. Stat. § 501.972 (emphasis added). Veitch has not (and cannot) allege any such writing with VC.

### B.     Veitch Fails to Allege Any Direct Benefits Conferred on VC.

Even if unjust enrichment were not preempted or foreclosed by statute, the claim cannot survive dismissal because Veitch fails to allege that VC received a direct benefit. Veitch relies on benefits conferred on ***VM*** from December 2010 to June 2012. (Opp. at 11–13 (citing Am. Compl. ¶¶ 129, 175, 186, 241).) This fails because no well-pleaded facts specify any labors, efforts, or expenditures that made their way to VC years later. *See, e.g.*, *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So. 2d 883, 884 (Fla. 2d DCA 1982) (holding that plaintiff's repairs may have "enhanced the value of the equipment," but "it [was] speculative to say that any benefit" went to defendant that had not profited from use). Veitch's reliance on cases involving "a benefit that passes through an intermediary" is misplaced. (Opp. at 13.) VC are distinct entities formed years after Veitch allegedly conferred any of the claimed benefits, and thus could not have received a benefit via a mere "pass-through conduit." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal of claim premised on alleging defendant was "merely a pass-through conduit" of fee paid to codefendant); *see also Lancer Offshore, Inc.*

9

*v. Citco Grp. Ltd.*, 2011 WL 1232986 (S.D. Fla., Mar. 30, 2011) (dismissing for failure to allege parent received direct benefit conferred on subsidiary).[7]

## IV.  INJUNCTIVE RELIEF MUST BE DISMISSED

The opposition does not dispute the opening brief argument that injunctive relief for trade secret misappropriation cannot be **granted** in the first instance after the trade secret ceases to exist or the controlling restrictive covenant expires.  (*See* Mot. at 11–13 (citing, *e.g.*, *TNS Media Research, LLC v. TRA Global, Inc.*, 2014 WL 1370279, at *1–2 (S.D.N.Y. Apr. 7, 2014) (because NDA expired, "injunctive relief [was] moot"); *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1219 (S.D. Fla. 2005) (denying injunction where non-compete expired); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 694 (Bankr. M.D. Fla. 2010) (denying permanent injunction because plaintiff did not seek preliminary relief and covenant expired before trial); *Stanley Tulchin Assocs., Inc. v. Vignola*, 186 A.D.2d 183, 185–86 (N.Y. Ct. App. 2d Dep't 1992) ("[W]e cannot grant injunctive relief" because NDA "has expired"); *RenewData Corp. v. Strickler*, 2006 WL 504998, at *6 (Tex. Ct. App. Mar. 3, 2006) (denying injunction because non-compete expired and plaintiff "did not diligently pursue an equitable extension of the covenant" before it expired).)  Nor does it dispute that Mr. Veitch's purported trade secrets no longer exist, either by the NDA's expiration or Veitch's repeated public disclosure of the same.  (*Id.*)

Instead, Veitch relies on irrelevant cases stating that covenants can be "extended" or "tolled."  (Opp. at 13–14.)  But VC were not parties to the NDA, so Veitch cannot seek "extension" of an expired covenant to which VC were not a party.  (Mot. at 11–13.)  Even assuming he could, Veitch cites no contrary authority allowing resurrection of a long-expired covenant.  (*See* Mot. at 11–13.)  In any event, the NDA expressly states that "Confidential Information shall not include information . . . [that] is or becomes publicly available through no fault of the Receiving Party," so Veitch cannot enjoin the use of information he filed publicly. (Am. Compl., Ex. B ¶ 1.)  Similarly, Veitch cannot rely on injunctions being "continued" under FUTSA.  (Opp. at 13.)  That provision first **requires** the Court to terminate an injunction "when the trade secret has ceased to exist," but allows an **already-issued** injunction to be "**continued** for an **additional** reasonable period . . . ."  Fla. Stat. § 688.003 (emphasis added).  The statute presupposes that an injunction

---

[7] Even if New York law did apply, the result is the same.  *Prescient Acquisition Grp., Inc. v. MJ Pub. Trust*, 2006 WL 2136293, at *7 (S.D.N.Y. July 31, 2006) (granting motion to dismiss due to "[t]he absence of an alleged conferral of direct benefit" on defendant).

has *already* been deemed appropriate in the first place, and granted, but provides no authority to grant an injunction *after* the trade secrets cease to exist.

<div align="center">

### <u>CONCLUSION</u>

</div>

For these reasons, VC respectfully request that the Court dismiss all claims against them with prejudice pursuant to Rule 12(b)(6).

Dated: June 29, 2015                  Respectfully submitted,

<div style="margin-left: 40%;">

s/ Janet T. Munn
Janet T. Munn, Fla. Bar No. 501281
Email:  jmunn@rascoklock.com
**RASCO KLOCK PEREZ & NIETO, P.L.**
2555 Ponce de Leon, Suite 600
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.468.6281

*Counsel for Defendants Virgin Cruises Intermediate Limited and Virgin Cruises Limited*

s/ Dale M. Cendali
Dale M. Cendali*
Email:  dale.cendali@kirkland.com
Johanna Schmitt*
Email:  johanna.schmitt@kirkland.com
Phillip A. L. Hill*
Email:  phil.hill@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460

P. Daniel Bond*
Email:  daniel.bond@kirkland.com
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*\* Admitted Pro Hac Vice*

*Counsel for Virgin Cruises Intermediate Limited and Virgin Cruises Limited*

</div>

<div align="center">11</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically. Notices of Electronic Filing:

Jeffrey W. Gutchess, Esq.
Fla. Bar No.: 702641
jgutchess@bilzin.com
Daniel Tropin, Esq.
Fla. Bar No.: 100424
dtropin@bilzin.com
Brandon Rose, Esq.
Fla. Bar No.: 99984
brose@bilzin.com
**Bilzin Sumberg Baena
Price & Axelrod LLP**
1450 Brickell Avenue, 23rd Floor
Telephone: 305.350.7312
Facsimile: 305.351.2132

*Counsel for Plaintiffs*

Claude M. Stern*
Email: claudestern@quinnemanuel.com
Evette D. Pennypacker*
Email: evettepennypacker@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
555 Twin Dolphin Drive, Suite 500
Redwood Shores, CA 94065
Telephone: 650.801.5000
Telecopy: 650.801.5100

Marc Greenwald*
Email: marcgreenwald@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.700
Telecopy: 212.849.7100

*Admitted Pro Hac Vice*

*Counsel for Defendants Virgin Management USA, Inc., Virgin Group Investments Ltd., Virgin Group Holdings Limited, and Virgin Enterprises Limited*

By:   s/ Janet T. Munn
      Janet T. Munn