UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20989-CIV-MOORE/McALILEY

COLIN VEITCH,
VSM DEVELOPMENT, INC.,

    Plaintiffs,

v.

VIRGIN MANAGEMENT USA, INC.,
VIRGIN GROUP INVESTMENTS LTD.,
VIRGIN GROUP HOLDINGS LIMITED,
VIRGIN ENTERPRISES LIMITED,
VIRGIN CRUISES INTERMEDIATE LIMITED,
AND VIRGIN CRUISES LIMITED.

    Defendants.
_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
FILED BY DEFENDANTS VIRGIN MANAGEMENT USA, INC.,
VIRGIN GROUP INVESTMENTS LTD., VIRGIN GROUP
<u>HOLDINGS LIMITED AND VIRGIN ENTERPRISES LIMITED</u>**

Plaintiffs failed to satisfy the basic pleading requirement that they allege specific misconduct against each Virgin Defendant.  Plaintiffs' opposition now claims they do not have to, contending that *all* actions in the Amended Complaint were purportedly done by "agents" of the 400-entity "Virgin Group."  This newly-minted agency theory suffers from the same defect as the Amended Complaint generally:  Plaintiffs do not identify specific conduct by any Virgin Defendant supporting the agency allegations against them.  Plaintiffs' continued refusal to distinguish the alleged conduct of each Virgin Defendant mandates dismissal of the Amended Complaint in its entirety with prejudice.

Even if Plaintiffs' bald agency theory is accepted, Plaintiffs concede that it cannot save their NDA, "Veitch-Virgin Agreement," partnership, joint venture, or good faith counts against VGHL, VGIL, and VEL.  The unambiguous language of the "agreements" underlying these counts confirm that VMUSA is the only possible party, precluding Plaintiffs from relying on parole evidence to assert otherwise.  Plaintiffs do not respond to this argument in opposition, conceding that dismissal of Counts I, II, and VI-IX as to VGHL, VGIL and VEL is required.

Plaintiffs also agree that all non-disclosure restrictions protecting their allegedly confidential information expired 15 months ago, yet nonetheless pursue an injunction extending those restrictions.  But Plaintiffs' opposition ignores the fact that they voluntarily disclosed their "confidential" information to the public when filing this suit.  There is no legal basis to preclude the Virgin Defendants from utilizing information that is now indisputably public record.

The "Veitch-Virgin Agreement," partnership, joint venture and good faith counts must be dismissed in their entirety because, despite Plaintiffs' efforts to distance themselves from their own statements, the Amended Complaint confirms that no binding agreements were formed.

Finally, defects in Plaintiffs' unjust enrichment and unfair competition claims highlighted in the Virgin Defendants' motion remain unaddressed, requiring dismissal of those counts.

The Amended Complaint should be dismissed with prejudice.[1]

## I. PLAINTIFFS' AGENCY ALLEGATIONS DO NOT EXCUSE THEIR IMPROPER LUMPING OF THE VIRGIN DEFENDANTS.

Plaintiffs' opposition does not identify any alleged misconduct by three of the four Virgin

---

[1] Plaintiffs mistakenly assert that "VMUSA has not moved to dismiss Count I or Count III" of the Amended Complaint, (Opp. at 2, n.1), but the Virgin Defendants unequivocally seek dismissal of the Amended Complaint in its entirety. (*See* D.E. 52 (hereinafter "Mot.") at 2.)

Defendants—Virgin Group Holdings Limited ("VGHL"), Virgin Group Investments Ltd. ("VGIL"), or Virgin Enterprises Limited ("VEL"). [2] Instead, Plaintiffs assert: "[b]ecause VMUSA and [two employees of VMUSA] were acting as agents for VGHL, VGIL and VEL, there is no need … to plead separate facts as to each entity." (D.E. 64 (hereinafter "Opp.") at 2-3.) But instead of identifying specific actions by VGHL, VGIL or VEL that could support agency claims against them,[3] Plaintiffs' agency allegations again lump these defendants—along with 400 other entities—together as the "Virgin Group." (D.E. 26 (hereinafter "A.C.") ¶ 271 (alleging that individuals were acting as "agents for the broader Virgin Group"); *id*. ¶ 88 (alleging that purported agents were "acting not on behalf of [VMUSA], but rather on behalf of the Virgin Group generally"); *see id*. ¶¶ 50-52  (confirming that the "broader" Virgin Group is a not an actual entity but is instead comprised of "about 400 [separate] operations").)

Plaintiffs contend that these allegations are sufficient to impose liability on each individual Virgin Defendant, but if this position is accepted it would open the door for Plaintiffs to cherry-pick, post-hoc, ***any number of the 400 separate entities*** allegedly forming the "Virgin Group" they want to sue, no matter how irrelevant or unrelated to this litigation they are.[4] None of the cases in Plaintiffs' opposition endorse such a fantastical position; to the contrary, those cases relied on by Plaintiffs confirm that they must identify actions taken by each alleged principal supporting an agency relationship before that principal may be bound. (*E.g.* Opp. at 4-5 (*citing In re Suffolk Reg'l Off-Track Betting Corp.*, 462 B.R. 397, 411 (Bankr. E.D.N.Y. 2011) (finding that an agent may act for multiple parties, but only if the plaintiff shows that each alleged principal separately manifested an intent to be bound by that agent's actions); *Spagnola*

---

[2]  VGHL, VGIL, VEL and Virgin Management USA, Inc. ("VMUSA") are collectively referred to as the "Virgin Defendants."

[3]  Plaintiffs identify only three documents even mentioning VGHL or VGIL (and none mentioning VEL), (Opp. at 4-5), all dated ***well after*** the March 2011 NDA execution and May 2011 alleged "conclusion" of the "Veitch-Virgin Agreement."  (A.C. ¶ 163 (January 2012 presentation mentioning VGHL); *id.* ¶ 166 (January 2012 communication mentioning VGIL) *id.* ¶ 169 (letter prepared after January 2012 mentioning VGIL).)  These 2012 documents are irrelevant to the issue of whether an agency relationship existed in 2011 when the alleged agreements were purportedly entered into.

[4]  For example, Plaintiffs contend that Virgin Galactic (spaceflight), Virgin Atlantic (airline), and Virgin Records (music) are part of the "Virgin Group," (A.C. ¶ 170), and under Plaintiffs' theory their agency allegations are sufficient to support suit against those parties.

*v. Chubb Corp.*, 264 F.R.D. 76, 91 (S.D.N.Y. 2010) (dismissing agency claim as to a particular defendant: agency allegations "depend crucially on the words or actions of *the principal* [] to state a claim sufficient as a matter of law," thus a plaintiff "must allege some action on the part of [the principal] from which [] agency may be inferred") (emphasis in original).)

In short, Plaintiffs' agency allegations do not cure their improper lumping of the Virgin Defendants, and their continued refusal to adhere to this pleading requirement mandates dismissal of the Amended Complaint with prejudice. *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-81271, 2015 WL 2198470, at *4 n.9 (S.D. Fla. May 11, 2015) (dismissing claim with prejudice where plaintiff refused to cure pleading defect raised by defendant in their first amended complaint).

**II. PLAINTIFFS CONCEDE THAT THE NDA, "VEITCH-VIRGIN AGREEMENT," PARTNERSHIP, JOINT VENTURE, AND GOOD FAITH COUNTS MUST BE DISMISSED AS TO VGHL, VGIL AND VEL.**

Even if Plaintiffs' agency theory is accepted, Plaintiffs concede that it does not save their claims against VGHL, VGIL and VEL for breach of the NDA, the "Veitch-Virgin Agreement," or any partnership, joint venture, or other agreements to negotiate in good faith. Section IV of the Virgin Defendants' motion explained how Plaintiffs cannot rely on parole evidence— namely, "representations [from] the Virgin Group"—to allege that they "understood" they were "contracting with VGIL, VGHL, and VEL," as unambiguous language in these "agreements" rendered any such understanding unreasonable as a matter of law. (*See* Mot. at 15-18;[5] Opp. at 4 ("the party listed on the NDA is VMUSA"); D.E. 26-2, p. 2 (NDA signed by "Thayer Thompson" acting as "authorized signatory" for "Virgin Management, USA, Inc."); D.E. 26-3, at p. 7 (alleged "Veitch-Virgin Agreement" signed by "Nirmal Saverimuttu, Principal, Virgin Management USA, Inc.").) The NDA's merger clause similarly precludes Plaintiffs from relying on "representations [from] the Virgin Group" to allege that VGIL, VGHL or VEL are parties to that contract. (Mot. at 17-18; *e.g.*, *Fierro v. Gallucci*, No. 06-cv-5189, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008).)

Plaintiffs ***do not dispute this*** in opposition, conceding its application here. *McGee v. S-*

---

[5] Citing, *e.g.*, *Kamdem-Ouaffo v. Pepsico, Inc.*, No. 14-cv-227, 2015 WL 1011816, at *7 (S.D.N.Y. Mar. 9, 2015) (dismissing contract claim where the record showed that the defendant was not a party to the agreement); *Dragon Head LLC v. Elkman*, 102 A.D.3d 552, 552 (N.Y. App. Div. 2013) (same); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So. 2d 1157, 1159 (Fla. 3rd DCA 2008) (same). Plaintiffs do not address any of these cases in their opposition.

3

*Bay Dev., LLC*, No. 11-cv-1091, 2012 WL 760797, at *5 n.6 (M.D. Fla. Mar. 8, 2012) ("Plaintiffs did not respond to this argument and therefore are deemed not to oppose dismissal of their claim"). Thus, Counts I, II, and VI-IX must be dismissed as to VGHL, VGIL and VEL.

### III. PLAINTIFFS' VOLUNTARY, PUBLIC DISCLOSURE OF THEIR ALLEGEDLY CONFIDENTIAL INFORMATION PRECLUDES INJUNCTIVE RELIEF.

Plaintiffs concede that the NDA's confidentiality restrictions expired on March 11, 2014. (Opp. at 19.) And Plaintiffs do not—because they cannot—challenge the cases cited by the Virgin Defendants confirming that a court may not award injunctive relief enforcing expired contractual confidentiality obligations. (*See id.*; Mot. at 8 (citing cases); *e.g.*, *TNS Media Research, LLC v. TRA Global, Inc.*, No. 11-cv-4039, 2014 WL 1370279, at *1-2 (S.D.N.Y. Apr. 7, 2014).) Instead of addressing this on-point precedent, Plaintiffs assert that the NDA should be "extended" so that "Mr. Veitch will receive the competition-free [3-year] period that was originally intended by the NDA." (Opp. at 20.) This disingenuous argument must be rejected.

As an initial matter, Mr. Veitch contradicts his own sworn declaration recently provided to this Court stating that he has "no plans to seek to establish any new cruise line that would compete with Virgin's plans to enter the cruise industry." (D.E. 55-2, ¶ 9.)[6] More fundamentally, Plaintiffs' opposition entirely ignores the fact that **Plaintiffs already publicly disclosed their allegedly confidential information** by filing it in this suit. (*See* D.E. 1-3.) Plaintiffs decision to publish this information ends any argument that they should nevertheless be "entitled to a period of three years," starting today, "during which Virgin may not use" it. (Opp. at 20; *see* Fla. Stat. Ann. § 688.003(1) (an injunction "shall be terminated upon application once a trade secret ceases to exist").) Accordingly, all of Plaintiffs' requests for injunctive relief must be dismissed with prejudice.

### IV. NO "VEITCH-VIRGIN," JOINT VENTURE OR PARTNERSHIP AGREEMENTS WERE FORMED.

In their opposition, Plaintiffs attempt to disavow their own prior Amended Complaint allegations which conclusively demonstrate that no enforceable "Veitch-Virgin," partnership or joint venture agreements were ever formed. Plaintiffs' attempt is unavailing.

---

[6] This renders Plaintiffs' case citations irrelevant, as they each considered extensions of employee non-competes—not confidentiality obligations—where the employer and employee continued to compete in the market. *E.g.*, *Capelouto v. Orkin Exterminating Co. of Florida, Inc.*, 183 So. 2d 532, 534 (Fla. 1966).

4

### A. Essential terms of the "Veitch-Virgin Agreement" were never agreed upon.

Plaintiffs concede that "the identity of the parties" is an essential term to any contract. (Opp. at 7.) Plaintiffs contend there was a meeting of the minds as to the parties of the alleged "Veitch-Virgin Agreement" because Plaintiffs "understood" they were contracting with VMUSA and "the arms of the Virgin Group that dealt with licensing and investments (i.e., [VGIL, VGHL and VEL])." (*Id*. at 7-8.) The Amended Complaint belies this assertion, as Plaintiffs were admittedly unaware of the existence of VGIL, VGHL, and VEL at the time the "Veitch-Virgin Agreement" was allegedly concluded. (A.C. ¶ 213.) Thus, accordingly to Plaintiffs' own allegations, there was no mutual understanding between the parties that an agreement was formed between Plaintiffs, on the one hand, and each of the Virgin Defendants, on the other.[7]

Next, Plaintiffs assert that the "promote" each party was to receive "was not subject to further negotiation," quoting statements by an agent of VMUSA that purportedly "demonstrate[] an intent to be bound" to a percentage split. (Opp. at 8.) But Plaintiffs turn a blind eye to ***their own statements*** in the emails purportedly forming the "Veitch-Virgin Agreement," which expressly confirm that the terms the parties discussed, including the promote, were left "***subject to further review*** as [the parties] get into the fund raising." (D.E. 26-3, p. 3 (emphasis added).) Plaintiffs cannot square this with their conclusory allegation that "the economics of the deal between [the parties] were finalized" in those emails, (Opp. at 8), so they ignore it in opposition. But Mr. Veitch's admission confirms that Plaintiffs left "essential" terms of the "Veitch-Virgin Agreement" "subject to future negotiations and approval." *E.g.*, *Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606-07 (N.Y. App. Div. 2014).

Plaintiffs also cannot avoid the plain language of the documents they voluntarily appended and incorporated by reference into the Amended Complaint which, as Plaintiffs concede, mandate dismissal if they conclusively refute bare allegations that a binding agreement

---

[7] Plaintiffs cite one case in support of their assertion that "[t]he fact that [the names of Virgin Defendants] were omitted from the [parties] email exchange is immaterial," but that case is entirely off-base. (Opp. at 8, n.14.) There was no disagreement regarding the parties to the alleged agreement in *Morrow v. Putnal,* No. 06-cv-543, 2007 WL 1452914, at *2 (M.D. Fla. May 14, 2007). Rather, the court noted that the fact that the contractual parties did not agree upon a name for the joint-venture they agreed to form did not warrant dismissal of their underlying contract action. *Id.*

5

was formed.[8]  For example, Plaintiffs claim that the March, 2012 LOI—expressly noting that it was "subject to satisfaction of" the finalization of "co-venturing arrangements" between Plaintiffs and the Virgin Defendants (D.E. 26-4, p. 5)—is irrelevant because the "anticipation of formal documentation does not invalidate the Veitch-Virgin Agreement." (Opp. at 9-11.)  The Virgin Defendants do not contend that the parties' alleged contract is defective because future documentation was contemplated;[9] rather, the parties' alleged contract is defective because ***no agreement was ever finalized***, which is expressly confirmed by the LOI Plaintiffs signed in 2012.  (*Compare* A.C. ¶ 112 (containing conclusory allegation that the "Veitch-Virgin Agreement" was "finalized" as of May 2011) *with* D.E. 26-4, p. 5 (confirming that as of May 2012, no co-venturing agreement between the parties had been finalized ).)

Finally, Plaintiffs ask this Court to ignore the June 8, 2012 letter from their present counsel that, indisputably, stated:  "Of course, [plaintiffs] desire[] that the parties will remain on good terms following the unfortunate termination of discussions and activities regarding a long-term cruise line partnership with Virgin Group."  (D.E. 52-1.)  Plaintiffs assert that the June 8 letter cannot be considered at the dismissal stage because it "does not lie at the very heart of Plaintiffs' claims," (Opp. at 11), but Plaintiffs ignore the case law cited by the Virgin Defendants confirming otherwise.  *See Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897, 2013 WL 1296298, at *5-6 (S.D. Fla. Mar. 27, 2013) (where a document referenced in the complaint contradicts allegations that the parties agreed to pursue a joint venture, that document "is central

---

[8]  *See generally* Opp. (ignoring cases cited in the Virgin Defendants' Motion, at 12-13, confirming that dismissal of a contract claim is required where documentary evidence incorporated into the complaint confirms that no agreement was formed, including *Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A., a/k/a S.A.F., S.A. v. Ryder Int'l, Inc.*, No. 06-cv-22774, 2007 WL 628133, at *2-3 (S.D. Fla. Feb. 26, 2007), *Argent Acquisitions, LLC v. First Church of Religious Sci*., 118 A.D.3d 441, 445 (N.Y. App. Div. 2014) and *Atl. St. John, LLC v. Yoemans*, 5 Misc. 3d 1031(A), 2004 WL 2941402, at *4 (N.Y. Sup. Ct. Oct. 21, 2004)).

[9]  For this reason, the cases discussed at length in Plaintiffs opposition are immaterial.  (*See* Opp. at 9-11 (*citing Lo Casico v. Aquavella*, 206 A.D.2d 96, 98 (N.Y. App. Div. 1994) (discussing whether the need to formally document an otherwise complete contract invalidated a contract claim); *Four Seasons Hotels v. Vinnick,* 127 A.D.2d 310, 321 (N.Y. App. Div. 1987) (same); *WrestleReunion, LLC v. Live Nation Television Holdings, Inc*., No. 07–cv–2093, 2009 WL 2473686, at *4 (M.D. Fla. Aug. 11, 2009) (same); *Fincher v. Belk-Sawyer Company,* 127 So. 2d 130 (Fla. 3d DCA 1961) (discussing whether an enforceable contract was formed despite the parties' understanding that "new matters, when agreed upon, shall be incorporated into … other formal documentation along with the contract already made").)

6

to Plaintiff's" claim and may be considered at the dismissal stage). Plaintiffs' next claim that the Virgin Defendants "cherry-pick[] a quote taken out-of-context," and state that a letter dated three months later "set the record straight" regarding the parties' discussions. (Opp. at 11-12.) Even if this later letter—never referenced in the Amended Complaint—were properly considered, it only further confirms that no agreement between the parties was ever reached:

> [In June 2012, VMUSA] and Colin then mutually agreed that at that point there was no way to proceed to reach a mutually acceptable joint venture arrangement and that the best course at that time would be to cease their attempt to work together.

(D.E. 64-1, p.3.) In sum, Plaintiffs' allegations in the Amended Complaint, and the documents incorporated by reference thereto, conclusively demonstrate that no enforceable "Veitch-Virgin Agreement" was formed, and Count VI must be dismissed in its entirety.

### B. Plaintiffs' opposition proves that no partnership or joint venture agreements were formed.

In opposition, Plaintiffs incorrectly state that the Virgin Defendants "do[] not dispute that the parties agreed how they would share profits" in an alleged partnership or joint venture. (Opp. at 12.) That is precisely what the Virgin Defendants dispute. (Mot. at 13 ("the documentary evidence [] conclusively demonstrates that no agreement was reached on the parties' respective right to share in the profits of an alleged venture").)[10] And, for the same reasons that no "Veitch-Virgin Agreement" was formed, no agreement to share in the profits of any venture was reached, barring Plaintiffs' Counts VI and VII. (*See* Section IV.A, *supra*.)

Even if that were not the case, Plaintiffs agree that they must allege "joint control" of a partnership or venture for Counts VI or VII to survive dismissal. (Opp. at 13.) To satisfy this requirement, Plaintiffs rely on their assertion that the parties agreed to "establish a formal general partner that would be owned and controlled jointly," (*id.* at 14), but the allegations Plaintiffs go on to cite demonstrate that no joint control ever existed.

Plaintiffs first point to their allegation that the parties purportedly agreed to jointly "control the General Partner" of a cruise entity, but Plaintiffs omit the following complaint

---

[10] Like with their contract claim, Plaintiffs focus on whether the parties "contemplat[ed] further documentation" for an alleged partnership. But the venture claims do not fail because additional documentation was contemplated; the claims fail because no agreement was ever reached which could possibly be documented. (Mot. at 13.) Accordingly, the cases cited in Plaintiffs' opposition are inapplicable. (*See* Opp. at 12-13 (citing cases considering the impact of potential future documentation on partnership claims).)

7

paragraph confirming that "they never reached the stage of formally establishing [that] entity." (A.C. ¶¶ 115-16.) Plaintiffs next contend that the LOI somehow "evidence[s] the joint control" because both VSM Development, Inc. and VGIL signed the document. (Opp. at 14.) The fact that the LOI was signed separately demonstrates *precisely the opposite*—if joint control existed one signature could have bound both parties, but separate signatures were required. The parties understood that they had no authority to bind one another to the LOI. *See Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth.*, No. 04-cv-200, 2005 WL 1051932, at *3 (M.D. Fla. Apr. 12, 2005) (joint control requires the "authority to bind one another with respect to the subject matter of the venture"). The fact that a "Letter of Interest" and investment bank "fee agreement" had to be separately addressed to both Plaintiffs and VGIL similarly shows that no jointly controlled venture existed. (*See* Opp. at 14.) Finally, Plaintiffs' discussion of two "management presentations" that purportedly "devote pages" to the "incubation process for Virgin Cruises" is a non sequitur—nowhere in those presentations is there any reference to joint control of a partnership or venture by Plaintiffs and any Virgin Defendant. (*See id.* at 15.) Far from supporting their allegations of joint control, Plaintiffs' opposition confirms that Counts VI and VII must be dismissed with prejudice.

### C. Plaintiffs' good faith claim falls with their contract claim.

Plaintiffs' good faith claim is purportedly "pled in the alternative" to their breach count, and according to Plaintiffs this means that even if the "Veitch-Virgin Agreement" is unenforceable, it may nevertheless have "give[n] rise to a duty to negotiate in good faith." (Opp. at 15.) But the very cases Plaintiffs rely on confirm the black-letter rule that no "duty to negotiate" arises absent a binding agreement requiring as much. (*See id.* (*citing Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 494, 497-98 (S.D.N.Y. 1987) (imposing an obligation to negotiate in good faith only after finding that the parties had reached a "binding" agreement that "covered all the basic economic terms" of their agreement).)[11] Here, no binding "Veitch-Virgin Agreement" was reached, (*see* Section IV.A, *supra*), and accordingly no "duty to negotiate" arose as a matter of law. *In re Atl. Computer Sys., Inc.*, 154 B.R. 166, 170 (S.D.N.Y.

---

[11]   *See also EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 228 (S.D.N.Y. 2012) (binding agreement required defendant to "work with [Plaintiff] in good faith" on potential transaction); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 424 (2d Cir. 2011) (binding agreement required the parties to "negotiate[] and agree[] upon" terms); *Brown v. Cara*, 420 F.3d 148, 151 (2d Cir. 2005) (binding agreement required "the parties to negotiate in good faith").

1993) (finding no duty to negotiate in good faith where "the parties had not agreed on several material contract terms"). This is fatal to Plaintiffs' good faith claim. *See, e.g.*, *In re Theatre Row Phase II Associates,* 385 B.R. 511, 524-25 (Bankr. S.D.N.Y. 2008) (dismissing claim based on "failure to negotiate in good faith" because plaintiff failed to plead the "necessary predicate" of the existence of an enforceable agreement).

## V. PLAINTIFFS' UNJUST ENRICHMENT AND UNFAIR COMPETITION CLAIMS REMAIN DEFECTIVE.

Plaintiffs agree that for their unjust enrichment claim to survive dismissal, they must allege that a "benefit has been conferred on the Virgin Defendants." (Opp. at 17.) Yet in response to the assertion that they have failed to "allege that any Virgin Defendant has, to date, benefitted from a future cruise venture," (Mot. at 19), Plaintiffs offer only the following conclusory allegation: Plaintiffs "devoted thousands of man hours, and hundreds of thousands of dollars, which conferred benefits on the Virgin Defendants." (Opp. at 17-18.) This still does not identify any concrete benefit obtained by the Virgin Defendants, requiring dismissal of Plaintiffs' unjust enrichment count. *E.g., Iberiabank v. Coconut 41*, LLC, No. 11-cv-321, 2012 WL 473576, at *3 (M.D. Fla. Feb. 14, 2012); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration*, *Inc.*, 412 So. 2d 883, 884 (Fla. 2nd DCA 1982).

Plaintiffs also cannot avoid FUTSA preemption of their unjust enrichment claim. Plaintiffs do not dispute that the relief sought for that claim is **identical** to that sought for its misappropriation count. (*Compare* A.C. ¶ 236 *with id*. ¶ 249.) Under the well-settled proposition (which Plaintiffs ignore in opposition) that "unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy," Plaintiffs' unjust enrichment count is preempted. (Mot. at 18 (*citing Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).) Plaintiffs also cannot save their claim by alleging that it is pled "as an alternative" to other Amended Complaint counts (Opp. at 16); a review of the allegations underlying Plaintiffs' unjust enrichment count confirm that they are substantively identical to those underlying their other claims. (*Compare* A.C. ¶¶ 217-218 *with id.* ¶¶ 233-34 *with id.* ¶ 244 *with id.* ¶ 260 *with id.* ¶ 284 (all alleging, in sum or substance, that the Virgin Defendants improperly misappropriated Plaintiffs' Ultra Ships Plan and others business ideas); *see id.* at 1 ("This is an action for misappropriation of a business idea, business plan, and business that was fully developed by Mr. Colin Veitch and presented to

9

Virgin pursuant to non-disclosure, non-use, and other agreements").)  Finally, Plaintiffs cannot assert that preemption is inapplicable because "FUTSA may not apply at all to the instant action."  (Opp. at 17.)  Plaintiffs choose to pursue an FUTSA claim.  (A.C. ¶ 299.) They cannot now disavow that fact for dismissal purposes yet continue to "maybe" pursue that claim at a later date.  Plaintiffs' unjust enrichment Count IV should be dismissed as preempted.

For unfair competition, the Amended Complaint was unclear on whether Plaintiffs asserted a claim under both common law and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), or only under the FDUTPA.  (*See* A.C. ¶¶ 250-262.)  Plaintiffs clarify this in opposition, confirming that they *do not* pursue a common law claim because they cannot allege consumer confusion.  (*See* Opp. at 18-19 (case law regarding common law unfair competition "is inapplicable" because Plaintiffs do not pursue such a claim).)  Accordingly, to avoid future confusion, Count V should be dismissed to the extent it seeks to recover under common law.

This clarification, however, still does not save Plaintiffs' unfair competition count from complete dismissal.  As with common law unfair competition, an FDUTPA claim may only be pursued if the plaintiff is a *consumer* involved in a transaction with the defendant.  *Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *3 (S.D. Fla. May 6, 2014) (only a consumer "engaged in the purchase of goods or services" may sue under the FDUTPA); *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296-97 (S.D. Fla. 2014) (same).  The harm Plaintiffs allege here was not the result of a consumer transaction, thus Plaintiffs lack standing to pursue an FDUTPA claim.  *See, e.g., id.*  Finally, Plaintiffs also cannot escape the fact that their claim is based on the same facts underlying their misappropriation claim.  (*Compare* Opp. at 18 & A.C. ¶¶ 259-260 (alleging that the Virgin Defendants "misappropriated Mr. Veitch's Ultra Ships Plan," "exploited [Plaintiffs'] skill, expenditures and labor" then "cast them aside" in May 2012) *with* A.C. ¶¶ 229-234 (alleging that the Virgin Defendants "misappropriated the business ideas which Veitch presented," made use of that information then "reneged on its deal with Mr. Veitch in May 2012").)  Accordingly, the FDUTPA claim is expressly preempted.  Fla. Stat. § 688.008(1); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002).  Count V must be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, the Virgin Defendants respectfully request that the Amended Complaint be dismissed in its entirety with prejudice.

Dated: June 29, 2015	Respectfully submitted,

s/ *Janet T. Munn*
Janet T. Munn (FBN 501281)
jmunn@rascoklock.com
**RASCO KLOCK PEREZ & NIETO PL**
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
Telephone: 305.476.7101
Facsimile: 305.476.7102


s/ *Claude M. Stern*
Claude M. Stern*
Email: claudestern@quinnemanuel.com
Evette D. Pennypacker*
Email: evettepennypacker@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
555 Twin Dolphin Drive, Suite 500
Redwood Shores, CA 94065
Telephone: 650.801.5000
Telecopy: 650.801.5100


Marc Greenwald*
Email: marcgreenwald@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.700
Telecopy: 212.849.7100

*Admitted Pro Hac Vice

*Counsel for Defendants Virgin Management USA, Inc., Virgin Group Investments Ltd., Virgin Group Holdings Limited, and Virgin Enterprises Limited*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

>Jeffrey W. Gutchess, Esq.
>Fla. Bar No.: 702641
>jgutchess@bilzin.com
>Daniel Tropin, Esq.
>Fla. Bar No.: 100424
>dtropin@bilzin.com
>Brandon Rose, Esq.
>Fla. Bar No.: 99984
>brose@bilzin.com
>eservice@bilzin.com
>margote@bilzin.com
>**Bilzin Sumberg Baena**
>**Price & Axelrod LLP**
>1450 Brickell Avenue, 23rd Floor
>Telephone: 305.350.7312
>Facsimile: 305.351.2132
>
>*Counsel for Plaintiffs*
>
>Dale M. Cendali*
>Email:  dale.cendali@kirkland.com
>Johanna Schmitt*
>Email:  johanna.schmitt@kirkland.com
>Phillip A. L. Hill*
>Email:  phil.hill@kirkland.com
>**KIRKLAND & ELLIS LLP**
>601 Lexington Avenue
>New York, NY 10022
>Telephone: (212) 446-4800
>Facsimile: (212) 446-6460
>
>P. Daniel Bond*
>Email:  daniel.bond@kirkland.com

**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*\* Admitted Pro Hac Vice*

*Counsel for Virgin Cruises Intermediate
Limited and Virgin Cruises Limited*


By: s/ *Janet T. Munn*
Janet T. Munn